UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                      *
Brian Mehlman                         *
                          Plaintiff   *
                                      *   Civil Action No. 04-12533-WGY
v.                                    *
                                      *
Network Appliance, Inc.               *
                                      *
                         Defendants   *
                                      *
* * * * * * * * * * * * * * * * * * * * * * * *
```

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
AND MEMORANDUM OF REASONS**

Plaintiff Brian Mehlman ("Mehlman"), by his undersigned attorneys, opposes the motion to dismiss filed by Network Appliance, Inc. ("NetApp"), and for his reasons states as follows.

**Preliminary Statement**

NetApp appears before the Court in the curious position of having offered an employee options as an inducement to come to work, thereby having secured the employee's services, but now contending that its own promise was too indefinite to be enforceable. NetApp also contends that the plaintiff fails to assert the elements of a breach of contract cause of action by failing to allege that he performed the agreement by commencing employment with NetApp. Both arguments miss the mark. First, NetApp's indefiniteness argument confuses alleged ambiguity in the terms with the absence of terms. There was nothing indefinite about NetApp's promise to the plaintiff. It was spelled out with mathematical precision. NetApp may disagree with plaintiff as to what the disputed terms *meant*, thus calling upon the Court to *construe* the agreement, but there is no question about what the terms *were*. Second, the complaint makes at

least six separate references to plaintiff's employment by NetApp. All that the agreement called for plaintiff to do was to become a NetApp employee, and the facts set forth in the complaint (and reasonable inferences therefrom) amply assert that plaintiff performed by working for NetApp. To the extent that the Court concludes the complaint should have greater clarity regarding this issue, plaintiff is prepared to amend the complaint to make it clearer. In any event, NetApp's motion to dismiss the contract claims should be denied.

Similarly, NetApp's motion to dismiss the tort and equitable claims should be denied. The question of whether plaintiff had both "knowledge or sufficient notice that [he] was harmed" and "knowledge or sufficient notice of what the harm was" is a question of fact that is not suited for dismissal on a Rule 12(b)(6) motion. There is no support for NetApp's contention that such "knowledge or sufficient notice" was provided, as a matter of law, by NetApp's filing a form S-8 with the SEC.

Plaintiff's claim for equitable relief should not be dismissed because plaintiff pleads the necessary elements of a claim in quantum meruit and the claim, which would prove superfluous as NetApp contends if relief were afforded on the contract claims, is not for that reason subject to dismissal. The Federal Rules specifically contemplate assertion of mutually exclusive (or inconsistent) theories of recovery at the initial pleadings stage.

Finally, plaintiff has amply pled all of the causes of action asserted in his complaint. If the Court disagrees, however, and finds claims pled deficiently, plaintiff requests that any dismissal be with leave to amend, since plaintiff can state additional facts and there is no prejudice to the defendant or undue burden on the Court in permitting leave to amend to plead greater specificity.

## Discussion

### A.  Standard of Review

In reviewing Mehlman's motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff[]," and may dismiss only if "it appears beyond doubt" that Mehlman "can prove no set of facts in support of his claim which would entitle him to relief." Swartz v. Schering-Plough Corp., 53 F.Supp.2d 95, 98-99 (D. Mass. 1999). Thus, to survive the motion to dismiss, Mehlman must "set forth factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." *Id.* (citations and internal quotations omitted).

### B.  The Allegations of the Complaint

The factual allegations of the complaint include the following. In the fall of 2000, Mehlman was employed by WebManage Technologies, Inc. (First Amended Complaint, hereinafter "Compl.," at ¶7). NetApp acquired WebManage in the fall of 2000. *Id.* As of the time of the acquisition, Mehlman was entitled to and owned vested and exercisable stock options pursuant to WebManage's employee stock option plan, and was entitled to vest in others in the near term. *Id.* at ¶¶7 and 10. On or about September 8, 2000, NetApp offered Mehlman employment with NetApp in a written offer letter, *Id.* at ¶8, which included among its terms that NetApp would

> "grant you options that have an approximate value at the closing of $600,000. This value is comprised of a value assigned shares currently owned ($347,264) with WebManage and options given upon joining Network Appliance ($252,736).

(Compl., ¶9.) Thus, the term included a specific dollar value of options to be given ($600,000, which is the exact sum of the other two numbers) and a time reference for the grant ("upon joining Network Appliance"). Mehlman accepted the offer of employment, being persuaded by

3

the terms of that offer (*Id.* at ¶8). The NetApp acquisition of WebManage closed on approximately November 13, 2000. (*Id.* at ¶9.)

Mehlman's vested and exercisable WebManage options were to be converted to 1600 shares of NetApp options at a strike price of $10. (*Id.* at ¶10.) Options on an additional 300 shares at the same strike price fully vested as of January 2001 (*Id.*). However, Mehlman was not permitted to exercise his fully vested (and exercisable – *see Id.*) options "immediately following the commencement of his full-time employment with NetApp as of November 13, 2000." (*Id.* at ¶16; *see also Id.* at ¶11.) Instead of being permitted to exercise his vested and exercisable options after November 13, 2000 (*i.e.*, "upon joining" NetApp – see Compl. at ¶9), Mehlman was not permitted to exercise his vested and exercisable options until February 2001 (*Id.* at ¶11), and during the interval the value of the stock – and, by inference, of the options – declined steeply. (*Id.* at ¶13.) The inability to exercise over that interval was due to NetApp's delay in filing a form S-8 with the SEC (*Id.* at ¶12). However, during this interval, other employees of NetApp and NetApp executives were able to exercise options. (*Id.* at ¶15.) As of the date that he was provided with documentation concerning stock options from Network Appliance, those stock options did not have a value of $600,000 as stated in the Employment Agreement. Instead, the stock options had a value of substantially less than half of that amount because of the diminution of value of NetApp stock. . (*Id.* at ¶ 14.)

Although Mehlman knew between November 2000 and February 2001 that he was not able to exercise his vested options, Mehlman had no reason prior to January 2003 to believe that his inability to exercise his fully vested options was the result of the failure of NetApp to file a form S-8 promptly with the SEC. (*Id.* at ¶12.)

4

### C. Mehlman States a Claim for Breach of Contract

Defendant's motion to dismiss the contract claims rests on two assertions: (1) that Mehlman "has failed to allege the required elements" of a breach of contract claim because he does not allege that he performed his end of the agreement by working for NetApp (NetApp's memorandum at p. 3); and (2) that the contract as alleged is unenforceable because plaintiff's recitation of the agreement lacks specifics and because the terms set forth are too indefinite to be enforceable. *Id.* Neither is the case. Mehlman alleges the requisite elements, and the substantive terms of the contract are definite enough to enforce.

#### 1. *The Elements Are Pled*

As a diversity case, this action is governed by the substantive law of Massachusetts. Coll v. PB Diagnostic Systems, Inc., 50 F.3d 1115, 1118 (1st Cir. 1995). Under Massachusetts law, the elements of an action for breach of contract are (1) a valid and binding agreement between the parties with respect to the subject matter at issue; (2) breach by one party; and (3) damages to the other party from the breach. Michelson v. Digital Financial Services, 167 F.3d 715, 720 (1st Cir. 1999); Coll v. PB Diagnostic Systems, Inc., 50 F.3d at 1122 (same). The facts pled in Mehlman's complaint, together with the reasonable inferences from the facts, meet these required elements. Mehlman alleges an offer of employment and acceptance by him (Compl. at ¶8), consideration (*Id.* at ¶¶ 8-9), breach by NetApp (*e.g. Id.* at ¶¶11, 14, and 16), and damages to Mehlman from the breach (*Id.* at ¶14, 16).

Defendant recites an additional element it claims plaintiff must state to have a claim for breach of contract, *i.e.*, that of due performance by plaintiff or excuse from due performance. Kusek v. Family Circle, 894 F. Supp. 522, 527-28 (D. Mass. 1995) (relying upon case law from Southern District of New York applying New York law). Defendant claims that Mehlman does

not meet this element because he "does not allege when and if he began working." Defendant's memorandum at p. 3. Defendant is mistaken. Whether or not he must, Mehlman more than adequately pleads such performance. The complaint sets forth plaintiff's acceptance of the employment offer by NetApp (Compl. ¶8) and alleges that the September 8 offer letter represented the "terms of plaintiff's employment" with NetApp (*Id.*), refers to the plaintiff's "commencement of his full time employment with Network Appliance as of November 13, 2000" (*Id.* at ¶16), alleges breach of NetApp's duties to plaintiff "and other employees" of NetApp (*Id.* at ¶18), asserts that NetApp breached its duties to Mehlman with respect to NetApp's "employee stock option plans," (*Id.* at ¶24), asserts that NetApp "secure[ed] Mehlman's services through promises of compensation" and received "the benefit of Mehlman's services" (*Id.* at ¶28), and seeks, as a cause of action, to be paid the value of the services Mehlman rendered to NetApp (*Id.* at ¶29). Thus, plaintiff sets forth facts sufficient to justify an inference that he was employed by NetApp. However, if despite these allegations NetApp lacks sufficient notice of the fact that Mehlman claims to have been employed by NetApp, of course Mehlman would be pleased to amend, with leave of the Court, in order to make it even clearer that he worked for NetApp after its acquisition of WebManage.[1]

### 2. *NetApp's Offer Is Not Too Indefinite to Be Enforceable*

Defendant's indefiniteness argument includes two distinct subparts. NetApp first contends that the terms of its employment offer to plaintiff relating to stock options are too indefinite to enforce. (NetApp's memorandum at p. 4.) Second, NetApp asserts that plaintiff does not plead enough of the specifics of the other terms of NetApp's employment offer letter such as salary, duration, and "plaintiff's performance." (NetApp's memorandum at p. 5.)

---

[1] If necessary, Mehlman can amend his complaint to allege specifically that he was employed by NetApp through mid-2004.

6

The standard for determining whether the substantive terms of an asserted contract are too indefinite to enforce is well settled:

> Under Massachusetts law, all the essential terms of a contract must be definite and certain so that the intention of the parties may be discovered, the nature and extent of their obligations ascertained, and their rights determined. A contract is not to be held unenforceable, however, if, when applied to the transaction and construed in the light of the attending circumstances, the meaning can be ascertained with reasonable certainty.

Swartz, *supra*, 53 F.Supp.2d at 102 (citations and internal quotation marks omitted), *citing* Cygan v. Megathlin, 326 Mass. 732, 733-34, 96 N.E.2d 702 (1951) and Simons v. American Dry Ginger Ale Co., 335 Mass. 521, 523, 140 N.E.3d 649 (1957).  Thus, for example, a promise in an oral employment offer to "increase wages if business should improve" is not too indefinite to enforce, despite the lack of a specified wage increase and without defining what "if business should improve" means. Delorafano v. Delafano, 333 Mass. 684, 687, 132 N.E.2d 668, 671 (1956).  Indeed, as noted in Cygan, *supra*, the Supreme Judicial Court

> . . . has gone far in enforcing contracts where the consideration to be paid by one party to the other was expressed as a fair and equitable share of the profits; to pay a sum which would be right and satisfactory, to "make it right" with an injured employee by the payment of some compensation in addition to the sum paid for a release, or to treat him right by the payment of some additional compensation until he was able to return to work, to pay an employee well and to satisfy him, or to pay for services the value of which was to be left to future determination.

Cygan v. Megathlin, 326 Mass. at 734, 96 N.E.2d 702.  In Cygan, the court found enforceable an oral agreement between a startup enterprise and a toolmaker that included the following terms relating to compensation:

> With reference to the matter of compensation, the master reported that the parties entered into an oral contract whereby the plaintiff undertook to perform services with the understanding that, if his charges for tool making were reasonable, he was to receive initially $1 an hour and some additional compensation at a later date when the defendants "got on their feet."

Cygan, 326 Mass. at 733, 96 N.E.2d at 702.  The court rejected the defendant's contention that such a promise was too indefinite to be enforceable beyond $1 per hour.  The court noted that

7

> It was said in Silver v. Graves, 210 Mass. 26, 30, where the only element in the contract left undetermined was that of price, that "When a contract has been executed on one side, the law will not permit the injustice of the other party retaining the benefit without paying unless compelled by some inexorable rule." We do not think that the promise to pay additional compensation was void on the ground that it was too indefinite.

96 N.E.2d at 704.

In the present case, Mehlman pleads the terms of the contract with sufficient detail to permit the Court to ascertain the parties' intentions and the "nature and extent of their obligations," and to determine their respective rights. *See* Swartz, *supra*, 53 F.Supp.2d at 102. As set forth in the Amended Complaint, the nature of the contract sued upon is very straightforward: there was an offer (if you come to work for us we will grant you stock options upon joining NetApp in the approximate value at the closing of $600,000, consisting of $347,264 in value assigned your WebManage options and $252,736 in new NetApp options), acceptance by Mehlman (Compl. at ¶8), consideration (value stated), and due performance by plaintiff (see earlier discussion). NetApp's principal quibble with the terms of its employment offer to Mehlman relating to stock options is that the term "approximate value of $600,000" is too indefinite to enforce because the contract as pled does not set forth how "value" is to be determined and does not specify elements of the value calculation such as accounting for Mehlman's payment of the strike price or how to account for the options' vesting period. (NetApp's memorandum at p. 4) The missing details of the formula for calculating "value" are not fatal to the claim, however. In discovery, for instance, perhaps the defendant can be asked how *it* valued the options it was offering. The components are specified in very precise dollar terms ($347,264 in old options plus $252,736 in new options equals $600,000) and surely defendant must have had some basis for asserting those numbers. Alternatively, the value could be determined easily by expert testimony applying conventional valuation principles.

8

Companies value stock options all the time for purposes of compensation. Even if no value were specified and the parties simply had agreed to a "reasonable" value to be determined later, however, under applicable law the agreement still would not be too indefinite to be enforceable. *See, e.g.,* Hastings Assocs. v. Local 369 Bldg. Fund, 675 N.E.2d 403, 407, 410-11 (Mass. App. 1997) (Court enforces lease terms providing that "at the conclusion of the Lease, the LESSEE will be reimbursed for the enhanced value of King's Hill, including investment and goodwill, based upon a formula acceptable to both parties," where no formula is stated in the contract and agreement merely provides that if the parties cannot agree, an unidentified mutually agreeable "third party" will determine the value); Delorafano v. Delafano, *supra*, 333 Mass. at 687 (oral agreement to increase wages in unspecified amount at undetermined point in future "if business should improve").

NetApp's argument confuses the question of *existence* of a contract with that of its *construction*. Indefiniteness, as noted above, concerns the question of whether an enforceable contract exists. If there is a dispute as to what "value" means for purposes of this agreement,[2] the question is one of construction of the agreement. This distinction between the existence of a contract versus its meaning is evidenced in the cases upon which NetApp relies for its indefiniteness argument. For example, in Ross v. Raytheon Co., 2001 Mass. Super. LEXIS 481, an age discrimination case, the court found unenforceable a verbal promise by the employee's supervisor that, if the employee continued on a certain project, the supervisor would "find him another job" (presumably when the project ended). *Id.* at *2. The court noted that "the promise of an unspecified position on unspecified terms is too indefinite and ambiguous to be enforceable as a matter of law." *Id.* at *12-13. However, the court in Ross *denied* summary judgment on the

---

[2] NetApp has not stated what it thinks "value" meant, so it is unclear whether there is such a dispute. Presumably there will be.

9

defendant's claim of indefiniteness with respect to two other promised positions where specific positions were identified (even though the case does not speak to whether a single term of employment in either position ever was set forth). Similarly, in Armstrong v. Rohm and Haas Co., Inc., 2004 U.S. Dist. LEXIS 25129 (D. Mass. 2004), Judge Saylor found too indefinite two employees' claims for damages based on comments from their boss to the effect that if they took a voluntary severance package and formed their own business, the company would outsource to them "all the work they could handle" and that the company "would like to" give plaintiffs "all of its outsourced work in ceramic grinding, which had been in the neighborhood of $10,000 per month." *Id.* at \*\*3. Noting that the key question is "whether the parties *intended to contract* with one another and there is a reasonably certain basis for a remedy," *Id.* at \*\*18 (emphasis added), the court considered the promise of "all the work" plaintiffs could "handle" to be too vague for the court to ascertain a reasonably certain basis for providing an appropriate remedy. *Id.* at \*\*20.

In both Ross and Armstrong, the promises were so vague that it really became a question of whether anything actually was promised or anyone intended to be bound contractually. In the present case, however, something of substantial value, to the point of assigning specific dollar figures, actually was promised in writing and accepted by the plaintiff. While the Court may be called upon in the future to construe the meaning of the term "value," the complaint states that "value" of a specific amount was promised and accepted, that the condition precedent (employment) was satisfied, and that plaintiff did not receive what was promised.[3] In sum, the terms alleged in the Amended Complaint are sufficient to permit the Court to ascertain the parties' intentions and the "nature and extent of their obligations," and to determine their

---

[3] Defendants contend that plaintiff "never indicates the actual 'value' of his shares at the closing." (NetApp's memorandum at p. 4). Plaintiff does indicate, however, that the stock options he receive "had a value of substantially less than half" the specified amount of $600,000. (Compl. at ¶14.) That is sufficient to allege damages, by definition, of "substantially more than" $300,000.

respective rights. *See* Swartz, *supra*, 53 F.Supp.2d at 102, and the terms of the stock option promise in NetApp's employment offer to the plaintiff are not too indefinite to be enforced.

NetApp's second indefiniteness argument is that plaintiff fails to set forth all of the material terms of the employment offer other than the aspects pertaining to stock options.[4] However, NetApp does not offer a single case that stands for the proposition that a party who pleads breach of contract based on an employment offer must set forth all of the terms of the offer, not just the terms that are being sued upon. Indeed, there seems to be no support for such a proposition. Rather, the Court simply need determine whether there is, in fact, a contract and whether the disputed terms are part of it. As set forth above, plaintiff amply meets this standard. To the extent that greater detail is required, the remaining terms can be supplied by the simple expedient of an amendment to the complaint to append the offer letter and to allege its terms more specifically.[5]

Therefore, the Amended Complaint adequately sets forth a claim for breach of contract with respect to stock options, and NetApp's motion to dismiss the breach of contract claims (including the good faith and fair dealing count) should be denied.

### D.     Mehlman's Tort and Equitable Claims Should Not Be Dismissed Based on the Statute of Limitations

It is well settled under Massachusetts law that for purposes of the statute of limitations in tort cases, G.L. c. 260, §2A, a cause of action does not accrue, and thus the limitations period

---

[4] NetApp faults plaintiff for not appending a copy of the offer letter to the complaint (NetApp's memorandum at p. 4) but does not challenge the accuracy of plaintiff's recitation of its terms and does not provide the Court with a copy of the document. Presumably this reflects NetApp's recognition that the complaint accurately sets forth the terms to which the complaint refers, as it is well established that NetApp could have submitted the offer letter to the Court if its contents were not characterized accurately in the complaint, without converting the motion to one for summary judgment. *See, e.g.,* Fudge v. Penthouse Int'l., Inc., 840 F.2d 1012, 1015 (1st Cir. 1988) (where complaint relies upon document, defendant may submit copy of document without converting 12(b)(6) motion to motion for summary judgment).

[5] As discussed in greater detail at the end of this memorandum, plaintiff believes the complaint properly pleads the causes of action asserted, but if the Court disagrees, plaintiff requests that any dismissal be with leave to amend.

11

begin to run, until the plaintiff has "(1) knowledge or sufficient notice that [he] was harmed, and (2) knowledge or sufficient notice of what the harm was." Bowen v. Eli Lilly & Co., Inc., 408 Mass. 204, 208, 557 N.E.2d 739 (1990). "Reasonable notice that a particular product or a particular act of another person may have been a cause of harm to a plaintiff creates a duty of inquiry and starts the running of the statute of limitations." *Id.*, 408 Mass. at 210. Thus, NetApp's motion calls upon the Court to determine whether NetApp's filing of an S-8 with the Securities and Exchange Commission in January 2001 was, as a matter of law, "sufficient notice" of the harm alleged, *i.e.,* NetApp's failure to file the S-8 promptly upon the conclusion of the transaction. The essence of NetApp's position is that as a matter of law, plaintiff should have been aware of the filing of the S-8 when it was filed in January 2001. Hence, according to defendant, the cause of action accrued in January 2001.

"[T]he question when a plaintiff knew or should have known of his cause of action is one of fact which in most instances will be decided by the trier of fact." Riley v. Presnell, 409 Mass. 239, 240, 565 N.E.2d 780 (1991) (reversing summary judgment in favor of defendant and remanding for trial including trial of statute of limitations issue); *accord* Wolinetz v. Berkshire Life Ins. Co., 361 F.3d 44, 48 (1st Cir. 2004) (citing Riley and noting that "factual disputes concerning the date on which the plaintiff knew or should have known of his cause(s) of action are resolved by a jury.") Plaintiff has alleged that he had no reason to believe until January 2003 that the reason for his inability to exercise his options was NetApp's failure to file the S-8 as promptly as it should have (Compl. at ¶12). Ultimately this question is one of fact that quite simply is not ripe for resolution on a motion to dismiss for failure to state a claim.

Defendant offers no support for its proposition that the filing of the S-8 was, as a matter of law, sufficient notice that plaintiff was harmed or of what the harm was. While documents on

12

file with the SEC are appropriately the subject of judicial notice, even if the Court takes judicial notice that the S-8 was on file and what its contents were, questions remain as to whether plaintiff had any way to know either that the filing was not as prompt as it should have been or that the delay in filing the S-8 was the reason that he could not exercise his vested options earlier.  NetApp's memorandum asserts a number of actions it contends the plaintiff could have taken to discover the cause of the harm to him (see NetApp's memorandum at p. 8) but whether he did so or not, and whether he received satisfactory answers or other answers, are factual questions not appropriate for resolution in a motion under Rule 12(b)(6).  NetApp's motion to dismiss Mehlman's tort claims (counts 2 and 4) should be denied.

    **E.**    **Mehlman Pleads a Cause of Action in Quantum Meruit (Count 5)**

A plaintiff seeking recovery in quantum meruit must prove three elements: (1) that plaintiff conferred a measurable benefit upon defendant; (2) that defendant accepted the services with the expectation of compensating plaintiff; and (3) that plaintiff provided the services with the reasonable expectation of receiving compensation from defendant.  Bolen v. Paragon Plastics, Inc., 747 F.Supp. 103, 106-07 (D. Mass. 1990) (collecting Massachusetts cases).  Each of these elements is pled in the complaint, albeit not in precisely the language set forth in Bolen.  That is, plaintiff alleges that the defendant received the benefit of his services (element 1) through promises of compensation (elements 2 and 3) (Compl. at ¶28).  By reference to the remainder of the Amended Complaint (Compl. at ¶27), plaintiff also asserts, *inter alia*, that such compensation included $600,000 worth of stock options and that he accepted an offer stating those terms (Compl. at ¶¶8-9), justifying the reasonable inference that defendant and plaintiff both expected such compensation to be given and also supporting an inference that such compensation was reasonable for the services conferred.  Thus, the elements are pled adequately.

Finally, NetApp contends that Mehlman's claim for equitable relief must be dismissed because it is "superfluous" since plaintiff has alleged there is a contract. While defendant is in a sense correct – that is, a finding that there was a valid and enforceable contract between plaintiff and defendant with respect to the subject matter at issue would make an award under the equitable claim superfluous, *see* McLane, Graf, Raulerson & Middleton, P.A. v. Rechberger, 280 F.3d 26, 35 (1st Cir. 2002) (a ruling in favor of plaintiff on its contract claim "would make its quantum meruit claim superfluous") – it does not follow that *pleading* the contract makes *pleading* the equitable claim superfluous such that dismissal is warranted. Fed. R. Civ. P. 8(e)(2) provides that a party may "set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses," and may assert "as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds." The Federal Rules thus contemplate claims at the pleadings stage that may prove to be superfluous later.

NetApp relies upon Lawson v. Affirmative Equities Co., 341 F. Supp. 2d 51, 65 (D. Mass. 2004) for its claim that count 5 should be dismissed because it is "superfluous." In Lawson, Judge Stearns denied a motion to dismiss breach of contract claims and dismissed an unjust enrichment claim as superfluous in light of the presence of contract governing relationship and affording prospect of money damages for breach. *Id.* The court also notes in a footnote that one of the elements, i.e., enrichment, as to one of the parties was not pled. To the extent that Lawson stands for the proposition that the existence of an enforceable contract affording relief precludes recovery on a quasi contract or equitable claim, the court is correct. To the extent that Lawson is read to hold that the plaintiff cannot *plead* the alternative theories of recovery, such a holding would be contrary to pleading standards set forth in the Federal Rules. What is clear is

14

that as long as there is a question (raised by defendant) as to the enforceability of NetApp's promises as a contract, it is at best premature to consider a claim for equitable relief on the same set of facts to be superfluous.  Count 5 should not be dismissed.

### F. Leave to Amend

While plaintiff believes, as set forth above, that its causes of action are amply pled and dismissal under Rule 12(b)(6) is not warranted, plaintiff requests that he be permitted leave to amend if the Court finds dismissal is warranted.  Under the familiar standard of leave to amend being "freely given . . . as justice requires," Fed. R. Civ. P. 15(c), the plaintiff should have an opportunity to amend in the present case, if the Court dismisses any claim, because the alleged defects principally concern specificity of the pleadings and there would be no prejudice to the defendant in permitting amendment.  Literally nothing has happened in the case beyond the filing of the motion to dismiss; there has been no discovery, and the defendant has not even filed an answer.  Moreover, the additional detail plaintiff would add to his pleadings by amendment, if necessary, all is within defendant's knowledge right now.  For example, if necessary plaintiff could amend to append copies of the offer letter and stock option documentation he received from the defendant, which would reflect such additional terms such as salary, benefits, and so forth upon which he was offered employment by NetApp, as well as matters relating to vesting and exercise of options.  An amendment could aver plaintiff's employment with NetApp through mid-2004 – although the complaint presently asserts that such employment occurred, albeit without the end date – and amplify the nature of the services rendered by plaintiff.  An amendment also could describe plaintiff's efforts to obtain true information about the status of his option grant and about the reasons for his inability to exercise while the stock value was

declining.[6] For instance, an amendment could describe plaintiff's communications with employees of NetApp inquiring about his stock options and the responses received. Although plaintiff believes that such communications are not required to state plaintiff's causes of action such communications presumably would be probative with respect to a factual dispute as to when the cause of action accrued. Plaintiff respectfully suggests that such a factual dispute is not properly framed in the present procedural context but a later stage.

Although NetApp complains that greater detail should have been pled, in fact all of these are matters NetApp knows or, in the case of documents, possesses, and consequently no prejudice would result to NetApp from giving leave to amend as to causes of action, if any, this Court sees fit to dismiss for insufficient pleading.

## Conclusion

A motion to dismiss under Rule 12(b)(6) may be granted only if "it appears beyond doubt" that Mehlman "can prove no set of facts in support of his claim which would entitle him to relief." As described above, plaintiff has met this burden, and for the foregoing reasons the motion to dismiss should be denied.

Respectfully submitted,

Brian Mehlman
by his attorneys,

COOK, LITTLE, ROSENBLATT
& MANSON, P.L.L.C.

---

[6] Indeed, had defendant's counsel revealed defendant's concerns about specificity of pleading when counsel inquired about the grounds for the contemplated motion in the Local Rule 7.1(A)(2) conversation, plaintiff's counsel might have been able to amend the complaint and perhaps even have avoided or at least narrowed the scope of contested motion practice.

Dated: February 25, 2005         By: /s/ Arnold Rosenblatt
                                    Arnold Rosenblatt (BBO# 638526)
                                    Michael S. Owen (BBO# 656200)
                                    650 Elm Street
                                    Manchester, NH  03101
                                    (603) 621-7102

17