UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRIAN MEHLMAN<br><br>       Plaintiff,<br><br>   v.<br><br>NETWORK APPLIANCE, INC.,<br><br>       Defendant. | CIVIL ACTION NO. 04-12533-WGY |

**REPLY BRIEF OF DEFENDANT NETWORK APPLIANCE, INC. IN SUPPORT OF ITS
MOTION TO DISMISS
COUNTS 1-5 OF THE COMPLAINT FOR FAILURE TO STATE A CLAIM**

I.

INTRODUCTION

Plaintiff Mehlman raises several arguments to defend his contract claims, his tort claims, and his quantum meruit claim. Each is incorrect, and Network Appliance's motion to dismiss should be granted.

II.

REPLY TO OPPOSITION BRIEF

A.    Mehlman's Contract Claims Should Be Dismissed.

As to Network Appliance's argument that Mehlman's claimed entitlement to a set value of vested shares he could sell on the open market before February 2001 is too indefinite and uncertain, Mehlman ignores and sidesteps a key component of Network Appliance's argument. As Network Appliance noted, Mehlman did not allege, nor can he allege, that he was to receive vested shares, and he does not allege any contractual term about when he was allowed to receive shares for sale on the open market. Nonetheless, he complains that he was not allowed to receive vested shares until a certain point in time for sale on the market, and claims this was breach of contract. Melhman failed to allege, and he cannot allege, a sufficiently definite contract to account for the harms he claims – the offer letter paragraph he quotes says nothing about vesting or about timing for the release of vested shares. *See* Memorandum of Defendant Network Appliance, Inc. in Support of Its Motion to Dismiss (the "Memorandum") at 5.

Mehlman wholly ignores these points and acts as if Network Appliance's sole "indefiniteness" argument concerns the approximate value of the shares he claims, and not Mehlman's additional and related claims regarding the vesting and timing of his receipt of

shares. To the contrary, Network Appliance's argument is directed at the <u>entire context</u> of Mehlman's claim – not just the indefiniteness of the value Mehlman was to receive, but the absence of any contract terms supporting Mehlman's complaints about vesting and timing. Taken together as a whole, these defects are fatal.

Pretending that Network Appliance's argument is directly solely at the indefiniteness of the share value, Mehlman cites cases where the only vague contractual term in otherwise valid contracts was price, or the value of increased future wages when current wages were set. *See* Opposition at 7-9 (citing cases). This is not the correct legal standard given the absence of contract terms supporting the harms Mehlman claims – not just about value, but about vesting and timing of receipt. The cases Network Appliance cited in its opening papers address the situation where the allegations are too indefinite in the <u>entire context</u> alleged, and they are controlling here. *See* Memorandum at 3 (citing recent case law).

By misstating Network Appliance's arguments and failing to even address key points, Mehlman has conceded Network Appliance's arguments regarding the absence of definite terms for all of the harms Mehlman alleges. Mehlman's contract claim should be dismissed for indefiniteness.

As to Network Appliance's argument that Mehlman failed to allege all of the material terms of an employment contract (such as salary, calculation of payments, and the like), Mehlman appears to argue that allegations of an employment contract should be exempted from the general rule that contracts are unenforceable if the material terms are missing. Indeed, he does not dispute Network Appliance's case citations regarding every plaintiff's obligation to include all material terms of an alleged contract, but instead argues that Network Appliance's

cases were not about claims based on employment offer letters – without explaining any reason why the law would differ in this context. *See* Opposition at 11.

At the same time, Mehlman admits by implication that he failed to allege such material terms. *See id.* at 15 ("if necessary Plaintiff could amend to append copies of the offer letter and stock option documentation he received from the defendant, which would reflect such additional terms as salary, benefits, and so forth . . . as well as matters relating to vesting and exercise of options."). Given that Mehlman has based his claim on an alleged failure to provide sufficient options at a certain time to allow sale on the open market, his admission that he failed to include allegations regarding "vesting and exercise" documentation is alone enough to require dismissal.

Finally, Mehlman does not challenge Network Appliance's argument that if a contract claim fails, so too does a duplicative claim for breach of the implied covenant. He therefore concedes the point, and his implied covenant claim should be dismissed.

### B. Mehlman's Tort Claims are Time-Barred and Should be Dismissed without Leave to Amend.

Recognizing the weakness of his tort claims, Mehlman spends very little space in his opposition defending his time-barred breach of fiduciary duty and negligence claims. These claims should be dismissed without leave to amend.

Mehlman agrees that but for the concept of equitable tolling, his tort claims would be barred by the statute of limitations. Thus, there is no dispute regarding the applicable statute of limitations, and no dispute that Mehlman's complaint was filed after the expiration of the statute of limitations.

Mehlman notes the test for equitable tolling, but fails to apply that test to his factual allegations. *See* Opposition at 12 (statute does not begin running until Mehlman has (1)

knowledge or sufficient notice that he was harmed, and (2) knowledge or sufficient notice of what the cause of harm was.) (citation omitted).

Mehlman's own allegations defeat him. He admits that he <u>had knowledge that he was harmed</u> by February 2001, that he <u>knew exactly what the cause of the harm was</u>, and that he <u>knew that it was the defendant who caused the harm he alleges</u>:

> The plaintiff attempted to exercise his fully vested options after November 13, 2000, but was not permitted to do so by Network Appliance. He was precluded from exercising any options until approximately February 5, 2001.

> In approximately early February, plaintiff was provided with documentation concerning his stock options. As of [that date], those stock options did not have a value of $600,000 as stated in the Employment Agreement.

> Upon information and belief, the inability to exercise the fully vested options was the result of the failure of Network Appliance to promptly file a Form S-8 with the Securities and Exchange Commission.

*See* First Amended Complaint ¶¶ 11, 14, 12. Put simply, Mehlman (1) believed he had a contract from the defendant promising him shares worth a set amount available to sell at a certain time; (2) tried to exercise options starting in November 2000 to which he believed he was entitled; (3) knew that the party who did not permit him to do so was the defendant, Network Appliance; (4) knew that in early February 2001, he was allowed to exercise options; and (5) knew that the documents the defendant gave him in February 2001 did not give him the share value to which he believed he was entitled, and thus (6) knew that the defendant was the entity responsible for not giving him the shares he thought he was owed, and that it caused his alleged harm by preventing him from selling any shares at all until February 5, 2001.

These allegations are dispositive. To avoid the statute of limitations, Mehlman now argues that because he allegedly did not know the precise <u>reason</u> that Network Appliance caused the harm he alleges, his tort claims should be equitably tolled. *See* Opposition at 12 ("Plaintiff has alleged that he had no reason to believe until January 2003 that the reason for his inability to exercise his options was NetApp's failure to file the S-8 as promptly as it should have."). This is legally incorrect for two reasons.

First, the test for equitable tolling requires only that the plaintiff know or have sufficient notice of "<u>what the cause of harm was</u>" – not the precise reasons that the defendant causes the harm. *See Bowen v. Eli Lilly & Co., Inc.*, 557 N.E.2d 739, 742 (1990) (stating test). Mehlman alleges that he knew "the cause of the harm" in February 2001 – Network Appliance's failure to give him the shares he believed he was owed, and at the time he believed he was owed them. *See* First Amended Complaint ¶ 14. A belief that one has not timely received enough shares from a particular entity is something readily apparent to anyone – it is not something confusing or hidden, such as being diagnosed with an illness or birth defect but not knowing "what the cause of harm was." Under Mehlman's reading of the test, a plaintiff could always escape the statute of limitations by simply arguing that he did not know the specific, detailed reasons that the defendant caused the alleged harm – and that is not the law.

Second, Mehlman ignores that he had an obligation as a matter of law <u>to conduct a reasonable inquiry</u> after learning of his alleged harm. *See* Memorandum at 7 (collecting cases). At the very least, Mehlman could have tried to learn more, or retained an attorney to see if a lawsuit was possible – and doing so would have indeed pointed to the precise reason for the harm he claims. Had Mehlman or an attorney bothered to investigate after (1) not being permitted to receive any shares until February 2001 and (2) not receiving the number of shares

he believes he should have gotten, he could have easily learned the reason that Network Appliance did not issue him shares until February 2001 – it filed the S-8 document with the SEC that allows issuance of such shares in January 2001. Indeed, that document was filed on January 16, 2001, and was available to the public on the SEC's website – as were the merger documents between Network Appliance and Mehlman's company. As Network Appliance notes in its reply brief in support of its request for judicial notice filed concurrently with this pleading, there is no doubt that the SEC published the document on the Internet on or about January 16, 2001. Mehlman (or an attorney) could have quickly found the S-8 filing through the Internet or by ordering a copy from the SEC, conducted other inquiries, and decided whether or not a lawsuit was colorable.[1]

Mehlman incorrectly argues that Network Appliance's position stands or falls on whether Mehlman should have been aware of the S-8 filing in January 2001. *See* Opposition at 12. Network Appliance's argument encompasses far more than the S-8 filing. Mehlman's own admissions show that he meets the two-element test to deny him equitable tolling, and the fact that he should have known of the S-8 filing is merely an <u>example</u> of the many things Mehlman would have known about (such as the merger contract between Network Appliance and his former company) had he bothered to conduct a reasonable inquiry, as the doctrine of equitable tolling mandates.

---

[1] Had Mehlman bothered to consult an attorney in early 2001, he would have learned that, indeed, publication of key facts on the Internet alone can trigger a relevant statute of limitations. *See generally Van Buskirk v. New York Times Co.*, 325 F.3d 87, 89 (2nd Cir. 2003) (publication of allegedly defamatory article on Internet was triggering date for statute of limitations; claim barred); *Mitan v. Davis*, 243 F. Supp. 2d 719, 724 (W.D. Kentucky 2003) (same).

Yet Mehlman did nothing. He did not hire an attorney, he did not conduct his own investigation, and he did not review the SEC's website. He waited until December 2004 to file a lawsuit, far more than three years after he admittedly had knowledge of the harm he claims and knowledge of "what the cause of harm was." Mehlman cannot possibly amend his complaint to avoid the statute of limitations, and his fiduciary duty and negligence claims should be dismissed without leave to amend.

### C.   Count 5 (Quantum Meruit/Unjust Enrichment) Should be Dismissed.

Mehlman agrees if he has stated a claim for breach of contract, his quantum meruit claim is superfluous. Separately, Mehlman fails to state any reason why the quantum meruit claim should not also be dismissed on the merits. He offers no excuse for his failure to plead lack of justification, and fails to overcome Network Appliance's arguments regarding the uncertainty and indefiniteness of his claim.

### III.

### CONCLUSION

For the foregoing reasons, NetApp respectfully requests the Court to grant its motion and dismiss Plaintiff's Complaint.

-8-

|  |  |
|---|---|
|  | Respectfully Submitted, |
| Dated: February 28, 2005 | NETWORK APPLIANCE, INC. |
|  | By its attorneys, |
|  | /s/ Michael S. D'Orsi<br>Michael S. D'Orsi (BBO #566960)<br>Donnelly, Conroy & Gelhaar, LLP<br>One Beacon Street, 33rd Floor<br>Boston, MA 02108<br>(617) 720-2880 |

Of Counsel:

Alda Leu (*pro hac vice*)
Tait Graves (*pro hac vice*)
Wilson Sonsini Goodrich & Rosati P.C.
One Market Street, Spear Tower, Suite 3300
San Francisco, CA 94105
(415) 947-2252