UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
\*
Brian Mehlman                               \*
                  Plaintiff     \*
                              \*   Civil Action No. 04-12533-WGY
v.                                          \*
                              \*
Network Appliance, Inc.                     \*
                              \*
                 Defendants     \*
\*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.     PRELIMINARY STATEMENT AND STATEMENT OF MATERIAL FACTS**

This memorandum is submitted in support of plaintiff's motion for partial summary judgment on liability. Defendant Network Appliance, Inc. ("NetApp") drafted and forwarded an offer letter to plaintiff Brian Mehlman ("Mehlman"), which he accepted. See Affidavit of Brian Mehlman (hereinafter "Mehlman Affidavit") at ¶ 4; Exhibit A to Mehlman Affidavit (Offer Letter dated September 8, 2000). Defendant then breached the terms of the parties' agreement as set forth in the offer letter.

Pursuant to the plain language of this contract, plaintiff was promised stock options, upon joining NetApp as a full time employee, that would have an approximate value of $600,000 on or about October 1, 2000. See Exhibit A to Mehlman Affidavit (Offer Letter dated September 8, 2000). NetApp failed to provide stock options with such a value on October 1, 2000 or any later date.

NetApp sent its offer letter to Mehlman at a time when he was employed by WebManage Technologies, Inc. and NetApp planned to acquire WebManage. See Mehlman Affidavit at ¶¶ 1 and 2. Although Mehlman became a full-time employee of NetApp on November 15, 2000, (at the time that the closing of the acquisition of Mehlman's current employer by NetApp took place), Mehlman was unable to exercise any options until February, 2001. See Mehlman Affidavit at ¶¶ 5, 16. Although the reasons for defendant's breach are not material to whether or not defendant breached the contract, the apparent reason for the delay is that NetApp did not complete all of the items necessary to fulfill the terms of the employment contract, including filing a form S-8 with the SEC, until January 16, 2001. See Mehlman Affidavit at ¶ 13; Exhibits F (Declaration of Michael D'Orsi), and G (Varney Transcript at pp. 13-14) to Mehlman Affidavit. Despite the promises set forth in the parties' contract, and despite the fact that plaintiff fully performed under the contract, when plaintiff was finally able to exercise his options, the options had a value of substantially less than two-thirds of the promised amount due to the diminution in value of the NetApp stock. See Mehlman Affidavit at ¶¶ 16, 17; Exhibit I to Mehlman Affidavit.

The bottom line is that defendant contracted to provide Mehlman with stock options worth approximately $600,000 and failed to do so. As a result, plaintiff is entitled to partial summary judgment as to liability with regard to his breach of contract claim.

## II.   DISCUSSION

### A.   Standard of Review

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). "Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain…" Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997); see Opara v. Mass. Mut. Life Ins. Co., 441 Mass. 539, 544 (2004); Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 393 (2003) (providing that summary judgment will be rendered if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.).

### III. ARGUMENT

#### A. Mehlman is entitled to Judgment as a Matter of Law as to the Issue of Liability Concerning his Breach of Contract Claim

No genuine issue of fact exists with regard to plaintiff's breach of contract claim. Rather, the sole issue before this Court is one of contractual interpretation, which, as detailed below, is ripe for summary judgment.[1]

#### I. The Parties' Contract:

Under Massachusetts law, "interpretation of a contract is generally a question of law." Fenoglio v. Augat, Inc., 50 F. Supp. 2d 46, 51 (D. Mass. 1999). The "question of whether a contract term is ambiguous is one of law for the judge." Id. (quoting NASCO, Inc. v. Public Storage, Inc., 29 F.3d 28, 32 (1st Cir. 1994)). In the absence of ambiguity, no question of material fact remains for the jury, and summary judgment is appropriate. Id.

Furthermore, Massachusetts law provides, "A contract must not, whenever possible, be construed so as to render any of its terms meaningless." Fenoglio, 50 F. Supp. at 54; see Crimmins & Peirce Co. v. Kidder Peabody Acceptance Corp., 282 Mass. 367, 375 (1933) (providing, "It is to be presumed that parties employ all the provisions and phrases of a written

---

[1] Defendant has raised affirmative defenses including the doctrine of unclean hands, the doctrine of res judicata, waiver, estoppel, latches and/or acquiescence. However, these defenses have no factual support and are conceded by defendant to have no factual support. See Varney Transcript at pp. 26-28, affixed to Mehlman Affidavit as Exhibit J.

3

contract with the purpose that each has an appropriate meaning. In interpreting contracts[,] every word is to be given force so far as practicable."). Additionally, "[p]arties are bound by the plain terms of their contract." Tinkham v. Jenny Craig, Inc., No. 94-0511-C, 1996 Mass. Super. LEXIS 468, at *14 (Mass. Super. Apr. 19, 1996).

In the present action, it is uncontested that a valid contract for employment existed between the parties and that this agreement is embodied, in full, in the September 8, 2000 letter from NetApp to Mehlman. See Exhibits A (Offer Letter) and B (Varney Transcript at pp. 9-10) to Mehlman Affidavit. The offer letter was drafted by NetApp. See Mehlman Affidavit at ¶ 4. It is also uncontested that plaintiff fully performed under the terms of the contract and did not breach the terms of the contract. See Mehlman Affidavit at ¶17; Exhibit I to Mehlman Affidavit (Varney Transcript at p. 25). The pertinent contractual terms are as follows:

> Following the commencement of your full-time employment with Network Appliance, the Company will grant to you options that have an approximate value at the closing of $600,000. This value is comprised of a value assigned shares currently owned ($347,264) with WebManage and options given upon joining Network Appliance ($252,736).

See Exhibit A to Mehlman Affidavit (Offer Letter). Plaintiff joined NetApp as a full-time employee on November 15, 2000. See Mehlman Affidavit at ¶ 5; Exhibits C (Deposition of Brian Mehlman at p. 19) and D (Defendant Network Appliance, Inc.'s Objections and Responses to Plaintiff's First Set of Interrogatories at Response to Interrogatory No. 9) to Mehlman Affidavit.

Pursuant to the plain language of the contract, therefore, upon joining NetApp as a full-time employee, plaintiff was entitled to certain stock options with a value of approximately $600,000. The contract also specifies that the closing is anticipated to occur "around October 1, 2000." See Exhibit A to Mehlman Affidavit (Offer Letter).

4

Therefore, read as a whole, the parties' contract promised plaintiff stock options, upon joining NetApp as a full time employee, that would have an approximate value of $600,000 on or about October 1, 2000.

At the time the parties entered into the contract, Mehlman understood that the value of stock options, both vested and unvested, could be calculated with precision. See Mehlman Affidavit at ¶ 6. Thus, Mehlman understood that the value of stock options was based on the difference between the strike price (i.e., the price at which the employee was entitled to buy the stock) and the price of the stock at the time that the option was exercised. Id. Thus, the higher the market price, the greater the value.

II. Defendant's Breach of these Terms:

Defendant breached each term of the contract set forth above, and consequently, summary judgment on behalf of plaintiff as to liability is appropriate. In particular, although plaintiff was promised stock options upon joining NetApp with an approximate value of $600,000, NetApp breached that term of the contract in that Mehlman was unable to exercise any options until February, 2001. See Mehlman Affidavit at ¶ 16. During the period between October 1, 2000 and February 2001, the value of the stock, and thus, the value of plaintiff's options, declined. Mehlman Affidavit at ¶ 15; Exhibit H to Mehlman Affidavit (Defendant Network Appliance, Inc.'s Objections and Responses to Plaintiff's First Set of Interrogatories at Response to Interrogatory No. 14). Consequently, when plaintiff was finally assigned his options, the options did not have a value of approximately $600,000, as promised in the parties' contract, but rather, had a value of substantially less than two-thirds of that amount because of the diminution in value of the NetApp stock. Mehlman Affidavit at ¶ 16.

In other words, NetApp contracted to provide plaintiff with stock options worth approximately $600,000 as of around October 1, 2000. Even under a more generous interpretation of the agreement, NetApp contracted to provide plaintiff with stock options worth approximately $600,000 as of the date of the closing of the transaction, November 13, 2000. NetApp does not dispute that plaintiff did not receive options worth that amount on either date because he did not have the ability to exercise any options as of either date. By the time he was indeed able to exercise his options, the value of NetApp stock had dropped dramatically.

The agreement, drafted by NetApp, (see Mehlman Affidavit at ¶ 4), did not state, as it could have, that the value of the stock options referred to in the offer letter was based on the stock value as of a particular date. Instead, it stated in quite simple terms that the options would have a value in a particular time frame—and the options indisputably did not have such a value. Under such circumstances, defendant NetApp breached the agreement, plaintiff was harmed as a result of such breach, and plaintiff is entitled to partial summary judgment on the issue of liability.

## **Conclusion**

For the reasons described above, plaintiff is entitled to partial summary judgment on liability with regard to his breach of contract claim.

    Respectfully submitted,

    Brian Mehlman
    by his attorneys,

    COOK, LITTLE, ROSENBLATT
    & MANSON, P.L.L.C.

Dated:  December 2, 2005                      By:  /s/ Arnold Rosenblatt
                                                                            Arnold Rosenblatt (BBO# 638526)
                                                                            650 Elm Street
                                                                            Manchester, NH  03101
                                                                            (603) 621-7102