UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
\*
Brian Mehlman                                  \*
                Plaintiff      \*
                           \*   Civil Action No. 04-12533-WGY
v.                                             \*
                           \*
Network Appliance, Inc.                        \*
                           \*
                Defendants    \*
                           \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF BRIAN MEHLMAN'S OPPOSITION TO NETWORK APPLIANCE, INC.'S MOTION FOR SUMMARY JUDGMENT**

**I.    PRELIMINARY STATEMENT**

Defendant Network Appliance, Inc.'s ("NetApp") motion for summary judgment is based largely on its contention that this large, presumably sophisticated company presented an offer letter to Brian Mehlman ("Mehlman") that contained multiple vague and meaningless terms.[1] NetApp struggles to support this position by relying heavily upon dictionary definitions and extraneous deposition testimony in an effort to overshadow, and even ignore, the plain and unambiguous language of the contract, which contains monetary values, stated time frames, and careful calculations. However, NetApp's strained interpretation of the parties' contract fails to comport with well-established Massachusetts law, which requires every word in a contract to be given force so far as practicable and which requires courts to construe a contract so as not to render any of its terms meaningless. Consequently, defendant's

---

[1] Plaintiff's Response to Defendant Network Appliance, Inc.'s Rule 56.1 Statement of Material Facts in Support of its Motion for Summary Judgment accompanies this document.

summary judgment motion should be denied with respect to plaintiff's breach of contract claim.

Further, contrary to defendant's assertions, under established federal and state law, plaintiffs are permitted to plead counts of breach of contract and quantum meruit in the alternative. The nuance with respect to doing so arises when a court has made a finding that the contract at issue is valid and enforceable. Only upon such a finding will a plaintiff's quantum meruit claim be deemed invalid because recovery in quantum meruit is not appropriate where there is a valid contract covering the subject matter of the dispute (ultimately, there cannot be a valid legally enforceable contract and an implied contract covering the same services). In the case at hand, where the Court has not yet ruled upon the validity of the parties' contract and where the defendant has potentially called its enforceability into question by arguing that the contractual language is vague and essentially meaningless, plaintiff should be permitted to plead these two grounds for relief in the alternative.

## II.    ARGUMENT

In its motion for summary judgment, NetApp artificially divides plaintiff's breach of contract claim into three discrete claims: (1) the so-called start date claim; (2) the so-called option delivery claim; and (3) the so-called adjustment claim. See NetApp's Memorandum of Points and Authorities at pp. 1-2. However, only the "option delivery" claim properly sets forth plaintiff's breach of contract claim and consequently, plaintiff's opposition is responsive to the arguments pertaining to that claim.[2]

---

[2] NetApp's "start date claim" appears to rely upon Mehlman's answer to the question, "What part of this sentence here do you claim in this lawsuit that Network Appliance breached," which was, "The date wasn't October 1. It wasn't around October 1 in my mind." See NetApp's Memorandum of Points and Authorities at p. 6 (citing Mehlman Deposition Transcript at 50:7-8). However, this sentence must be read within the context of the

2

A. **NetApp's Interpretation of the Parties' Agreement Fails to Comport with the Plain Language of the Agreement**.

NetApp correctly states that "[u]nder Massachusetts law, the text of an unambiguous contract dictates the contract's meaning." See Memorandum of Points and Authorities at p. 10 (citing Okmyansky v. Herbalife Int'l of Am., Inc., 415 F.3d 154, 159 (1st Cir. 2005)). Further, Massachusetts law provides, "A contract must not, whenever possible, be construed so as to render any of its terms meaningless." Fenoglio v. Augat, Inc., 50 F. Supp. 2d 46, 51 (D. Mass. 1999); see Crimmins & Peirce Co. v. Kidder Peabody Acceptance Corp., 282 Mass. 367, 375 (1933) (stating, "It is to be presumed that parties employ all the provisions and phrases of a written contract with the purpose that each has an appropriate meaning. In interpreting contracts[,] every word is to be given force so far as practicable."). Defendant's interpretation of the parties' agreement contravenes these established tenets.

In pertinent part, the parties' agreement states as follows:

> The effective date of the position will be upon the close of the acquisition of WebManage by Network Appliance, which is anticipated to be around October 1, 2000. Following commencement of your full-time employment with Network Appliance, the Company will grant you options that have an approximate value at the closing of $600,000. This value is comprised of a value assigned shares

---

deposition. Specifically, plaintiff's responses to the questions asked immediately thereafter indicated that plaintiff was referring only to the stock option issue and led to the following clarifying interchange:
Q: Putting aside the stock options issue that we'll get to in a few minutes. Is there anything other than the stock option dispute that you claim was breached by Network Appliance telling you that the close would be around or anticipated to be October 1, 2000?
A: No. In fact, I believe I was getting paid by NetApp prior to even the October 1st date.
Q: Okay. So the breach that you're leading to is the stock option dispute?
A: That is correct.
See Exhibit B (Mehlman Depo. Transcript) to Declaration of Alda C. Leu in Support of Network Appliance, Inc.'s Motion for Summary Judgment ("Leu Declaration") at pp. 50:18-51:4; Response to Network Appliance, Inc.'s Rule 56.1 Statement of Material Facts in Support of its Motion for Summary Judgment at Response to ¶ 11.

Additionally, apart from stating his belief as to how NetApp might have handled the situation differently, Mehlman does not assert a claim that NetApp breached the parties' agreement by failing to adjust the value of his shares back to $600,000 many weeks after the closing, as is asserted by defendant. See NetApp's Memorandum of Points and Authorities at pp. 2, 9. Rather, plaintiff asserts that pursuant to the plain language of the contract, upon joining NetApp as a full-time employee, plaintiff was entitled to certain stock options with a value of approximately $600,000. Mehlman simply noted at his deposition that NetApp could have corrected its failure to comply with the terms of the contract by adjusting the value at a later date. See Response to Network Appliance, Inc.'s Rule 56.1 Statement of Material Facts in Support of its Motion for Summary Judgment at Response to ¶15.

>currently owned ($347,264) with WebManage and options given upon joining Network Appliance ($252,736).

See Exhibit B-2 (September 8, 2000 Letter) to Leu Decl. First, NetApp devotes substantial energy to defining the term "following" as used in the parties' agreement. See Memorandum of Points and Authorities at pp. 13-14. NetApp distinguishes the phrase "Following the commencement of your employment" from the phrase "upon the commencement" and offers numerous dictionary definitions of the term "following" to define this term accurately. NetApp also offers deposition testimony from plaintiff's deposition wherein NetApp's counsel inquires as to plaintiff's understanding of the term "following." See Memorandum of Points and Authorities at pp. 7-8.

However, the contract itself defines this term in the final sentence provided above -- a sentence that NetApp did not include in its motion for summary judgment, but which was included in plaintiff's claim. See Exhibit B (Deposition Transcript of Brian Mehlman) to Leu Declaration at p. 49:13-21 (defining the terms of the contract that are in dispute); Exhibit B-2 (September 8, 2000 letter) to Leu Declaration; Memorandum of Points and Authorities at p. 1. In particular, the contract distinguishes between shares currently owned by plaintiff and "options given upon joining Network Appliance." Because a court must construe a contract such that no word or phrase is made meaningless by another word or phrase," it is evident that the term following, in the context of the parties' contract, means upon joining Network Appliance. See Memorandum of Points and Authorities at p. 10 (citing Ins. Co. v. Gomez, 426 Mass. 379, 381).

Second, NetApp argues that plaintiff's proposed interpretation of the parties' agreement violates the long-established rule that unless a contract expressly states that "time is of the essence," the parties have a reasonable time to perform. See Memorandum of Points and

4

Authorities at p. 14. However, this rule only applies where the contract at issue contains no specific time limits. See Thermo Electron Corp. v. Schiavone Constr. Co., 958 F.2d 1158, 1164 (1st Cir. 1992) (providing, "Since the contract contained no specific time limits, nor any clause stating that time was 'of the essence,' Thermo had a 'reasonable time' within which to perform..."); Bushkin Assoc., Inc. v. Raytheon Co., 815 F.2d 142, 146 (1st Cir. 1987) ("when a contract is silent as to time, the term shall be a reasonable time based on all the relevant evidence.") (citations omitted). In the case at hand, the parties' contract is not silent as to time, but rather, states that upon joining Network Appliance, the Company will grant plaintiff options. The contract also provides an approximate date for the closing, "around October 1, 2000." Consequently, the "time is of the essence" rule is inapplicable in this instance.

Finally, NetApp argues, "Mr. Mehlman's proposed interpretation is demonstrably unreasonable because Network Appliance was legally required to make a Securities and Exchange Commission filing before making the options available to Mr. Mehlman to sell." See Memorandum of Points and Authorities at p. 14. However, the logistics concerning NetApp's SEC filings are not relevant to issue of whether the express terms of the contract at issue were breached. NetApp is a sophisticated corporation that presented the terms of the offer letter to plaintiff. If NetApp needed additional time before giving plaintiff his options, NetApp could have drafted the offer to include said additional time. NetApp did not do so, and may not now re-draft the terms of the parties' agreement.

In sum, the plain language of the contract, and common sense, does not comport with defendant's strained interpretation. Rather, the language lends itself to plaintiff's interpretation, that pursuant to the plain language of the contract, upon joining NetApp as a full-time employee (as of November 15, 2000), plaintiff was entitled to stock options with a value of approximately

5

$600,000.  Very simply, NetApp breached the contract by failing to perform under these terms. Consequently, NetApp's motion for summary judgment should be denied with regard to plaintiff's breach of contract claim.

    **B. <u>Plaintiff May Plead Counts of Quantum Meruit and Breach of Contract as Alternative Grounds for Relief, Where this Court has Not Yet Ruled on the Validity of the Parties' Agreement and Defendant has Potentially Called its Enforceability into Question.</u>**

As defendant notes, Massachusetts law provides that recovery on a theory of quantum meruit "will generally not lie where the court finds the existence of a valid and enforceable contract."  <u>JML Care Center, Inc. v. Bishop</u>, 2004 Mass. App. Div. 63 at *65 (March 31, 2004); <u>see</u> <u>Boswell v. Zephyr Lines, Inc.</u>, 414 Mass. 241, 250 (1992) (stating, "Recovery in quantum meruit presupposes that no valid contract covers the subject matter of a dispute.  Where such a contract exists, the law need not create a quantum meruit right to receive compensation for services rendered.").

However, it is equally well established that a plaintiff may seek "[r]elief in the alternative or of several different types."  Fed. R. Civ. P. 8.  Additionally, "[I]t is proper for a party to plead counts in contract and quantum meruit covering the same course of events in [a] complaint."  <u>Kashmir Corp. v. Patterson</u>, 43 Ore. App. 45, 48 (1979) (cited within <u>Boswell</u>, 414 Mass. 241 at 250, a case included in defendant's motion for summary judgment).  A plaintiff's quantum meruit claim, therefore, may co-exist with a breach of contract claim until the contract at issue is deemed enforceable and valid by a court.

In the case at hand, this Court has not yet ruled upon the validity of the parties' agreement.  Defendant has potentially called the contract's validity into question by essentially arguing that the terms of the contract are vague and without meaning.  Consequently, defendant's

6

summary judgment motion should also be denied with respect to plaintiff's quantum meruit claim until after a determination has been reached as to the validity of the contract at issue.

### Conclusion

For the reasons described above, defendant's motion for summary judgment should be denied. Plaintiff's Motion for Partial Summary Judgment should be granted for the reasons set forth in plaintiff's moving papers.

                        Respectfully submitted,

                        Brian Mehlman
                        by his attorneys,

                        COOK, LITTLE, ROSENBLATT
                        & MANSON, P.L.L.C.

Dated: January 6, 2006          By:  /s/ Arnold Rosenblatt
                        Arnold Rosenblatt (BBO# 638526)
                        650 Elm Street
                        Manchester, NH 03101
                        (603) 621-7102

### Certificate of Service

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on January 6, 2006.

Date: January 6, 2006           By:  /s/ Arnold Rosenblatt
                        Arnold Rosenblatt