UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                    *
Brian Mehlman                       *
                      Plaintiff     *
                                    *   Civil Action No. 04-12533-WGY
v.                                  *
                                    *
Network Appliance, Inc.             *
                                    *
                      Defendants    *
                                    *
* * * * * * * * * * * * * * * * * * * * * * * *
```

# PLAINTIFF BRIAN MEHLMAN'S RESPONSE TO DEFENDANT NETWORK APPLIANCE, INC.'S RULE 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1, Plaintiff Brian Mehlman ("Mehlman"), through undersigned counsel, respectfully submits the following response to defendant Network Appliance, Inc.'s Rule 56.1 Statement of Material Facts in Support of its Motion for Summary Judgment ("NetApp's Rule 56.1 Statement").

For ease of reference, Mehlman has included the text contained within the "undisputed material fact" portion of NetApp's Rule 56.1 Statement and then provided his response with respect to each paragraph of NetApp's Statement.

1.  Plaintiff Brian Mehlman is an individual residing in New Hampshire.

    **Undisputed.**

2.  Defendant Network Appliance, Inc. is a company incorporated in Delaware, with its headquarters in California.

    **Undisputed.**

3. Plaintiff has sued Defendant for 1) Breach of Contract and 2) Quantum Meruit.

**Undisputed.**

4. In mid-2000, Network Appliance announced its intent to acquire WebManage, a private company that had employed Defendant since 1998.

**Undisputed.**

5. Defendant sent Plaintiff an offer letter dated September 8, 2000.

**Undisputed.**

6. The Parties are uncertain as to who drafted the offer letter-WebManage, Network Appliance, both, or a third party.

**Disputed. The offer-letter appears on NetApp letterhead and is signed by Chris Carlton, NetApp's Vice President of Human Resources during the applicable time frame. See September 8, 2000 Letter, affixed to the Declaration of Alda C. Leu in Support of Network Appliance, Inc.'s Motion for Summary Judgment as Exhibit B-2 ("Leu Decl."). This letter was plainly sent on behalf of NetApp and it is not material to this dispute whether NetApp was assisted by counsel in drafting the letter they ultimately signed and sent to plaintiff for his acceptance.**

7. Mehlman accepted the offer of employment by signing the letter on September 14, 2000.

**Undisputed.**

8. The letter contains an integration clause.

**Undisputed.**

9. Mehlman asserted that apart from the employee benefit documents and the invention assignment agreement and the offer letter, there were no other components of the employment contract.

**Undisputed.**

10. Plaintiff contends there were no other agreements other than the offer letter that was breached by Defendant.

**Undisputed.**

11. Plaintiff contends that Defendant breached the following term of the offer letter: "The effective date of the position will be upon the close of the acquisition of WebManage by Network Appliance, which is anticipated to be around October 1, 2000."

**Disputed in part. This statement, in combination with the statement set forth in number 12 below, mischaracterizes plaintiff's breach of contract claim. In particular, defendant's motion for summary judgment artificially divides plaintiff's breach of contract claim into three discrete claims: (1) the so-called start-date claim; (2) the so-called option delivery claim; and (3) the so-called adjustment claim. See NetApp's Memorandum of Points and Authorities at pp. 1-2.**

**The statements set forth in number 11 and 12 relate to NetApp's artificial creation of a start-date claim, which appears to rely upon Mehlman's answer to the question, "What part of this sentence here do you claim in this lawsuit that Network Appliance breached," which was, "The date wasn't October 1. It wasn't around October 1 in my mind." See NetApp's Memorandum of Points and Authorities at p. 6 (citing Mehlman Deposition Transcript at 50:7-8). However, this sentence must be read within the context of the deposition. Specifically, plaintiff's responses to the questions asked immediately thereafter indicated that plaintiff was referring only to the stock option issue and led to the following clarifying interchange:**
**Q: Putting aside the stock options issue that we'll get to in a few minutes. Is there anything other than the stock option dispute that you claim was breached by Network Appliance telling you that the close would be around or anticipated to be October 1, 2000?**
**A: No. In fact, I believe I was getting paid by NetApp prior to even the October 1st date.**
**Q: Okay. So the breach that you're leading to is the stock option dispute?**
**A: That is correct.**
**See Exhibit B (Mehlman Depo. Transcript) to Leu Decl. at pp. 50:18-51:4.**

12. Plaintiff contends that the above contractual term was breached because the acquisition did not close until Mid-November.

3

**Disputed. See response to Number 11, set forth immediately above.**

13.  Plaintiff contends that Defendant breached the following term of the offer letter: "Following commencement of your full-time employment with Network Appliance, the Company will grant you options that have an approximate value at the closing of $600,000."

**Undisputed.**

14.  Plaintiff contends the Defendant breached its contract with Plaintiff by not providing Plaintiff with appropriate paperwork for possession and exercise of his shares on his first day of work at Network Appliance.

**Undisputed.**

15.  Plaintiff contends that Defendant breached its contract with Plaintiff because by the time Defendant received his paperwork, the options were worth less than $600,000 and Network Appliance failed to compensate him or adjust for the difference.

    Mr. Mehlman agreed that "the phrase 'at the closing' gives some sort of temporal time period for the approximate value" of the shares.

**Disputed.  As stated in Response to Number 11, this sentence, which frames defendant's so-called adjustment claim, mischaracterizes plaintiff's breach of contract claim.  In particular, apart from stating his belief as to how NetApp might have handled the situation differently, Mehlman does not assert a claim that NetApp breached the parties' agreement by failing to adjust the value of his shares back to $600,000 many weeks after the closing, as is asserted by defendant.  See NetApp's Memorandum of Points and Authorities at pp. 2, 9.  Rather, plaintiff asserts that pursuant to the plain language of the contract, upon joining NetApp as a full-time employee, plaintiff was entitled to certain stock options with a value of approximately $600,000.  Mehlman simply noted at his deposition that NetApp could have corrected its failure to comply with the terms of the contract by adjusting the value at a later date.  See Leu Decl. at Exhibit B (Mehlman Depo. Transcript) at pp. 61:18-62:10.**

16. There is nothing in the contract promising any adjustment of that valuation after the S8 was filed and paperwork was delivered.

**Undisputed.**

17. The acquisition of WebManage by Network Appliance closed on or around November 13, 2000.

**Undisputed.**

18. Mr. Mehlman received 7,605 converted WebManage options as a result of the Network Appliance acquisition. As of November 15, 2000, 1,588 of those shares were vested.

**Undisputed, except that plaintiff was unable to exercise the 1588 "vested" shares until the Stock Assumption Agreements were available in February 2001**

19. Network Appliance's share value closed at $84.50 on November 13, 2000, $76.12 on November 15, 2000, $58.12 on January 16, 2001, and $45.00 on February 15, 2001.

**Undisputed.**

20. Plaintiff began employment at Network Appliance on or around November 15, 2005.

**Disputed, as plaintiff began employment at Network Appliance on or around November 15, 2000, not 2005. See NetApp's Memorandum of Points and Authorities at p. 3.**

21. Network Appliance registered the shares associated with its acquisition of WebManage on January 16, 2001 by filing a Form S-8 with the Securities and Exchange Commission.

**Undisputed.**

22. Plaintiff was informed on January 19, 2001 that he was able to exercise his vested Network Appliance shares.

**Undisputed, but in fact he was unable to exercise these shares at that time.**

23. Plaintiff received three Stock Assumption Agreements from Network Appliance regarding Plaintiff's WebManage options around February 9, 2001.

**Undisputed.**

24. Plaintiff did not sell any converted Network Appliance options related to the WebManage conversion until June 2, 2003.

**This allegation is not material to the instant motion for summary judgment, as this motion involves interpretation of the parties' contract only. However, this allegation is undisputed.**

25. Mehlman left Network Appliance in July 2004.

**Undisputed.**

26. Mehlman's quantum meruit claim is also based on his allegations that Network Appliance did not timely provide him with stock options of a certain value.

**Undisputed.**

27. Mehlman did not form his current beliefs about what the contract entitled him to until 2003.

**This allegation is not material to the instant motion for summary judgment, as this motion involves interpretation of the parties' contract only.  However, should this allegation be deemed material, it is disputed in part because the deposition testimony upon which NetApp relies in drawing this conclusion indicates that Mehlman did not form his current beliefs about his standing and ability to initiate a viable lawsuit until 2003, not that Mehlman did not form his current beliefs about what the contract entitled him to until 2003, as NetApp suggests.  See Exhibit B-2 (Mehlman Depo. Trans.) to Leu Decl. at pp. 148:10-149:15.**

Respectfully submitted,

Brian Mehlman
by his attorneys,

COOK, LITTLE, ROSENBLATT
& MANSON, P.L.L.C.

Dated:  January 6, 2006                    By:   /s/ Arnold Rosenblatt
                                                 Arnold Rosenblatt (BBO# 638526)
                                                 650 Elm Street
                                                 Manchester, NH  03101
                                                 (603) 621-7102


Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on January 6, 2006.


Date:  January 6, 2006                     By:   /s/ Arnold Rosenblatt
                                                 Arnold Rosenblatt