**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

BRIAN MEHLMAN,

Plaintiff,

v.

NETWORK APPLIANCE, INC.,

Defendant.

CIVIL ACTION NO. 04-12533-WGY

Hon. Judge William G. Young

**DEFENDANT NETWORK APPLIANCE, INC.'S OPPOSITION TO PLAINTIFF BRIAN MEHLMAN'S RULE 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, Defendant Network Appliance hereby identifies factual assertions by Mr. Mehlman in his Statement of Material Facts in support of his Motion for Partial Summary Judgment which are disputed.[1] At the same time, the parties agree that their Agreement may be interpreted as a matter of law.

[1] Network Appliance has filed its own motion for summary judgment, a supporting memorandum, and a supporting Rule 56.1 statement with a Declaration of Alda Leu attaching exhibits and deposition transcripts. In its motion, Network Appliance includes a request for judicial notice of the Securities and Exchange Commission rules, cited here in opposition to Mr. Mehlman's fourth asserted material fact.

| **Mr. Mehlman's Asserted Material Fact:** | **Network Appliance's Opposition and Supporting Evidence:** |
|---|---|
| 4. "At the time of this acquisition, Mehlman was already entitled to and owned vested and exercisable stock options pursuant to WebManage's employee stock option plan." | Network Appliance disputes this paragraph. Specifically, Mr. Mehlman did not own "exercisable" WebManage stock options because WebManage was not a public company. Network Appliance first had to register the post-acquisition stock options with the SEC before they could be "exercisable" for Mr. Mehlman. *See* <www.sec.gov/divisions/corpfin/forms/s-8.htm> (filing requirement); *see also* Network Appliance Memorandum of Points and Authorities in Support of Motion for Summary Judgment (MPA) at 15 n.1 (requesting judicial notice of SEC rules). |

| **Mr. Mehlman's Asserted Material Fact:** | **Network Appliance's Opposition and Supporting Evidence:** |
|---|---|
| 10. "At the time Mehlman entered into the employment contract with NetApp, he understood with precision how to calculate the value of both his vested and unvested stock options. [citation] Mehlman understood that the value of a stock option was based upon the difference between the strike price and the price of the stock at the time that the option was exercised." | Network Appliance disputes this paragraph. Specifically, to the extent Mr. Mehlman is attempting to alter the meaning of the word "value" in the parties' Agreement, the Agreement makes clear that the "value" meant a "value assigned" to former WebManage shares plus a value for "options given upon joining Network Appliance." The Agreement does not discuss a strike price or define "value" by subtracting a strike price.<br>*See* Declaration of Alda Leu in Support of Network Appliance's Motion for Summary Judgment, Exhibit B (parties' Agreement). |

| **Mr. Mehlman's Asserted Material Fact:** | **Network Appliance's Opposition and Supporting Evidence:** |
|---|---|
| 11. "Mehlman also understood that it would be possible to impact the value of an option by adjusting the strike price." | Network Appliance disputes this paragraph. Specifically, to the extent Mr. Mehlman is attempting to alter the meaning of the word "value" in the parties' Agreement, the Agreement makes clear that the "value" meant a "value assigned" to former WebManage shares plus a value for "options given upon joining Network Appliance." The Agreement does not discuss a strike price or define "value" by subtracting a strike price. *See* Declaration of Alda Leu in Support of Network Appliance's Motion for Summary Judgment, Exhibit B (parties' Agreement). |

| **Mr. Mehlman's Asserted Material Fact:** | **Network Appliance's Opposition and Supporting Evidence:** |
|---|---|
| 12. "At the time Mehlman entered into the employment contract, he understood that as an inducement to join NetApp, he was to be granted additional stock options that would be granted upon the commencement of his employment with Network Appliance." | Network Appliance disputes this paragraph. Specifically, the parties' Agreement contradicts this assertion, because it states that the options would be delivered "*following* the commencement" of Mr. Mehlman's employment, not "*upon* the commencement." *See* Declaration of Alda Leu in Support of Network Appliance's Motion for Summary Judgment, Exhibit B (parties' Agreement). |

| **Mr. Mehlman's Asserted Material Fact:** | **Network Appliance's Opposition and Supporting Evidence:** |
|---|---|
| 13. "Mehlman's vested and exercisable WebManage options were to be converted to 1600 shares of NetApp options at a strike price of $10 per share." | Network Appliance disputes this paragraph. Specifically, to the extent Mr. Mehlman is attempting to alter the meaning of the word "value" in the parties' Agreement, the Agreement makes clear that the "value" meant a "value assigned" to former WebManage shares plus a value for "options given upon joining Network Appliance." The Agreement does not discuss a strike price or define "value" by subtracting a strike price.<br>*See* Declaration of Alda Leu in Support of Network Appliance's Motion for Summary Judgment, Exhibit B (parties' Agreement).<br>Separately, the number of vested shares was 1588, not 1600. *See id.* Exhibit I (Network Appliance's Response to Interrogatory No. 1). |

| **Mr. Mehlman's Asserted Material Fact:** | **Network Appliance's Opposition and Supporting Evidence:** |
|---|---|
| 14. "Options on an additional 300 shares at the same strike price fully vested as of January 2001." | Network Appliance disputes this paragraph. Specifically, to the extent Mr. Mehlman is attempting to alter the meaning of the word "value" in the parties' Agreement, the Agreement makes clear that the "value" meant a "value assigned" to former WebManage shares plus a value for "options given upon joining Network Appliance." The Agreement does not discuss a strike price or define "value" by subtracting a strike price. *See* Declaration of Alda Leu in Support of Network Appliance's Motion for Summary Judgment, Exhibit B (parties' Agreement). |

| **Mr. Mehlman's Asserted Material Fact:** | **Network Appliance's Opposition and Supporting Evidence:** |
|---|---|
| 16. "On multiple occasions between November 2000 and February 2001, Mehlman inquired about selling stock options but was told he could not do so, contrary to the terms of the employment agreement." | Network Appliance disputes this paragraph. First, nothing in the parties' Agreement entitled Mr. Mehlman to options on his first day of work, and thus Network Appliance did not breach the contract by not delivering the shares immediately. Second, Mr. Mehlman was informed on January 19, 2001 that he was able to exercise his vested Network Appliance shares. *See id.* Exhibit B (deposition transcript at 112:16-113:11; Exhibit B (Exhibit 8, Chris Liotta email)). |

| **Mr. Mehlman's Asserted Material Fact:** | **Network Appliance's Opposition and Supporting Evidence:** |
|---|---|
| 17. "NetApp did not complete all of the items necessary to fulfill the terms of the employment contract, including filing its form S-8 with the SEC, until at least January 16, 2001." | Network Appliance disputes this paragraph. Specifically, to the extent Mr. Mehlman means to assert that he was entitled to stock options on his first day of work, such that Network Appliance was contractually bound to meet its SEC requirements by his first day of work, the parties' Agreement contains no such term. To the contrary, it states that the options are to be delivered "following the commencement" of Mr. Mehlman's employment. |
| 18. "Transfer of stock options did not take place until the execution of stock assumption agreements, which took place on February 9, 2001." | Network Appliance disputes this paragraph. Specifically, Mr. Mehlman was informed on January 19, 2001 that he was able to exercise his vested Network Appliance shares. *See id.* Exhibit B (deposition transcript at 112:16-113:11; Exhibit B (Exhibit 8, Chris Liotta email)). |

| **Mr. Mehlman's Asserted Material Fact:** | **Network Appliance's Opposition and Supporting Evidence:** |
|---|---|
| 19. "Mehlman was not able to exercise any options until after that date." | Network Appliance disputes this paragraph. Specifically, Mr. Mehlman was informed on January 19, 2001 that he was able to exercise his vested Network Appliance shares. *See id.* Exhibit B (deposition transcript at 112:16-113:11; Exhibit B (Exhibit 8, Chris Liotta email)). |
| 20. "During the period between October 1, 2000 and February 2001, the value of the NetApp stock, and thus, the value of Mehlman's options, declined at the same time." | Network Appliance disputes this paragraph. Specifically, the "value" of the NetApp options did not decline between October 2000 and February 2001 – to the contrary, it peaked around early December 2000, and only then declined through February 2001. |

| **Mr. Mehlman's Asserted Material Fact:** | **Network Appliance's Opposition and Supporting Evidence:** |
|---|---|
| 21. "Mehlman was unable to exercise any options until after February 9, 2001 and at that time, these options did not have a value of $600,000, as stated in the employment agreement, but rather, had a value of substantially less than two-thirds of that amount because of the diminution of value of NetApp Stock. [citation] Thus, as a result of the breach of the contract, Mehlman was damaged." | Network Appliance disputes this paragraph. First, Mr. Mehlman was informed on January 19, 2001 that he was able to exercise his vested Network Appliance shares. *See id*. Exhibit B (deposition transcript at 112:16-113:11; Exhibit B (Exhibit 8, Chris Liotta email)). Second, the text of the parties' Agreement contradicts Mr. Mehlman's assertion that the "value" of about $600,000 was to be calculated in early 2001. Rather, it was to be calculated "at the closing," a date the parties agree was November 13, 2000. *See id*. Exhibit B (Agreement). Third, Mr. Mehlman was not "damaged" because the parties" Agreement does not entitle him to what he demands. |

| **Mr. Mehlman's Asserted Material Fact:** | **Network Appliance's Opposition and Supporting Evidence:** |
|---|---|
| 23. "Defendant conceded that its affirmative defenses have no factual support." | Network Appliance disputes this paragraph. Specifically, it does not presently intend to press its affirmative defenses, but reserves the right to do so. In addition, Network Appliance's statute of limitations defense was successful to bar Mr. Mehlman's tort claims, and thus Mr. Mehlman may not resurrect them now in the guise of a contract argument. |

DATED: January 6, 2006

NETWORK APPLIANCE, INC.

By its attorneys,

/S/ Tait Graves

James A. DiBoise (*pro hac vice*)
Tait Graves, (*pro hac vice*)
Alda C. Leu, (*pro hac vice*)
Wilson Sonsini Goodrich & Rosati
Professional Corporation
One Market, Spear Street Tower, Suite 3300
San Francisco, CA 94105
(415) 947-2156

/S/ Michael S. D'Orsi

Of Counsel:

Michael S. D'Orsi (BBO #566960)
Donnelly, Conroy & Gelhaar, LLP
One Beacon Street, 33rd Floor
Boston, MA 02108
(617) 720-2880