UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
\*
Brian Mehlman                              \*
               Plaintiff    \*
\*  Civil Action No. 04-12533-WGY
v.                                         \*
\*
Network Appliance, Inc.                    \*
\*
              Defendants    \*
\*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF BRIAN MEHLMAN'S REPLY TO
DEFENDANT NETWORK APPLIANCE, INC.'S OPPOSITION TO
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

**I.    <u>PRELIMINARY STATEMENT</u>**

Plaintiff Brian Mehlman submits this reply in further support of his motion for partial summary judgment on liability.[1]  Since plaintiff already has addressed the issues in this matter in its moving papers as well as in its opposition to defendant's motion for summary judgment, plaintiff simply is addressing limited issues.  Plaintiff respectfully refers this Court to its previous papers for a more complete discussion of plaintiff's position and the pertinent issues.

Despite defendant Network Appliance, Inc.'s ("NetApp") attempts to artificially divide plaintiff's breach of contract claim, plaintiff's claim remains straightforward.  Pursuant to the plain language of the contract, upon joining NetApp as a full-time employee, plaintiff was entitled to stock options with a value of approximately $600,000.[2]   Very simply, as detailed in

---

[1] Plaintiff's Reply is submitted pursuant to the Court's scheduling order.
[2] NetApp's tripartite interpretation of plaintiff's breach of contract claim, as set forth in its Opposition brief, is reminiscent of the so-called "start date claim", "option-delivery claim" and "adjustment claim" division provided in NetApp's Memorandum of Points and Authorities at pp. 1-2. Mehlman's arguments pertaining to this artificial

1

Mehlman's previously filed pleadings in this action, NetApp breached the contract by failing to perform under these express terms. Contrary to NetApp's assertions, NetApp's interpretation of the parties' contract, and not Mehlman's, contravenes established Massachusetts law by straining to define terms through extrinsic material and dictionary definitions when these terms are already defined in the contract itself and by urging this to Court deem other included terms essentially meaningless or illusory.

## II. ARGUMENT

### A. NetApp, and not Mehlman, Ignores the Contractual Terms that Make Plain that Marketable Stock Options were Due to Mehlman Upon Joining NetApp.

NetApp again strains to define the term "following" as used in the parties' agreement. See NetApp's Memorandum of Points and Authorities at pp.13-14. NetApp again distinguishes the phrase "Following the commencement of your employment" from the allegedly absent, but crucial, phrase "upon the commencement" and again cites to numerous dictionary definitions of the term "following" to define this term accurately. See NetApp's Opposition Brief at p. 2.

However, as Mehlman explains in his Opposition brief, the contract itself defines this term in a sentence that NetApp failed to include in its arguments. See Mehlman's Opposition Brief at p. 4. In particular, the contract defines the $600,000 value contained therein as "comprised of a value of assigned shares currently owned ($347,264) with WebManage and options given upon joining Network Appliance ($252,736)." Id. at pp. 3-4. (Emphasis added.) Consequently, because a court must construe a contract such that no word or phrase is made meaningless by

---

division are elaborated in his Opposition to NetApp's Memorandum of Points and Authorities at pp. 2-3. Mehlman only adds, in further response to the "start date claim" related arguments set forth in Part B of NetApp's Opposition Brief, that Mehlman's claim does not focus upon "anticipatory phrases," as NetApp alleges. See NetApp's Opposition Brief at p. 4. Rather, Mehlman's claim closely tracks the plain and unambiguous language of the contract that upon joining Network Appliance, the "Company will grant you options that have an approximate value at the closing of $600,000." The closing occurred on or around November 13, 2000, and Mehlman joined NetApp on our about November 15, 2000, but Mehlman did not receive these options in the time frame promised or in the amount promised. Any depiction of plaintiff's claim that strays from that premise is inaccurate.

another word or phrase, it is evident that the term following, in the context of the parties' contract, means upon joining Network Appliance. <u>Id.</u> at p. 4.

Even further, and consistent with this mandate, defendant's reading of the term "following" to mean some unspecified time after plaintiff joined NetApp ignores the fact that the contract consistently references a particular time frame - the closing- and the pertinent language of the contract defines specific events pursuant to that time frame. The contract references this time frame twice - (1) plaintiff's position becomes effective upon the close of the acquisition and (2) the value of plaintiff's options is ascribed a value as of the date of the closing. <u>See</u> Exhibit B-2 (September 8, 2000 Letter) to Leu Declaration. A reasonable interpretation of the contract would consider that its drafter did not twice reference this time frame at random. Rather, read for consistency, the contract's time frame provides that plaintiff's position commences at the time of the closing and at that time, plaintiff will receive options that will have a value of approximately $600,000. To read this agreement under defendant's interpretation would render these terms meaningless and extraneous.

Additionally, NetApp again argues that Mehlman's proposed interpretation ignores Network Appliance's obligation, required by law, to first register the stock options with the S.E.C. after the close of the acquisition, and before delivering them to employees. <u>See</u> NetApp's Opposition at p. 3. However, as noted in Mehlman's opposition to NetApp's summary judgment motion, the logistics concerning NetApp's S.E.C. filings are not relevant to the issue of whether the express terms of the contract were breached. <u>See</u> Mehlman Opposition at p. 5. NetApp is a sophisticated corporation that presented the terms of the offer letter to plaintiff. If NetApp required additional time before giving plaintiff his options, NetApp could have drafted or amended this offer to include said additional time.

NetApp also devotes substantial attention to its allegation that although the parties' contract was not negotiated, and was indisputably not drafted by Mehlman, and although the contract was printed on NetApp's letterhead and signed by Chris Carlton, NetApp's Vice President of Human Resources during the applicable time frame, NetApp cannot pinpoint who drafted the Agreement - WebManage, NetApp, persons representing both companies, or even a third party. Whether NetApp first drafted the document is not material to this action, but rather, NetApp had every opportunity to alter, adjust, or re-draft the terms of its offer letter prior to sending it to plaintiff. Consequently, NetApp was responsible for the content of this document.

    **B. NetApp's Illusory Definition of the Term "Value" as Set Forth in the Parties' Contract Defies Reason and Does Not Serve to Negate NetApp's Breach.**

NetApp asserts, "The parties agree that the 'closing'...took place on November 13, 2000. According to the plain text of the Agreement, that was the sole date on which the 'approximate value' was to be measured. And as noted above, the value of the shares was indeed approximately $600,000 on November 13, 2000." See NetApp's Opposition Brief at p. 5. This concept of "value" is illusory at best, as options do not have a value to their recipient until they are assigned. A theoretical and intangible value, which plaintiff could not access or benefit from, does not satisfy the terms of the parties' agreement. Contrary to NetApp's assertions, these options did not have a value of $600,000 to plaintiff on or about November 13, 2000, and therefore, NetApp breached the express terms of the parties' agreement.

Additionally, NetApp argues that because "employees take stock options in technology companies with the understanding that they can gain in value, lose value, or even prove worthless," plaintiff's interpretation of the parties' agreement is contrary to the way stock markets and stock options operate. See NetApp's Opposition Brief at p. 5. This argument misses the threshold issue that forms the basis of plaintiff's claim. Defendant promised that

plaintiff would start out, upon joining NetApp, with options with a certain value. However, the reality was that upon joining NetApp, plaintiff was not given his due stock options and when options were finally transferred to plaintiff by the defendant, at a much later date than agreed, the value of assigned options was substantially less than the $600,000 promised.

## Conclusion

For the reasons described above and set forth in plaintiff's previously filed papers in the above-captioned action, Plaintiff's Motion for Partial Summary Judgment should be granted and Defendant's Motion for Summary Judgment should be denied.

Respectfully submitted,

Brian Mehlman
by his attorneys,

COOK, LITTLE, ROSENBLATT
& MANSON, P.L.L.C.

Dated:  January 17, 2006        By:  /s/ Arnold Rosenblatt
                                Arnold Rosenblatt (BBO# 638526)
                                650 Elm Street
                                Manchester, NH  03101
                                (603) 621-7102

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on January 17, 2006.

Date:  January 17, 2006

/s/ Arnold Rosenblatt
Arnold Rosenblatt, Esquire

5

<u>Rule 7.1 Certification</u>

  As is recited in Defendant's Motion for Summary Judgment, prior to filing its Motion for Summary Judgment, plaintiff's counsel conferred with defendant's counsel and attempted to resolve or narrow the issues presented therein.

Date: January 17, 2006       ___/s/ Arnold Rosenblatt_____
                 Arnold Rosenblatt, Esquire