UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRIAN MEHLMAN,<br><br>        Plaintiff,<br><br>    v.<br><br>NETWORK APPLIANCE, INC.,<br><br>        Defendant. | CIVIL ACTION NO. 04-12533-WGY<br><br>Hon. Judge William G. Young |

DEFENDANT NETWORK APPLIANCE, INC.'S
REPLY TO PLAINTIFF BRIAN MEHLMAN'S OPPOSITION TO NETWORK
APPLIANCE'S MOTION FOR SUMMARY JUDGMENT

I.  **INTRODUCTION**

Mr. Mehlman's opposition is unconvincing. To begin with, he abandons two of the breach of contract assertions he made during his deposition. Mr. Mehlman thus clarifies that the sole issue before this Court is whether the parties' September 2000 Agreement required Network Appliance to take every step necessary to give Mr. Mehlman the paperwork for fully marketable stock options on his first day of work, such that Mr. Mehlman could have sold his vested options that very day. The contract says no such thing, and Network Appliance is thus entitled to summary judgment.

Mr. Mehlman has a very difficult burden: he must persuade the Court that the text of the contract alone shows the parties' mutual intent that he would instantly have marketable options as soon as he began work at Network Appliance. For all of the reasons described below, Mr. Mehlman's opposition in support of his extreme position fails to overcome Network Appliance's arguments for summary judgment on the breach of contract and quantum meruit claims.

II. **REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

   A.  **Mr. Mehlman's Interpretation of the Contract is Not Supported by the Plain Language of the Offer Letter.**

Mr. Mehlman argues in opposition, much as he did in deposition testimony, that the language of the parties' Agreement entitled him to full delivery of everything necessary to be able to sell the vested portion of his stock options on the market on his first day of work. There are numerous problems with Mr. Mehlman's argument, which, taken together, make his proposed interpretation wholly untenable:

- First, Mr. Mehlman fails to point to any language in the contract whatsoever that expressly states that he would receive everything necessary to sell options on the market on his first day of work. Without such language, his claim fails, because there was no meeting of the minds on such an issue;

- Second, Mr. Mehlman does not dispute Network Appliance's point that courts may use dictionaries as a reference when interpreting contractual text, and offers no opposition or

contrary references to Network Appliance's point that the phrase "following the commencement" does not mean "upon the commencement" or "at the commencement";

- Third, Mr. Mehlman admitted in deposition that the Agreement did *not* guarantee him $600,000 in income, testimony which is inconsistent with his current position;

- Fourth, Mr. Mehlman does not dispute Network Appliance's point that the options did in fact have a value of around $600,000 when the Network Appliance/WebManage acquisition closed, and the contract required nothing more;

- Fifth, Mr. Mehlman's reference in his opposition brief to the sentence in the Agreement which refers to "options given upon joining Network Appliance ($252,736)" *undermines* his argument that the contract required delivery of $600,000 of marketable options on his first day of work. $252,736 is not $600,000, and the phrase obviously does not contemplate or require an immediate delivery of the paperwork to sell $600,000 worth of options (or any other amount) on Mr. Mehlman's first day of work. Indeed, the sentence merely underscores that there were two sources of his options that would be granted as a result of the merger, one of which came from WebManage and one from Network Appliance, and says nothing about actual delivery of the paperwork for registered, marketable options ready to sell. The merger itself may have signaled a grant of stock options in some abstract sense, but registration and paperwork were necessary to transform such options into shares that could be sold on the NASDAQ stock market, and the contract did not require Network Appliance to perform those steps before Mr. Mehlman's first day. Yet that is what Mr. Mehlman demands. It is not convincing for Mr. Mehlman to point to a phrase mentioning only $252,736 of his options to argue that such a phrase entitles him to $600,000 of registered shares in marketable form on his first day of work.

- Sixth, and as to SEC registration, Mr. Mehlman admits that Network Appliance had to first register the options with the Securities and Exchange Commission before they could be marketable, but argues in unconvincing fashion that Network Appliance's obligation to obey the law and make such a registration is "not relevant" to whether or not the contract forced

Network Appliance to give Mr. Mehlman marketable options on his first day of work. Mr. Mehlman clearly wishes that there were no such SEC registration requirement because the existence of that legal obligation undermines his claimed entitlement to a near-instantaneous delivery of marketable shares;

• Seventh, and similarly, Mr. Mehlman fails to address Network Appliance's point that Network Appliance could not have registered the WebManage portion of the shares with the Securities and Exchange Commission before Network Appliance gained ownership of them through the close of the WebManage acquisition;

• Eighth, Mr. Mehlman argues that Network Appliance's case law about parties having a reasonable time to perform contractual terms does not apply, because the Agreement gave a time estimate as to when the WebManage/Network Appliance acquisition would close. But that estimate was not an estimate of when Network Appliance would deliver the paperwork for marketable options, much less a deadline or "time is of the essence" requirement for Network Appliance to do so. As Network Appliance explained in its opening papers, the law is clear that in the absence of such language, parties have a reasonable time to perform a contractual term as a matter of law.

• Ninth, and finally, Mr. Mehlman fails to explain why a contact with no such terms *must* be read to charge Network Appliance with a duty to rush to take every possible step to get Mr. Mehlman the paperwork necessary to sell his options when he arrived for his first day of work, a time *less than forty-eight hours* after the Network Appliance/WebManage acquisition closed. If Network Appliance had such a strict and extreme obligation, the Agreement would have spelled it out.

### B. Mr. Mehlman may not Resurrect his Time-Barred Tort Claims Through his Breach of Contract Claim.

When Mr. Mehlman argues that a contract which says nothing whatsoever about giving him fully marketable shares he could sell on his first day of work in fact does so, he is mis-using his contract claim to try to resurrect his time-barred tort causes of action. He may not do so, because contract claims are judged strictly by what the contract requires, and Mr. Mehlman

cannot use the Agreement as a springboard to make extra-contractual assertions under a tort-like theory.

Mr. Mehlman originally sued Network Appliance for a host of tort claims, in addition to the contract claim, and alleged that Network Appliance took too long to register the options with the SEC and to deliver to him the paperwork for marketable options. Those claims were time-barred and thus dismissed after motion practice in early 2005.

Forced into a difficult position, Mr. Mehlman has attempted to make his contract say things that it does not say as a substitute for the failed tort claims. But the Agreement does not promise Mr. Mehlman that Network Appliance will give him all of his paperwork for marketable shares on the day he starts working, and it does not promise him that regardless of how the stock performs on the NASDAQ market he would get $600,000 of guaranteed income. The Agreement is governed by its text alone, and no other requirements can be inserted into it. Network Appliance is entitled to summary judgment on Mr. Mehlman's breach of contract claim.

### C.     Mr. Mehlman's Duplicative Quantum Meruit Claim Fails.

Mr. Mehlman concedes that where a valid contract exists, a claim in quantum meruit cannot stand. *See* Opposition at p. 6. To avoid summary judgment on his quantum meruit claim – which he admitted in deposition testimony duplicates his breach of contract claim – Mr. Mehlman argues that *Network Appliance* believes that the September 2000 contract is invalid and meaningless. *See* Mehlman Opposition at 6. Network Appliance nowhere makes any such assertion; the contract is valid and is unambiguous. *See* Network Appliance Memorandum of Points and Authorities at 11 ("the Court may construe the unambiguous contract as a matter of law."). Because there is nothing to Mr. Mehlman's quantum meruit claim other than repetition of his contract claim, Network Appliance is entitled to summary judgment on that cause of action.

## III.  CONCLUSION

Network Appliance respectfully requests an order granting Network Appliance's motion for summary judgment.

DATED:  January 17, 2006                    NETWORK APPLIANCE, INC.

By its attorneys,

/s/ Tait Graves
James A. DiBoise (*pro hac vice*)
Tait Graves, (*pro hac vice*)
Alda C. Leu, (*pro hac vice*)
Wilson Sonsini Goodrich & Rosati
Professional Corporation
One Market, Spear Street Tower, Suite 3300
San Francisco, CA  94105
(415) 947-2156
tgraves@wsgr.com


/s/ Michael S. D'Orsi
Of Counsel:

Michael S. D'Orsi (BBO #566960)
Donnelly, Conroy & Gelhaar, LLP
One Beacon Street, 33rd Floor
Boston, MA  02108
(617) 720-2880
msd@dcglaw.com


### CERTIFICATE OF SERVICE

I hereby certify that the document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 17, 2006.


DATED:      January 17, 2006                    /s/ Michael S. D'Orsi