UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
\*
Brian Mehlman                                            \*
                     Plaintiff   \*
                            \*   Civil Action No. 04-12533-WGY
v.                                                          \*
                            \*
Network Appliance, Inc.                              \*
                            \*
               Defendants   \*
\*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**JOINT PRETRIAL SUBMISSION**

      Brian Mehlman ("Mehlman") and Network Appliance, Inc. by their undersigned counsel, submit the following pretrial submission pursuant to this Court's February 1, 2006 Procedural Order Re: Final Pretrial Conference/Trial.

      **1.**      **Summary of Evidence**

            **a.**      ***Mehlman's Concise Summary of Evidence***

      Mehlman will offer evidence that proves that:

      1.      Network Appliance's September 8, 2000 offer letter to Mehlman reflected the value of Mehlman's services to Network Appliance.  Network Appliance's offer letter to Mehlman appears on Network Appliance letterhead and is signed by Chris Carlton, then-Vice President of Human Resources for Network Appliance.

      2.      Network Appliance's offer letter contemplated a mixed-compensation package to attract and retain Mehlman's loyalty and continued service in a highly-competitive industry.  The compensation package included an annualized salary of

$100,000 in addition to stock options with an approximate value of $600,000. The anticipated value of the options was based on the difference between the strike price in the options and the market price of Network Appliance stock. The anticipated value also was based on being able to exercise the option (i.e. purchase) Network Appliance stock.

3. Pursuant to the terms of the offer letter, Network Appliance promised to convert Mehlman's existing WebManage stock options into $347,264 of Network Appliance stock options. Network Appliance further promised to grant to Mehlman $252,736 in new Network Appliance stock options.

4. Mehlman became an employee of Network Appliance on approximately November 13, 2000. He could not exercise any options at that time and could not exercise any options until about February 9, 2001. This was because of several circumstances including the fact that a Form S-8 with the Securities and Exchange Commission was not yet filed and certain documentation needed to be delivered to Mehlman that would enable him to exercise.

5. At the time, on approximately February 9, 2001, that Mehlman could exercise any shares (after the deliver of his stock option assumption agreement) the value of Network Appliance stock had dropped to $38.00 per share, reducing the value of Mehlman's stock options from $600,000 to approximately $178,980. In order to mitigate damages, Mehlman refrained from exercising his options at such time in the expectation that the stock price would rise higher.

6. In reliance on the terms of the offer letter, Mehlman substantially and in good faith performed services for Network Appliance for which he expected, but did not receive, compensation consistent with his understanding of the terms of the offer letter

(including the full value of the stock options). Mehlman worked for about four years at Network Appliance.

7. Mehlman's substantial performance conveyed a measurable benefit to Network Appliance, which Network Appliance accepted, but for which Network Appliance did not fully compensate Mehlman under the terms of the offer letter.

8. Mehlman suffered unjust detriment as a result of Network Appliance's failure to fully compensate Mehlman under the terms of the offer letter.

9. Mehlman ultimately exercised those options that were described in the offer letter and netted $24, 442 rather than $600,000. Mehlman ultimately netted less than $17,000 on those options that had vested (those shares that Mehlman could legally exercise as of that date) as of February 9, 2001. Those vested options (along with the unvested options) had substantially higher values as of September 8, 2000, October 1, 2000 and November 13, 2000. Mehlman was damaged in that he only received these lower amounts rather than the amounts contemplated by Mehlman and Network Appliance (as evidenced by the offer letter). Mehlman will present evidence on the different values on the different dates.

    **b.**  ***Network Appliance's Concise Summary of Evidence***

    Network Appliance will present evidence at trial that proves that:

(1) Network Appliance acquired WebManage in a deal that closed November 13, 2000, and employed Brian Mehlman from November 15, 2000 to July 2, 2004.

(2) In return for Mr. Mehlman's performance of job responsibilities beginning on November 15, 2000 and ending on July 2, 2004, Network Appliance compensated Mr. Mehlman with a salary, benefits, stock options, and additional option grants. Network

Appliance provided stock options as a potential to profit from the company's stock market performance, not as a guarantee of any income. As to the parties' employment agreement, Network Appliance will show if necessary that it does not know whether its former attorneys drafted the entire document, or whether WebManage personnel or attorneys drafted the document as well.

(3) Network Appliance does not control the NASDAQ stock market or the value of its shares on the NASDAQ. As Mr. Mehlman agrees, Network Appliance itself did not do anything unethical to cause the value of its shares on the NASDAQ to decline from year 2000 highs.

(4) Mr. Mehlman is a highly educated person who understood at the time he joined Network Appliance, as did Network Appliance, that (a) stock options do not represent any guaranteed income; (b) the economy, particularly the stock market value of technology shares, was volatile; (c) Network Appliance did not control the NASDAQ values of Network Appliance shares; (d) Network Appliance never promised to compensate Mr. Mehlman if the NASDAQ value of shares from his stock options was lower on the day he could sell shares than it was on his first day of work at Network Appliance, or the closing of the WebManage acquisition; (e) his grant of stock options was organized into a four-year vesting schedule, such that he could not sell shares from the vast majority of his options until they vested, and that his potential gain from those unvested shares would be consistent with the market value of Network Appliance shares at the time of vesting.

(5) Network Appliance was required by law to register Mr. Mehlman's new employee stock options with the Securities and Exchange Commission before they could

be granted to him, and Network Appliance did so according to normal company and industry practices.

(6) Mr. Mehlman could have taken steps to obtain his stock option grants as of January 22, 2001, but did not do so.

(7) Mr. Mehlman could have sold shares from his vested options at the time when he first could have obtained them, but chose not to do so and thus did not mitigate his alleged damages. Mr. Mehlman has admitted that he cannot seek to charge Network Appliance for the difference between (a) the money he could have made by selling shared from his vested options in early 2001; and (b) the lower amount of money he made by selling shares from the options that vested in early 2001 in 2003.

(8) Under no circumstances could Mr. Mehlman have sold shares from his unvested options until they gradually vested.

(9) There was no benefit Mr. Mehlman conferred on Network Appliance for which he was not compensated, for which Mr. Mehlman could reasonably expect to be further compensated, or that Network Appliance would reasonably have expected to owe further compensation. In a nutshell, it is unreasonable for an employee of a technology company to demand quantum meruit compensation when the NASDAQ declines and affects the value of employee stock options.

(10) The following chart represents Mr. Mehlman's options, their strike prices, and their vesting dates (Mr. Mehlman left Network Appliance before 4/36 of his third stock option grant vested):

| Number of Options | Vesting Date | Strike Price | Number Vested as of January 16, 2001 |
|---|---|---|---|
| 635 | In six divisions: | $19.67 | 105 |

|  | 9/17/00, 3/17/01, 9/17/01, 3/1702, 9/17/02; 3/17/02; 9/17/02; 3/17/03 |  |  |
|---|---|---|---|
| 3178 | In six divisions: 7/5/99, 1/5/00, 7/5/00, 1/5/01, 7/5/01, 1/5/02 | $9.84 | 2118 |
| 3792 | In thirty-seven divisions: ¼ on 11/10/2001, and 1/36 on each month from 11/10/01 to 11/10/04. | $33.82 | 0 |

**2.   Statement of Undisputed Facts**

The parties agree to the following facts:

1. Plaintiff Brian Mehlman ("Mehlman") is an individual residing in New Hampshire.

2. Defendant Network Appliance, Inc. ("Network Appliance") is a company incorporated in Delaware, with its headquarters in California.

3. In mid-2000, Network Appliance announced its intent to acquire WebManage, a private company that had employed Mehlman since 1998.

4. Network Appliance sent to Mehlman an employment offer letter dated September 8, 2000.

5. Network Appliance's offer letter to Mehlman provides that: "Following commencement of your full-time employment with Network Appliance, the Company will grant you options that have an approximate value at the closing of $600,000."

6. The offer letter provides that the value of Mehlman's options was to be ". . . comprised of a value assigned shares currently owned ($347,264) with WebManage and options given upon joining Network Appliance ($252,736)."

7. The offer letter further provides that Mehlman's WebManage options would convert to Network Appliance options, and will adhere to the "same vesting schedule as the old WebManage plan."

8. The offer letter further provides that "new options granted under the WebManage2000 option plan will convert to the Network Appliance option plan and will be granted pursuant to Network Appliance's stock option plan and will have a term of ten (10) years." In addition, "[v]esting in the new option shares will be in installments during your service with the [sic] Network Appliance ($12/48^{th}$ upon your first anniversary and $1/48^{th}$ monthly thereafter)."

9. Mehlman accepted the offer of employment by signing the letter on September 14, 2000.

10. Mehlman commenced employment with Network Appliance on or about November 15, 2000.

11. Mehlman was a competent employee and performed his duties on behalf of Network Appliance.

12. Network Appliance closed its acquisition of WebManage on or about November 13, 2000.

13. Network Appliance registered the shares associated with its acquisition of WebManage on January 16, 2001 by filing a Form S-8 with the Securities and Exchange Commission.

14. Mr. Mehlman was to receive employee stock options from Network Appliance. The stock options were as follows: (1) 635 options at a strike price of $19.67; (2) 3178 options at a strike price of $9.84; and (3) 3792 options at a strike price of $33.82. Mr. Mehlman was subject to a vesting schedule under which (1) 1693 of his options were vested as of November 15, 2000; (b) 530 of his options vested on January 5, 2001; and (c) the remainder of his options vested gradually starting in late 2001 and monthly thereafter through late 2004.

15. Mehlman was not able to exercise his 2,223 vested options until the Stock Assumption Agreements became available on a date in 2001 between late January and February 9; the parties disagree on the exact date.

16. Network Appliance's share value closed at $84.50 on November 13, 2000; $76.13 on November 15, 2000; $58.12 on January 16, 2001; $66.88 on January 22, 2001; $43.31 on February 5, 2001; $38.00 on February 9, 2001.

17. Mehlman first sold certain of his Network Appliance options related to the WebManage conversion on or about June 2, 2003 at $17.513 per share.

18. Mehlman left Network Appliance on July 2, 2004.

**3.    Contested Issues of Fact**

**A.    Mehlman's Contested Issues of Fact**

1. Whether Mehlman is entitled to the difference between $600,000 and the actual amount he realized on exercising shares from his stock options or whether Mehlman is entitled to some other amount as reasonable payment for his services. Whether Network Appliance's offer letter reasonably valued Mehlman's services to Network Appliance.

2. Whether the commitment to provide approximately $600,000 of stock options constituted a material portion of Mehlman's compensation.

3. Whether Mehlman substantially performed in good faith reliance on the terms of Network Appliance's offer letter.

4. Whether Mehlman performed with the expectation that he would receive approximately $600,000 of stock options for his services.

5. Whether Mehlman is entitled to the full value of the stock options as compensation for services rendered.

6. Whether Network Appliance unjustly benefited from failing to pay Mehlman the full value of his stock options as compensation for past services.

7. Whether Mehlman mitigated damages when he refrained from exercising his vested stock options.

**B.    Network Appliance's Contested Issues of Fact**

8. Whether Network Appliance controlled the daily market value of its shares on the NASDAQ between November 15, 2000 and July 2, 2004.

9. Whether, in the absence of a contract on the point, a reasonable person in Mr. Mehlman's position would believe that employee stock options that vest over time must, in the end, match the NASDAQ value of the company's shares on the day the company's acquisition of the person's former employer closes.

10. Whether, in the absence of a contract on the point, a reasonable person in Mr. Mehlman's position would believe that employee stock options that vest over time must, in the end, match the NASDAQ value of the company's shares on the employee's first day of work.

11. Whether a reasonable person in Mr. Mehlman's position would believe that stock options represent guaranteed income, rather than potential income.

12. Whether a reasonable person in Mr. Mehlman's position would believe that shares from unvested stock options can be sold at the NASDAQ value at the time they vest, or at the NASDAQ value at times when they are not vested.

13. Whether Network Appliance compensated Mr. Mehlman for all work that he performed – and thus all benefits he conferred on Network Appliance – between November 15, 2000 and July 2, 2004.

14. Whether Network Appliance included stock options in Mr. Mehlman's compensation package as a guaranteed measure of certain gain, or as a potential for profit consistent with the performance of company shares on the NASDAQ.

15. Whether Network Appliance would reasonably have expected to pay Mr. Mehlman extra money because the NASDAQ declined and he did not get what he hoped from selling shares from his stock options.

16. Whether Mr. Mehlman was bound by his employment agreement with Network Appliance to perform his duties in good faith to the best of his abilities, regardless of the NASDAQ values of Network Appliance shares on any given date.

17. Whether Network Appliance was enriched from Mr. Mehman's performance of services to any degree greater than it would have been had the NASDAQ value of Network Appliance shares been higher or lower than they actually were on any given date.

18. Whether Network Appliance made any "unjust" enrichment from Mr. Mehlman's performance of services, and if so how the monetary value of those services would be calculated.

19. Whether Network Appliance had any control over Mr. Mehlman's decisions regarding the sale of shares after Mr. Mehlman received vested stock options.

4. **Jurisdictional Questions**

There are no jurisdictional questions.

5. **Pending Motions**

There are no previously-pending motions.

6. **Issues of Law**

There are no known issues of law.

7. **Amendments to the Pleadings**

Neither party proposes to make any amendments to the pleadings.

8. **Additional Matters**

(a) The parties wish to make reference to the NASDAQ values of Network Appliance shares on different dates, and thus respectfully request that the Court take judicial notice of those values by reference to the NASDAQ website and/or the Yahoo! Finance website and historical values for "NTAP." The parties each anticipate providing one or more documents reflecting these values.

(b) The parties respectfully request from the Court guidance as to appropriate language to inform the jury of this Court's previous rulings on the contract claim and the quantum meruit claim.

(c) Network Appliance anticipates filing a motion in limine. The parties request a briefing schedule for such motion.

## 9. Estimated Length of Trial

Assuming a daily trial schedule of 9 a.m. to 1 p.m., the parties estimate the length of the Court trial of this case to be two days.

## 10. Witnesses

Witnesses who may testify at trial (live or through deposition testimony), along with the purpose of their testimony, are as follows:

*Mehlman's Witness List*

| WITNESS | PURPOSE OF TESTIMONY | TYPE |
|---|---|---|
| Brian Mehlman<br>25 Hazel Ave<br>Nashua, NH 03062 | Factual | Live |
| *If the Need Arises:* | | |
| Dana Varney<br>495 East Java Drive<br>Sunnyvale, CA 94087 | Factual | Through deposition transcript. |

*Network Appliance's Witness List*

| WITNESS | PURPOSE OF TESTIMONY | TYPE |
|---|---|---|
| Lucy Lee<br>495 East Java Drive<br>Sunnyvale, CA 94087 | Factual | Live |
| Janice Mahoney<br>495 East Java Drive<br>Sunnyvale, CA 94087 | Factual | Live |
| Possibly another witness with similar responsibilities as Ms. Mahoney<br>495 East Java Drive<br>Sunnyvale, CA 94087 | Factual | Live |

**11.     Exhibits**

Proposed exhibits (in order of their introduction to the Court) to which no party has an objection are listed below.  The parties have agreed not to make objections on the grounds of authentication to the introduction of any true and correct copy of any document produced from that party's files.

**Exhibits With No Objections**

| Exhibit No. | Exhibit | Bates Number/ Depo Exhibit Number | Objection |
|---|---|---|---|
| 1 | November 13, 2000 Agreement of Merger of WebManage Technologies and Network Appliance, Inc. | Varney Deposition Exhibit 7 | No |
| 2 | November 13, 2000 Certificate of Merger of WebManage Technologies, Inc. and Network Appliance, Inc. | Varney Deposition Exhibit 8 | No |
| 3 | November 29, 2000 through December 7, 2000 Email string between Christine O'Neil and Janice Mahoney | Mehlman Deposition Exhibit 7 | No |
| 4 | February 9, 2001 Network Appliance, Inc. Stock Assumption Agreement, WebManage Technologies, Inc.,1999 Stock Option Plan | Mehlman Deposition Exhibit 3 | No |
| 5 | February 9, 2001 Network Appliance, Inc. Stock Option Assumption Agreement, WebManage Technologies, Inc., 1999 Stock Option Plan. | Varney Deposition Exhibit 5 | No |
| 6 | February 9, 2001 Network Appliance, Inc. Stock Assumption Agreement, WebManage Technologies, Inc., 2000 Stock Incentive Plan. | Varney Deposition Exhibit 6 | No |
| 7 | 2003 SmithBarney Citigroup Client Statement 2003 Year End Summary | Mehlman Deposition Exhibit 11 | No |

Exhibits that parties may use if the need arises:

| Exhibit No. | Exhibit | Bates Number/ Depo Exhibit Number | Objection |
|---|---|---|---|
| 8 | WebManage Technologies, Inc. Stock Option Agreement Under its 1999 Stock Option Plan | M0059-0070 | No |
| 9 | WebManage Technologies, Inc. Stock Option | M0071- | No |

|    | Exhibit | Bates | Objection |
|----|---------|-------|-----------|
|    | Agreement Under its 1999 Stock Option Plan | 0083 | |
| 10 | Agreement and Plan of Merger by and among Network Appliance, Inc., WebManage Technologies, Inc. and the Other Parties Signatory to this Agreement dated August 31, 2000. | (M0095 – 0176 | No |
| 11 | October 30, 2000 WebManage Technologies, Inc. Notice of Grant of Stock Options | M0086 – 0094 | No |
| 12 | January 16, 2001 Network Appliance, Inc. Personal Option Status of Brian Mehlman January 16, 2001 Network Appliance, Inc. Personal Option Status of Brian Mehlman (NetApp 000271 – 000272) | NetApp 000271 – 000272 | No |
| 13 | January 31, 2001 Email from Christine O'Neil | M0029 | No |
| 14 | March 30, 2001 Network Appliance FY01 Performance Appraisal of Brian Mehlman | NetApp 000052 – 000061 | No |
| 15 | July 17, 2001 Network Appliance Options Summary of Brian Mehlman. | M0188 – 0189 | No |
| 16 | Performance Review Form FY 2002 for Brian Mehlman for Network Appliance | M0039-M0045 | No |
| 17 | Performance Review Form FY 2003 for Brian Mehlman for Network Appliance. | M0049-M00058 | No |
| 18 | June 2, 2003 Confirmation of Exercise | NetApp 000026. | No |
| 19 | January 19, 2001 Liotta email | M28 | No |
| 20 | Document showing WebManage share conversions | NetApp000 0201-204 | No |
| 21 | January 16, 2001 S-8 Filing | NetApp 000070-166 | No |
| 22 | January 15, 2001 S-8 related letter from Deliotte & Touche, LLP | NetApp 000197-198 | No |
| 23 | July 10, 2001 Mahoney email to Mehlman | NetApp 000263-66 | No |
| 24 | WebManage Technologies Stock Option Agreement (Exhibit B) | M0087-94 | No |
| 25 | October 30, 2000 WebManage Technologies Notice of Grant of Stock Options | M0086 | No |
| 26 | Income Documents | M0177-80 | No |
| 27 | Pay Records | M0227-232 | No |

## **Exhibits to Which one or More Party Objects**

| **Exhibit No.** | **Exhibit** | **Bates Number/Depo Exhibit Number** | **Objection** |
|-----------------|-------------|--------------------------------------|---------------|
|                 |             |                                      |               |

| | | | |
|---|---|---|---|
| A | September 8, 2000 Letter to Brian Mehlman from Chris Carlton of Network Appliance | Mehlman Deposition Exhibit 2 | Defendant partially objects under Rule 403 to the extent that there was a contract where the Court has ruled no contract was formed |
| B | WebManage Technologies, Inc. Stock Option Agreement under its 1999 Stock Option Plan | NetApp 000234-262 | Defendant objects (relevance) |
| C | September 5, 2000 Press Release entitled "Network Appliance Acquires WebManage, Inc. to Provide Seamless Data and Content Management, Storage, and Delivery Solutions." | M0205 | Defendant objects (relevance) |
| D | Confirmation of Exercise Documents | NetApp 000027-32 | Plaintiff objects (relevance) |
| E | Stock Option Grants | NetApp 000011-16 | Plaintiff objects (relevance) |
| F | Notice of Separation and Employee Information Documents | NetApp 000062-65 | Plaintiff objects (relevance) |
| G | March 7, 2002 Mahoney email to Mehlman 2002 | NetApp 000267-268 | Plaintiff objects (relevance) |
| H | March 7, 2001 Mahoney email to Mehlman | NetApp 000269-70 | Plaintiff objects (relevance) |
| I | March 22, 2001 Network Appliance letter to Mehlman | M0030 | Plaintiff objects (relevance) |
| J | Option Grant Notice | M0038 | Plaintiff objects (relevance) |
| K | Income Documents | M0181-0187 | Plaintiff objects (relevance) |
| L | Investment Documents | M0190-193 | Plaintiff objects (relevance) |
| M | Exercise Related Documents | M0233-263 | Plaintiff objects (relevance) |
| N | Plaintiff's Demonstrative Exhibits | | |

| O | Defendant's Demonstrative Exhibits | | |
|---|---|---|---|

Finally, the parties may use deposition transcripts, pleadings, and interrogatory responses for impeachment.

                                                  Respectfully submitted,

                                                  Brian Mehlman
                                                  by his attorneys,

                                                  COOK, LITTLE, ROSENBLATT
                                                  & MANSON, P.L.L.C.

Dated: February 22, 2006                     By:  /s/ Arnold Rosenblatt
                                                  Arnold Rosenblatt (BBO# 638526)
                                                  650 Elm Street
                                                  Manchester, NH  03101
                                                  (603) 621-7102

                                                  Network Appliance, Inc.

                                                  By their attorneys,

                                                  WILSON, SONSINI, GOODRICH
                                                    & ROSATI, P.C.

Dated: February 22, 2006                     By:      //C. Tait Graves//
                                                  C. Tait Graves
                                                  Wilson Sonsini Goodrich & Rosati P.C.
                                                  One Market Street, Spear Tower, Suite 3300
                                                  San Francisco, CA 94105
                                                  (415) 947-2252