UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRIAN MEHLMAN,<br><br>      Plaintiff,<br><br>      v.<br><br>NETWORK APPLIANCE, INC.,<br><br>      Defendant. | CIVIL ACTION NO. 04-12533-WGY<br><br>Hon. Judge William G. Young |

**DEFENDANT NETWORK APPLIANCE, INC.'S MOTION *IN LIMINE* NO. 3**

## I. INTRODUCTION

Defendant Network Appliance, Inc. respectfully seeks a ruling on the third of its four motions *in limine*. In this motion, Network Appliance seeks to bar evidence and testimony on another of Mr. Mehlman's damages claims: that Network Appliance owes him money on the *unvested* majority portion of his stock options, which did not vest – and thus could not be sold – until after the stock market declined in late 2000 and early 2001. In fact, those unvested shares vested gradually between late 2001 and 2004, and under no circumstances could have been sold before those dates. No reasonable person could believe that unvested shares have a cash value greater than stock market values *at the time the shares actually vest*. Because there is no possible way Mr. Mehlman can include the unvested portion of his shares in his quantum meruit claim, introduction of evidence regarding those shares would be prejudicial and confusing.

## II. MOTION *IN LIMINE* NO. 3: TO BAR EVIDENCE OF ALLEGED DAMAGES REGARDING UNVESTED STOCK OPTIONS

Perhaps the biggest issue separating the parties in settlement negotiations is whether Mr. Mehlman may claim quantum meruit liability against Network Appliance for any claimed value of Mr. Mehlman's *unvested* stock options – those that he could not possibly have sold as shares before they vested in late 2001 and through 2004. Because there is no possible way that Mr. Mehlman could establish quantum meruit liability for the *unvested* portion of his stock options, Network Appliance requests a motion *in limine* barring his presentation of evidence or testimony on that issue. Such evidence would be prejudicial and confusing under Rule 403 and could not relevant to establish any alleged quantum meruit liability.

### A. Background: Vested and Unvested Stock Options.

A vested stock option is a stock option that an employee has a present right to transform into shares and sell on the stock market (assuming that the company is publicly traded). An unvested stock option, by contrast, is a stock option to which the employee presently has no right to sell.

In this lawsuit, Mr. Mehlman had a small number of stock options that vested before early 2001, when he received papers enabling him to make sales on the market. The vast majority of his stock options, however, were unvested – and vested only gradually in small increments between late 2001 and late 2004. Mr. Mehlman does not dispute these facts or his vesting schedule. *See* Joint Pretrial Submission, Feb. 21, 2006, at Section 2, ¶¶ 8, 14.

The following chart displays Mr. Mehlman's stock options and their vesting dates:

| Number of Options | Vesting Date | Number Vested as of January 16, 2001 |
|---|---|---|
| 635 | In six divisions: 9/17/00, 3/17/01, 9/17/01, 3/1702, 9/17/02; 3/17/02; 9/17/02; 3/17/03 | 105 |
| 3178 | In six divisions: 7/5/99, 1/5/00, 7/5/00, 1/5/01, 7/5/01, 1/5/02 | 2118 |
| 3792 | In thirty-seven divisions: ¼ on 11/10/2001, and 1/36 on each month from 11/10/01 to 11/10/04. | 0 |

*See* Declaration of Tait Graves, Exhibit B (stock option documents showing vesting dates).

### B. Mr. Mehlman Cannot Possibly Claim Quantum Meruit Liability for Unvested Stock Options.

There is no possible theory under which Mr. Mehlman can claim that Network Appliance is liable in quantum meruit regarding the unvested portion of his stock options. Mr. Mehlman indisputably agreed to an employment contract where most of his shares vested gradually between late 2001 and early 2004. He could not sell them until they vested, and could only sell them at stock market prices current when they vested. Thus, the fact that the NASDAQ stock market was higher in 2000 than it was in 2001-04 is irrelevant for the unvested shares, because there is no theory under which Mr. Mehlman could have sold them in 2000, or sold them at any point before they slowly vested.

Quantum meruit is a theory under which a plaintiff confers a benefit, reasonably expects compensation, and the defendant reasonably expects to pay the plaintiff that compensation.

*See, e.g., Bolen v. Paragon Plastics, Inc.*, 747 F. Supp. 103, 107 (D. Mass. 1990) (describing elements); *Park Drive Towing, Inc. v. City of Revere*, 800 N.E.2d 331, 335 n.5, 60 Mass.App.Ct. 173, 177 n.5 (Mass Ct. App. 2003) (measure of damages).

But Mr. Mehlman could never reasonably have expected to receive any more money from his unvested stock options than whatever they were worth on the NASDAQ at the times that they vested in 2001-04. He did, in fact, receive that value, which he does not dispute. And Network Appliance could never have reasonably expected to pay money to Mr. Mehlman because Mr. Mehlman is unhappy that the stock market declined and left his unvested options at a lower value at the times they vested in 2001-04 than he had hoped.

Nonetheless, Mr. Mehlman claims that Network Appliance owes him cash in quantum meruit for the difference between the NASDAQ value of Network Appliance shares on November 15, 2000 – Mr. Mehlman's first day of work – and the NASDAQ value of Network Appliance shares on the dates his unvested shares actually vested during 2001-04. That demand is the major portion of his damages claim and the major reason the parties cannot settle.

It would be prejudicial and confusing for Mr. Mehlman to introduce irrelevant evidence about unvested stock options he never possibly could have sold before the NASDAQ stock market declined. The jury might be confused into believing that Network Appliance controls the stock market and owes employees money for the mere fact that the stock market declines.

Because there is no possible quantum meruit theory under which Mr. Mehlman can demand money relating to his unvested stock options, Network Appliance respectfully requests an order *in limine* barring evidence and testimony on any argument by Mr. Mehlman that Network Appliance owes him money based on the unvested portion of his stock options.

III. **CONCLUSION**

For all of the reasons described above, Network Appliance requests an order granting its third motion *in limine*.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Network Appliance, Inc. hereby respectfully requests oral argument on its Motion.

DATED: February 21, 2006                    NETWORK APPLIANCE, INC.

By its attorneys,

/S/ Tait Graves
James A. DiBoise (*pro hac vice*)
Tait Graves, (*pro hac vice*)
Wilson Sonsini Goodrich & Rosati
Professional Corporation
One Market, Spear Street Tower, Suite 3300
San Francisco, CA 94105
(415) 947-2156

/S/ Michael D. D'Orsi
Of Counsel:

Michael S. D'Orsi (BBO #566960)
Donnelly, Conroy & Gelhaar, LLP
One Beacon Street, 33rd Floor
Boston, MA 02108
(617) 720-2880

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2)

The undersigned hereby certifies that counsel for Network Appliance, Inc. has conferred with counsel for Brian Mehlman and attempted in good faith to resolve or narrow the issues presented by this Motion.

/s/Michael S. D'Orsi

Dated: February 21, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 21, 2006.

/s/Michael S. D'Orsi

Dated: February 21, 2006