## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

BRIAN MEHLMAN,

       Plaintiff,

  v.

NETWORK APPLIANCE, INC.,

       Defendant.

CIVIL ACTION NO. 04-12533-WGY

Hon. Judge William G. Young

## DECLARATION OF TAIT GRAVES
## IN SUPPORT OF NETWORK APPLIANCE, INC.'S
## MOTIONS *IN LIMINE* NOS. 1-4

I, Tait Graves, declare:

1.     I am an attorney duly licensed to practice law in the State of California and am admitted *pro hac vice* to practice before this Court. I am an associate in the law firm of Wilson Sonsini Goodrich & Rosati, counsel of record for Defendant Network Appliance, Inc., in this action. I have personal knowledge of the facts set forth below and if called as a witness could and would competently testify thereto.

2.     Attached hereto as Exhibit A is a true and correct copy of excerpts from Brian Mehlman's August 2005 deposition.

3.     Attached hereto as Exhibit B is a true and correct copy of documents produced by Mr. Mehlman bearing Bates numbers M 59-83 and M 86-94.

4.     Attached hereto as Exhibit C is a true and correct copy of ten documents the parties have marked as potential trial exhibits D-M, and that bear Bates numbers NetApp 27-32; NetApp 11-16, NetApp 62-65, NetApp 267-70, M 30, M 38, M181-87, M190-93, and M233-64.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Declaration was executed this 20th day of February 2006 in San Francisco, California.

/s/ Tait Graves
Tait Graves

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 21, 2006.

/s/Michael S. D'Orsi

Dated: February 21, 2006

Mehlman - Graves Decl re motions in limine.DOC

# Exhibit A

ORIGINAL

Exhibits:  1 - 13              Volume 1, Pages 1 - 163

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 04-12533-WGY

----------------------------

BRIAN MEHLMAN

                Plaintiff

vs.

NETWORK APPLIANCE, INC.

                Defendant

------------------------------

VIDEOTAPED DEPOSITION OF BRIAN MEHLMAN

Thursday, August 4, 2005, 9:29 a.m.

Donnelly, Conroy & Gelhaar, LLP

One Beacon Street

Boston, Massachusetts


------- Reporter:  David A. Arsenault, RPR -------

darsenault@fabreporters.com   www.fabreporters.com

Farmer Arsenault Brock LLC

50 Congress Street, Suite 415

Boston, Massachusetts 02109

617.728.4404   fax 617.728.4403

135

| | | |
|---|---|---|
| 12:55:43 | 1 | A.   I would have to go back and look at the |
| 12:55:45 | 2 | date, the stock fluctuation between receiving them |
| 12:55:48 | 3 | and selling them.  I imagine there were some highs |
| 12:55:53 | 4 | in there higher than what I sold them at, yes. |
| 12:55:56 | 5 | Q.   For example, in mid-February 2001 the share |
| 12:55:59 | 6 | price had gone down from what it was earlier but it |
| 12:56:03 | 7 | was nevertheless higher than it was at later points; |
| 12:56:06 | 8 | is that correct? |
| 12:56:06 | 9 | A.   That is correct. |
| 12:56:06 | 10 | Q.   So if you had sold them in mid-February -- |
| 12:56:09 | 11 | those that were vested in February of 2001, you |
| 12:56:12 | 12 | could have made more money than you did make by |
| 12:56:15 | 13 | selling them on later dates when the price had |
| 12:56:21 | 14 | fallen? |
| 12:56:21 | 15 | A.   That is a true statement. |
| 12:56:22 | 16 | Q.   In your lawsuit here in regard to the |
| 12:56:25 | 17 | damages you are claiming in your lawsuit against |
| 12:56:27 | 18 | Network Appliance, are you saying that Network |
| 12:56:29 | 19 | Appliance should be responsible for the differences |
| 12:56:31 | 20 | between the dates that you did sell and that you |
| 12:56:34 | 21 | could have sold? |
| 12:56:35 | 22 | A.   No.  Repeat the question. |
| 12:56:41 | 23 | MR. GRAVES:  Can you read it back, |
| 12:56:43 | 24 | please. |

136

| | | |
|---|---|---|
| 12:56:43 | 1 | (Question read by the reporter.) |
| 12:57:16 | 2 | MR. GRAVES:  Let me rephrase the |
| 12:57:17 | 3 | question. |
| 12:57:17 | 4 | Q.   In your lawsuit against Network Appliance, |
| 12:57:19 | 5 | are you saying that Network Appliance should be |
| 12:57:21 | 6 | responsible for the difference between the stock |
| 12:57:24 | 7 | price on the day that you did sell and the stock |
| 12:57:29 | 8 | price on days that you could have sold but cannot |
| 12:57:32 | 9 | sell? |
| 12:57:33 | 10 | MR. ROSENBLATT:  Objection as to form. |
| 12:57:36 | 11 | A.   Can you rephrase the question? |
| 12:57:40 | 12 | Q.   Let's break it down into pieces to make it |
| 12:57:44 | 13 | easier to understand. |
| 12:57:45 | 14 | A.   Sure. |
| 12:57:45 | 15 | Q.   As part of your accusation in the lawsuit, |
| 12:57:49 | 16 | you are claiming money damages. |
| 12:57:52 | 17 | A.   That is correct. |
| 12:57:53 | 18 | Q.   What I'm trying to find out is, are you |
| 12:57:55 | 19 | claiming that Network Appliance should have to pay |
| 12:57:58 | 20 | you money for the specific amounts of money that are |
| 12:58:00 | 21 | the differential between the money you got on the |
| 12:58:04 | 22 | dates you did sell and the money you could have |
| 12:58:07 | 23 | gotten on days that you could have sold but chose |
| 12:58:11 | 24 | not to? |

137

| | | |
|---|---|---|
| 12:58:12 | 1 | A.   That's something that happened after |
| 12:58:14 | 2 | receiving the stock.  The answer is no.  It is the |
| 12:58:18 | 3 | differential before receiving the stock according to |
| 12:58:23 | 4 | the contract. |
| 12:58:24 | 5 | Q.   Just wanted to make that clear. |
| 12:58:28 | 6 | Let's back up and I want to make sure |
| 12:58:29 | 7 | that I summarize correctly what your contentions are |
| | 8 | with regard to the offer letter we talked about |
| 12:58:34 | 9 | earlier.  I'm going to go through this, and let me |
| 12:58:37 | 10 | know if anything is wrong -- |
| 12:58:39 | 11 | A.   Okay. |
| 12:58:39 | 12 | Q.   -- if I've left anything out.  I want to |
| 12:58:42 | 13 | make sure it is complete.  As to your vested |
| 12:58:44 | 14 | shares -- I'm going to break this between vested and |
| 12:58:47 | 15 | unvested.  As to your vested shares, your contention |
| 12:58:49 | 16 | in the lawsuit is that on the date of the closing, |
| 12:58:52 | 17 | on the date that you became an employee for Network |
| 12:58:54 | 18 | Appliance, you should have had all the different |
| 12:58:56 | 19 | paperwork that would have allowed you to sell those |
| 12:58:59 | 20 | of your vested shares as of that point? |
| 12:59:03 | 21 | A.   That is correct, with a little bit of |
| 12:59:06 | 22 | leeway because of approximate dates, but yes. |
| 12:59:12 | 23 | Q.   And as to the unvested shares, the |
| 12:59:14 | 24 | contention is a little bit different.  Let me make |

161

1  CERTIFICATE OF COURT REPORTER

2  I, David A. Arsenault, Registered

3  Professional Reporter, do certify that the

4  deposition of BRIAN MEHLMAN, in the matter of

5  Mehlman v Network Appliance, on August 4, 2005, was

6  stenographically recorded by me; that the witness

7  provided satisfactory evidence of identification, as

8  prescribed by Executive Order 455 (03-13) issued by

9  the Governor of the Commonwealth of Massachusetts,

10  before being sworn by me, a Notary Public in and for

11  the Commonwealth of Massachusetts; that the

12  transcript produced by me is a true and accurate

13  record of the proceedings to the best of my ability;

14  that I am neither counsel for, related to, nor

15  employed by any of the parties to the above action;

16  and further that I am not a relative or employee of

17  any attorney or counsel employed by the parties

18  thereto, nor financially or otherwise interested in

19  the outcome of the action.

20

21  _____    8/15/05

22  David A. Arsenault, RPR

23

24

Exhibit B

# WEBMANAGE TECHNOLOGIES, INC.

## STOCK OPTION AGREEMENT
## UNDER ITS
## 1999 STOCK OPTION PLAN

This STOCK OPTION AGREEMENT (this "Agreement") is issued to the Optionee hereinbelow set forth pursuant to the WebManage Technologies, Inc. 1999 Stock Option Plan (the "Plan") of WebManage Technologies, Inc., a Delaware corporation (the "Company").

1.    **Optionee; Basic Terms.**

The Optionee is hereby granted an option to purchase the number of fully paid and non-assessable shares of the Common Stock of the Company at the option price hereinbelow set forth, subject to the terms and conditions of this Agreement.

2.    **Definitions.**

    (a)    **"Code"** shall mean the Internal Revenue Code of 1986, as amended, the rules and regulations promulgated thereunder and the interpretations thereof, all as from time to time in effect.

    (b)    **"Exercise Dates"** shall mean the following dates after which the Option may be exercised in the increments set forth below:

| Exercise Dates | Optioned Stock |
|---|---|
| September 17th, 2000 | 4,166 |
| March 17th, 2001 | 4,167 |
| September 17th, 2001 | 4,167 |
| March 17th, 2002 | 4,166 |
| September 17th, 2002 | 4,167 |
| March 17th, 2003 | 4,167 |

    (c)  **"Grant Date"** shall mean the date of grant of the Option, being March 17th, 2000.

    (d)  **"Incentive Option"** shall mean an option described in Section 422 of the Code. To qualify for favorable tax treatment provided by an incentive option, the shares purchased upon exercise must be held for a period of two (2) years from the date of the option grant and for a period of one (1) year after the shares are transferred to Optionee.

M0059

1

(e) **"Nonqualified Option"** shall mean an option other than an Incentive Option, the exercise of which generally results in an immediate taxable event.

(f) **"Option"** shall have the meaning set forth in Section 3(a) hereof.

(g) **"Optioned Stock"** shall mean <u>25,000</u> (Twenty Five Thousand) shares of the no par value Common Stock of the Company.

(h) **"Optionee"** shall mean <u>Brian Mehlman</u>.

(i) **"Purchase Price"** shall mean the price per share for the Optioned Stock and shall be <u>$0.50.</u>

(j) **"Vesting Period"** shall mean a period <u>Three (3)</u> of years commencing on the Grant Date (Six equal installments).

(k) Unless otherwise indicated, all capitalized terms set forth in this Agreement shall have the meaning provided to them under the Plan, a copy of which Optionee acknowledges having received.

3.    **Grant Of Option.**

(a)    As of the Grant Date, the Company hereby grants to the Optionee an option (the "Option") to purchase the Optioned Stock upon the terms and conditions set forth below.

(b)    This Option is intended to be a(n) (check one only):

| ✖ | Incentive Option (only employees of the Company are eligible) |
|---|---|
|   | Nonqualified Option |

(c) The Optionee's relationship to the Company is as a(n) (if applicable, check more than one):

|   | Vice President |
|---|---|
|   | Director |
| ✖ | Employee |
|   | Consultant |
|   | Other Person providing services |

M0060

2

### 4.    Duration of Option

**(a) Incentive Option:** If this Option is an Incentive Option, as designated in Section 3(b), it shall expire one day short of ten (10) years from the Grant Date, provided, however, for any Optionee who owns more than ten percent (10%) of the total combined voting power or value of all classes of stock of the Company, this Option shall expire one day short of five (5) years from the Grant Date.

**(b) Nonqualified Option:** If this Option is a Nonqualified Option, as designated in Section 3(b), it shall expire ten (10) years from the Grant Date.

### 5.    Purchase Price

The Purchase Price for the Optioned Stock has been determined by the Board of Directors of the Company and: (a) may or may not be less than the Fair Market Value on the Grant Date if the Option is a Nonqualified Option, (b) shall be equal to at least one-hundred percent (100%) of the Fair Market Value if the Option is an Incentive Option, or (c) shall be equal to at least one-hundred ten percent (1 1 0 %) of the Fair Market Value if the Option is an Incentive Option and Optionee holds more than ten percent (10%) of the total combined voting power or value of all classes of stock of the Company or of its Parent or any Subsidiary.

### 6.    Exercisability

Subject to the provisions of this Agreement, including without limitation Section 10 regarding termination of Optionee's employment, consulting or other relationship with the Company and Section 14(b) regarding Incentive Options, this Option shall vest in semi-annual increments over the Vesting Period equal to the total number of shares of Optioned Stock divided by two times the number of years in the Vesting Period. Optioned Stock, to the extent vested shall become exercisable, in one or more installments (to the nearest whole number) on the Exercise Dates, to the extent of the total number of Shares of the Optioned Stock set forth next to such Exercise Date in the definition thereof. The number of shares of Optioned Stock which become exercisable every six months year, to the extent not previously exercised, shall accumulate until exercised in accordance with and subject to the terms and conditions of this Agreement.

### 7.    Method of Exercise and Payment.

(a)**Exercise.** This Option may be exercised from time to time, in whole or in part, to the extent exercisable, only by delivery to an officer of the Company of the original of this Option with an appropriate Notice of Exercise of Stock Option duly signed by the Optionee, together with the full Purchase Price of the shares purchased pursuant to the exercise of the Option and an executed Stock Redemption Agreement pursuant to Section 7(b) hereof; provided, however, that this Option may not be exercised if such exercise would violate any law or governmental order or regulation. Payment for the

3



shares of Optioned Stock purchased pursuant to any exercise shall be made in full at the time of such exercise, in any of the following methods, as determined by the Board of Directors and as may be elected by the Optionee:

(i)     may __✓__ or may __not__ ____ pay in cash or by check payable to the order of the Company;

(ii)    may __✓__ or may __not__ ____ pay in Common Stock of the Company already owned by the Optionee for a period of six (6) months prior to such exercise, valued as of the date of exercise of the Option at Fair Market Value; or

(iii)   may ____ or may __not__ __✓__ pay by a promissory note payable to the order of the Company; if a promissory note is tendered, such note shall bear interest at an interest rate determined by, and shall be subject to such terms and conditions as are prescribed by, the Board as set forth in the form of promissory note then utilized under the Plan.

(b) **Stock Redemption Agreement.**   The Optionee shall execute and deliver to the Company, together with the Notice of Exercise of Stock Option and payment in full of the Purchase Price, duplicate originals of a Stock Redemption Agreement in the form set forth in Exhibit 1 attached to this Agreement.  The Company shall not issue any shares of Optioned Stock to the Optionee unless and until Optionee executes and delivers such Stock Redemption Agreement.

(c) **Tax Withholdings.**  Optionee agrees to have withheld from any remuneration payable to such Optionee by the Company and/or to pay to the Company, at the time of exercise of the Option, an amount which is required to be withheld or paid pursuant to any Federal, state or local tax or revenue laws or regulations, as may be determined by the Company. The Optionee may not satisfy such tax withholding by instructing the Company to withhold such number of shares of Optioned Stock that would equal the total tax obligations required to be withheld.

## 8. **Non-Transferability**

This Option shall not be transferred, sold, pledged, assigned, hypothecated, or disposed of in any manner by Optionee other than by will or the laws of descent and distribution to the extent hereinafter set forth; _provided_, however, that a transfer hereof may be made pursuant to a qualified domestic relations order (as defined in the Code or as permitted by Title I of the Employee Retirement Income Security Act ("ERISA") or the rules thereunder) and, _provided further_, that Optionee may designate a beneficiary (which may be an individual or trustee) who may exercise the Option after Optionee's death and enjoy the economic benefits thereof, subject to the consent of Optionee's spouse where required by law.  This Option may be exercised during the Optionee's lifetime only by the Optionee or, upon the Optionee's legal incapacity to act on the Optionee's own behalf, by the Optionee's conservator or other lawful representative.  The Option shall be null and void and without effect upon any attempted assignment or transfer, except as

4

hereinabove provided, including without limitation, any purported assignment, whether voluntary of by operation of law, pledge, hypothecation or other disposition contrary to the provisions hereof, or levy of execution, attachment, trustee process or similar process, whether legal or equitable, upon the Option.

## 9.  Termination

To the extent that this Option shall not have been exercised in full prior to 30-days from the termination or expiration date, whichever shall be sooner, it shall terminate and become void and of no effect.

## 10.  Cessation of Continuous Status -- Termination, Retirement, Death or Disability.

If the Optionee shall voluntarily or involuntarily cease Continuous Status (as such term is defined in the Plan) (hereinafter referred to as a "Termination"), the unvested portion of Option of the Optionee shall terminate immediately upon the Termination and the Optionee in such event shall have 30 days after such Termination to exercise any unexercised Option that the Optionee might have exercised on or prior to the Termination; provided, however, that if the Termination is due to (i) retirement by the Optionee on or after attaining the age of sixty-five (65) years, (ii) the disability of the Optionee or (iii) the death of the Optionee, then the Optionee or the representative of the estate of the Optionee shall have the privilege of exercising the entire unexercised vested portion of this Option, provided that such exercise be accomplished (a) prior to the expiration of this Option and (b) either within thirty (30) days of the Optionee's retirement, within thirty (30) days of the Optionee's disability, or within thirty (30) days after the date of death of the Optionee, as the case may be.

11.    **Stock Splits and Capital Adjustments.** If, prior to the complete exercise of this Option, there shall be declared and paid a stock dividend upon the Common Stock of the Company or if such stock shall be split up, converted, exchanged or reclassified, this Option, to the extent that it has not been exercised, shall entitle the holder, upon the future exercise of this Option, to such number and kind of securities or other property, subject to the terms of the Option, to which the holder would be entitled had he actually owned the stock subject to the unexercised portion of the Option at the time of the occurrence of such stock dividend, split up, conversion, exchange, reclassification or substitution; and the aggregate purchase price upon the future exercise of the Option shall be the same as if shares of Common Stock of the Company originally optioned were being purchased as provided herein.

## 12.  Acceleration of Exercise Date

**Sale of Assets, Merger, Consolidation and Change of Control.** The Board of Directors of the Company may, but shall not be required, to provide for immediate vesting of any or all outstanding unexercised Options in the event of any proposed merger, acquisition or sale of the Company (other than a merger, acquisition or sale with respect to which a majority of the members of the Board of Directors of the Company prior to the merger, acquisition or sale

5



continue to be a majority of the Board of Directors of the resulting corporation after such merger, acquisition or sale), all pursuant to and subject to the terms and conditions of the Plan including, without limitation, the limitations upon vesting imposed by Section 8 of the Plan.

13.    **Compliance With Securities Laws.**

(a)    **Postpone Issuance.** Notwithstanding any provision of this Option to the contrary, the Company may postpone the issuance and delivery of shares upon any exercise of this Option until one of the following conditions shall be met:

(i)    The shares of Optioned Stock with respect to which such Option has been exercised are at the time of the issue of such shares effectively registered under applicable Federal and state securities laws now in force or hereafter enacted or amended; or

(ii)    Counsel for the Company shall have given an opinion that registration of such shares under applicable Federal and state securities laws, as now in force or hereafter enacted or amended, is not required.

(b)    **Investment Representation.** In the event that for any reason the shares of Optioned Stock to be issued upon exercise of the Option shall not be effectively registered under the Securities Act of 1933 (the " 1933 Act"), upon any date on which the Option is exercised in whole or in part, the Company shall be under no further obligation to issue shares of Optioned Stock unless the Optionee shall give a written representation to the Company, in form satisfactory to the Company, that such person is acquiring the shares of Optioned Stock issued pursuant to such exercise of the Option for investment and not with a view to, or for sale in connection with, the distribution of any such shares, and that he/she will make no transfer of the same except in compliance with the 1933 Act and the rules and regulations promulgated thereunder and then in force, and in such event, the Company may place an "investment legend" upon any certificate for the shares of Optioned Stock issued by reason of such exercise.

14.    **Special Rules Regarding Incentive Options**

(a)    **Notice of Transfer.** If this Option is an Incentive Option, then the employee-Optionee hereby agrees to notify the Company in writing within three (3) days after any sale, transfer or other disposition of shares acquired upon the exercise of this Option which occurs within either twelve (12) months following the date of exercise or twenty-four (24) months following the Grant Date.

(b)    **$100,000 Per Year Exercise Limit.** If this option is an Incentive Option, then it shall be exercisable in accordance with the above schedule of Section 6, but in no event shall it be exercised to the extent that the aggregate fair market value of Optioned Stock, which is exercisable for the first time during any calendar year, when combined with the aggregate fair market value of all stock covered by incentive stock options (as defined in the Code) granted to Optionee after December

6

31, 1986 by the Company, its parent or a subsidiary of the Company which are exercisable for the first time during the same calendar year, exceeds $100,000.

## 15. No Agreement of Employment

Neither the grant of this Option nor this Agreement shall be deemed to create any agreement with, or obligation by, the Company to employ the Optionee for any period of time, it being understood that employment is strictly "at will" in the absence of any written agreement to the contrary and, in the absence of such written agreement, such person may be terminated by the Company at any time, with or without cause.

## 16. Assignment of Inventions, Etc.; Non-Disclosure of Confidential Information

As further consideration for the issuance of the Option, the Optionee, if the Optionee is an Employee of the Company, agrees as follows:

(a)     **Assignment of Inventions.**  Any and all trade secrets, inventions and proprietary information which either (i) relates at the time of conception or reduction to practice to the company or its business, or actual or demonstrably anticipated research or development of the Company or (ii) results from any work performed by the Optionee for the Company is hereby assigned to, and shall become the absolute property of, the Company and shall at all times and for all purposes be regarded as acquired and held by the Optionee in a fiduciary capacity for the sole benefit of the Company, and the Optionee agrees that, upon request, the Optionee will promptly make all disclosures, execute all assignments, instruments and papers, and perform all acts whatsoever necessary or desired by the Company to vest and confirm in it, its successors, assigns and nominees, all rights created or contemplated by this subsection (a) and which may be necessary or desirable to enable the Company, its successors, assigns, and nominees to secure and enjoy the full benefits and advantages thereof.

(b)     **Nondisclosure of Confidential Information.** The Optionee shall not, during the period of employment by the Company or at any time thereafter, directly or indirectly use, divulge, furnish or make accessible to anyone other than the Company, its directors and officers other than in the regular course of the business of the Company or any of its subsidiaries, any knowledge or information with respect to (i) confidential, secret or proprietary plans, data (including financial and cost data), specifications, procedures and techniques, methods, technology, "knowhow," or material relating to the business, products, services (whether existing or under development) or activities of the Company or its subsidiaries, (ii) any confidential business plans or surveys of the Company or its subsidiaries, (iii) any other confidential or secret aspect of the business, products, services or activities of the Company or its subsidiaries, or (iv) any customer usages and requirements or any customer lists of the Company or its subsidiaries.  The Optionee shall not, upon leaving the employ of the Company, without the prior written consent of the Board of Directors of the Company, take any data, customer lists, reports, studies, compilations, business plans,

· 7



presentations/proposals, letters, memoranda, notes or other writings or documents whatever, or copies thereof, which reflect or deal with any of the confidential information described in this Section 16(b).

(c)  **Remedies.** The Optionee acknowledges that a breach of the provisions of this Agreement will cause the Company irreparable injury for which the Company cannot be reasonably or adequately compensated in damages. The Company shall, therefore, be entitled, in addition to all other remedies available to it, to injunctive and/or other equitable relief to prevent a breach of this Agreement, or any part of it, and to secure its enforcement, and any termination of Optionee as a result of a violation of this Section 16 shall be deemed "for cause."

## 17.  Subject to Plan.

This Option is issued subject and pursuant to the provisions of the Plan, receipt of a copy of which the Optionee acknowledges.  A determination of the Board of Directors or the Committee established pursuant to the Plan as to any questions which may arise with respect to the interpretation of the provisions of this Option and of the Plan shall be final.  The Board of Directors or the Committee may authorize and establish such rules and regulations, and revisions thereof, not inconsistent with the provisions of the Plan, as it may deem advisable.  Any provision hereof which is inconsistent with, or contrary to, the terms and conditions of the Plan shall be superseded and governed by the Plan.

## 18. Severability

If any condition, term or provision of this Agreement is determined by a court to be illegal or in conflict with any law, state or Federal, the validity of the remaining portions or provisions shall not be affected, and the rights and obligations of the parties shall be construed and enforced as if this Agreement did not contain the particular condition, term or provision determined to be unenforceable.

## 19. Entire Agreement; Delaware Law

This Agreement contains the entire understanding and agreement between the parties hereto respecting the within subject matter, and there are no representations, agreements, arrangements or understandings, oral or written, between the parties hereto relating to the subject matter of this Agreement that are not fully expressed herein.  The Company is a Delaware corporation, and this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware.

WITNESS the signature of its duly authorized officer of the Company as of the date of grant hereof.

8

**THE COMPANY:**

WEBMANAGE TECHNOLOGIES, INC.

_____          By: _____
Witness                                  Title: _____ PRESIDENT / CEO

**THE OPTIONEE:**

Acknowledged and Agreed to*:

_____
Signature

BRIAN MEHLMAN
Print Name

25 HAZEL LANE
Street Address

NASAUA NH 03062
City, State, Zip Code

034 - 58 - 2173
Social Security No.


*IF you have any "Inventions" to except from Section 16, you must IDENTIFY ALL SUCH INVENTIONS below, or, if the statement is not applicable, you must write NONE below.

_____

_____

_____


E:\MHBENSON\9410\OPTION.AGT

9

## Exhibit 1

## STOCK REDEMPTION AGREEMENT

This Stock Redemption Agreement (the "Agreement") is made as of _____ by and between WebManage Technologies, Inc., a Delaware corporation with a mailing address of Corporate Place, 547 Amherst Street, Suite 101, Nashua, New    Hampshire,    03063    (the "Company") and    _____,   with    a    mailing    address    of _____    (the Shareholder")

### Recitals

A.   Contemporaneous with the execution of this Agreement, the Shareholder is acquiring _____ shares of the no par value common stock of the Company upon exercise of the Shareholder's Option pursuant to the terms of a certain Stock Option Agreement by and between the Company and the Shareholder dated _____, 199_ (the "Stock Option Agreement").

B.   As a condition of the award of the shares of stock in the Company to the Shareholder pursuant to the Stock Option Agreement, the Shareholder has agreed to provide the Company with certain rights related to such stock as provided herein.

### Terms

NOW, THEREFORE, in consideration of the covenants and promises herein contained, the receipt and sufficiency of which are hereby acknowledged, the Company and the Shareholder represent, covenant and agree as follows:

1.   **Right of First Refusal.** In the event that the Shareholder desires to sell, assign, encumber or otherwise transfer any or all of the no par value common Stock in the Company, which such Shareholder owns, whether now owned or hereafter acquired by him (the "Stock"), in any manner whatsoever, whether by sale, pledge, gift, transfer, assignment, mortgage, bequest or otherwise ("Dispose" or a "Disposition"), then the Company shall have the right of first refusal to redeem such Stock.  In the event that the Shareholder desires to Dispose of any or all of the Stock, then the Shareholder shall first give to the Company at least sixty (60) days prior written notice of the intention to Dispose of such Stock (the "Notice").  The Notice, in addition to stating the Shareholder's desire to Dispose of the shares of Stock shall state the number of shares of Stock involved, the name and address of the proposed purchaser or transferee, the proposed date of encumbrance or transfer, the price to be paid for such Stock and all other relevant terms of the proposed transaction. The Company shall have the right and option within sixty (60) days after the Company's receipt of the Notice, to exercise by written notice to the

10

Shareholder its rights to redeem all or any portion of the Stock proposed to be disposed of by the Shareholder for the purchase price provided for in the Notice. In such event, the Company shall be entitled to pay such purchase price to the Shareholder in accordance with Section 4 hereof. In the event that the Company does not exercise its option to redeem any portion of the Shareholder's Stock as set forth in the Notice, then the Shareholder shall have the right to Dispose of the Stock upon the terms set forth in the Notice; provided, however, that such Disposition shall be made no later than thirty (30) days after the expiration of the sixty (60) day period commencing with the Notice. After the expiration of such thirty (30) day period, such Stock shall be subject to the provisions of this Agreement. Any purchaser or transferee of such Stock shall be required as part of such Disposition to execute and deliver a Stock Redemption Agreement in the form hereof to the Company.

2.      **Optional Redemption Upon Death, Disability or Termination of Employment.** The Company shall have the right and option to redeem any or all of the Shareholder's Stock in the event of a "Termination" which shall mean: (a) the Shareholder's death; (b) the Shareholder's Total Disability (as hereinafter defined); and (c) the Shareholder's voluntary or involuntary termination of full-time employment with the Company for any reason. The Corporation may exercise its right and option hereunder upon the occurrence of a Termination within one hundred-eighty (180) days after the date of such Termination. The occurrence of one event of Termination after which the Company does not exercise its rights hereunder to redeem the Shareholder's Stock shall not affect, limit or terminate the Company's rights to redeem the Shareholder's Stock upon the occurrence of a subsequent event of Termination. The Company's right and option to redeem the Shareholder's Stock upon the occurrence of a Termination shall be made for the purchase price computed and paid in accordance with the terms and provisions of Sections 3 and 4 hereof, respectively.

For purposes of this Agreement, the term "Total Disability" shall be defined as the condition of suffering from a physical or mental disability which prevents the Shareholder from performing every day routine functions on behalf of the Company for a continuous period of at least ninety (90) consecutive days.

3.      **Purchase Price.** The Purchase Price for the Shareholder's Stock to be redeemed by the Company upon the exercise of its option in the event of a Termination shall be the fair market value of such Stock as determined by the certified public accountant then serving the Company (the "Purchase Price"). The Purchase Price so determined shall be final, binding and conclusive of proper valuation upon all concerned parties.

4.      **Payment of Purchase Price.** The Purchase Price for the Shareholder's Stock to be redeemed pursuant to the terms of this Agreement shall be paid to the Shareholder (or the Shareholder's estate) in the form of a Promissory Note of the Company (the "Note"). The Note shall be payable over a period of ten (10) years in one hundred twenty (120) equal monthly installments of principal and interest. The Note shall bear simple interest fixed at the prime rate as stated in the Wall Street Journal money rates column published as of the day prior to the closing on the redemption of the Shareholder's Stock. The Note shall allow prepayment of principal at any time or from time to time without premium or penalty and shall provide that in the event of default in payment of any installment of the remaining principal and the continuance of such default for a period of thirty (30) days, the holder of the Note shall have the right to accelerate the payments thereof.

5.      **Closing.** In the event that the Company elects to exercise its right and option to redeem the Shareholder's Stock pursuant to the terms of this Agreement, then the Company shall

11

notify the Shareholder of the date on which the Company shall redeem the Shareholder's Stock which shall be not more than sixty (60) days after the date of the Company's notice to the Shareholder of its intention to redeem the Shareholder's Stock. At such closing, the Shareholder (or the Shareholder's legal representative) shall deliver the following documents to the then serving secretary of the Company:

(a)    The Certificate or Certificates evidencing the shares of Stock to be redeemed by the Company from the Shareholder;

(b)    Assignments Separate from such Certificates, properly executed;

(c)    The written resignation, if applicable, of the Shareholder as an officer, director and employee of the Company as the case may be, effective upon delivery at the closing; and

(d)    Any and all other documents that may be reasonably required by the Company in connection with its redemption of the Stock of the Shareholder.

**6.    Endorsement on Stock Certificates.** All certificates representing the Stock shall be endorsed as follows:

This certificate is transferable only upon compliance with the Business Corporation Act of the State of Delaware and a certain Stock Redemption Agreement dated as of _____, 199___ by and between the Corporation and _____ providing for certain restrictions upon the transfer or encumbrance of this Stock, a copy of which is on file at both the offices of the Secretary of the Company and at the offices of Devine, Millimet & Branch, Professional Association, Manchester, Delaware.

**7.    Waiver.** No waiver by a party hereto of a breach of any condition, term or provision of this Agreement shall be deemed to be a waiver of any preceding or subsequent breach of the same or any other condition, term or provision hereof.

**8.    Notices.** All notices sent or required to be sent hereunder shall be by certified mail, postage prepaid, addressed to the last known address of the recipient, and shall be deemed given when delivered for mailing to the United States Post Office so addressed.

**9.    Applicable Law.** This Agreement is made under, and shall be governed, construed and interpreted by, and in accordance with, the laws of the State of Delaware. All matters relating to this Agreement shall be litigated only in Delaware state courts or federal courts in the District of Delaware of proper jurisdiction and venue. Each party hereto expressly agrees to submit to such jurisdiction and venue for purposes of this Agreement.

# WEBMANAGE TECHNOLOGIES, INC.

## STOCK OPTION AGREEMENT
## UNDER ITS
## 1999 STOCK OPTION PLAN

This STOCK OPTION AGREEMENT (this "Agreement") is issued to the Optionee hereinbelow set forth pursuant to the WebManage Technologies, Inc. 1999 Stock Option Plan (the "Plan") of WebManage Technologies, Inc., a New Hampshire corporation (the "Company").

## 1.    Optionee; Basic Terms.

The Optionee is hereby granted an option to purchase the number of fully paid and non-assessable shares of the Common Stock of the Company at the option price hereinbelow set forth, subject to the terms and conditions of this Agreement.

## 2.    Definitions.

    (a)    "**Code**" shall mean the Internal Revenue Code of 1986, as amended, the rules and regulations promulgated thereunder and the interpretations thereof, all as from time to time in effect.

    (b)    "**Exercise Dates**" shall mean the following dates after which the Option may be exercised in the increments set forth below:

| Exercise Dates | Optioned Stock |
|---|---|
| July 5th, 1999 | 20,833 |
| January 5th, 2000 | 20,833 |
| July 5th, 2000 | 20,833 |
| January 5th, 2001 | 20,833 |
| July 5th, 2001 | 20,833 |
| January 5th, 2002 | 20,835 |

    (c) "**Grant Date**" shall mean the date of grant of the Option, being January 5th, 1999.

    (d) "**Incentive Option**" shall mean an option described in Section 422 of the Code. To qualify for favorable tax treatment provided by an incentive option, the shares purchased upon exercise must be held for a period of two (2) years from the date of the option grant and for a period of one (1) year after the shares are transferred to Optionee.

M0071

1

(e) **"Nonqualified Option"** shall mean an option other than an Incentive Option, the exercise of which generally results in an immediate taxable event.

(f) **"Option"** shall have the meaning set forth in Section 3(a) hereof.

(g) **"Optioned Stock"** shall mean **125,000** (One hundred and twenty five thousand) shares of the no par value Common Stock of the Company.

(h) **"Optionee"** shall mean **Brian Mehlman**.

(i) **"Purchase Price"** shall mean the price per share for the Optioned Stock and shall be **$0.25.**

(j) **"Vesting Period"** shall mean a period <u>Three (3)</u> of years commencing on the Grant Date (Six equal installments).

(k) Unless otherwise indicated, all capitalized terms set forth in this Agreement shall have the meaning provided to them under the Plan, a copy of which Optionee acknowledges having received.

3. **Grant Of Option.**

(a)      As of the Grant Date, the Company hereby grants to the Optionee an option (the "Option") to purchase the Optioned Stock upon the terms and conditions set forth below.

(b)      This Option is intended to be a(n) (check one only):

| | |
|---|---|
| ✓ | Incentive Option (only employees of the Company are eligible) |
| | Nonqualified Option |

(c) The Optionee's relationship to the Company is as a(n) (if applicable, check more than one):

| | |
|---|---|
| | Officer |
| | Director |
| ✓ | Employee |
| | Consultant |
| | Other Person providing services |

M0072

2

## 4. Duration of Option

(a) **Incentive Option:** If this Option is an Incentive Option, as designated in Section 3(b), it shall expire one day short of ten (10) years from the Grant Date, provided, however, for any Optionee who owns more than ten percent (10%) of the total combined voting power or value of all classes of stock of the Company, this Option shall expire one day short of five (5) years from the Grant Date.

(b) **Nonqualified Option:** If this Option is a Nonqualified Option, as designated in Section 3(b), it shall expire ten (10) years from the Grant Date.

## 5. Purchase Price

The Purchase Price for the Optioned Stock has been determined by the Board of Directors of the Company and: (a) may or may not be less than the Fair Market Value on the Grant Date if the Option is a Nonqualified Option, (b) shall be equal to at least one-hundred percent (100%) of the Fair Market Value if the Option is an Incentive Option, or (c) shall be equal to at least one-hundred ten percent (1 1 0 %) of the Fair Market Value if the Option is an Incentive Option and Optionee holds more than ten percent (10%) of the total combined voting power or value of all classes of stock of the Company or of its Parent or any Subsidiary.

## 6. Exercisability

Subject to the provisions of this Agreement, including without limitation Section 10 regarding termination of Optionee's employment, consulting or other relationship with the Company and Section 14(b) regarding Incentive Options, this Option shall vest in semi-annual increments over the Vesting Period equal to the total number of shares of Optioned Stock divided by two times the number of years in the Vesting Period. Optioned Stock, to the extent vested shall become exercisable, in one or more installments (to the nearest whole number) on the Exercise Dates, to the extent of the total number of Shares of the Optioned Stock set forth next to such Exercise Date in the definition thereof. The number of shares of Optioned Stock which become exercisable every six months year, to the extent not previously exercised, shall accumulate until exercised in accordance with and subject to the terms and conditions of this Agreement.

## 7. Method of Exercise and Payment.

(a) **Exercise.** This Option may be exercised from time to time, in whole or in part, to the extent exercisable, only by delivery to an officer of the Company of the original of this Option with an appropriate Notice of Exercise of Stock Option duly signed by the Optionee, together with the full Purchase Price of the shares purchased pursuant to the exercise of the Option and an executed Stock Redemption Agreement pursuant to Section 7(b) hereof; provided, however, that this Option may not be exercised if such exercise would violate any law or governmental order or regulation. Payment for the

3

 

shares of Optioned Stock purchased pursuant to any exercise shall be made in full at the time of such exercise, in any of the following methods, as determined by the Board of Directors and as may be elected by the Optionee:

(i)      may ✓ or may not ___ pay in cash or by check payable to the order of the Company;

(ii)     may ✓ or may not ___ pay in Common Stock of the Company already owned by the Optionee for a period of six (6) months prior to such exercise, valued as of the date of exercise of the Option at Fair Market Value; or

(iii)    may ✓ or may not · ___ pay by a promissory note payable to the order of the Company; if a promissory note is tendered, such note shall bear interest at an interest rate determined by, and shall be subject to such terms and conditions as are prescribed by, the Board as set forth in the form of promissory note then utilized under the Plan.

**(b) Stock Redemption Agreement.** The Optionee shall execute and deliver to the Company, together with the Notice of Exercise of Stock Option and payment in full of the Purchase Price, duplicate originals of a Stock Redemption Agreement in the form set forth in Exhibit 1 attached to this Agreement. The Company shall not issue any shares of Optioned Stock to the Optionee unless and until Optionee executes and delivers such Stock Redemption Agreement.

**(c) Tax Withholdings.** Optionee agrees to have withheld from any remuneration payable to such Optionee by the Company and/or to pay to the Company, at the time of exercise of the Option, an amount which is required to be withheld or paid pursuant to any Federal, state or local tax or revenue laws or regulations, as may be determined by the Company. The Optionee may not satisfy such tax withholding by instructing the Company to withhold such number of shares of Optioned Stock that would equal the total tax obligations required to be withheld.

## 8.  Non-Transferability

This Option shall not be transferred, sold, pledged, assigned, hypothecated, or disposed of in any manner by Optionee other than by will or the laws of descent and distribution to the extent hereinafter set forth; provided, however, that a transfer hereof may be made pursuant to a qualified domestic relations order (as defined in the Code or as permitted by Title I of the Employee Retirement Income Security Act ("ERISA") or the rules thereunder) and, provided further, that Optionee may designate a beneficiary (which may be an individual or trustee) who may exercise the Option after Optionee's death and enjoy the economic benefits thereof, subject to the consent of Optionee's spouse where required by law. This Option may be exercised during the Optionee's lifetime only by the Optionee or, upon the Optionee's legal incapacity to act on the Optionee's own behalf, by the Optionee's conservator or other lawful representative. The Option shall be null and void and without effect upon any attempted assignment or transfer, except as

4




hereinabove provided, including without limitation, any purported assignment, whether voluntary of by operation of law, pledge, hypothecation or other disposition contrary to the provisions hereof, or levy of execution, attachment, trustee process or similar process, whether legal or equitable, upon the Option.

## 9. <u>Termination</u>

To the extent that this Option shall not have been exercised in full prior to 30-days from the termination or expiration date, whichever shall be sooner, it shall terminate and become void and of no effect.

## 10. <u>Cessation of Continuous Status -- Termination, Retirement, Death or Disability.</u>

If the Optionee shall voluntarily or involuntarily cease Continuous Status (as such term is defined in the Plan) (hereinafter referred to as a "Termination"), the unvested portion of Option of the Optionee shall terminate immediately upon the Termination and the Optionee in such event shall have 30 days after such Termination to exercise any unexercised Option that the Optionee might have exercised on or prior to the Termination; provided, however, that if the Termination is due to (i) retirement by the Optionee on or after attaining the age of sixty-five (65) years, (ii) the disability of the Optionee or (iii) the death of the Optionee, then the Optionee or the representative of the estate of the Optionee shall have the privilege of exercising the entire unexercised vested portion of this Option, provided that such exercise be accomplished (a) prior to the expiration of this Option and (b) either within thirty (30) days of the Optionee's retirement, within thirty (30) days of the Optionee's disability, or within thirty (30) days after the date of death of the Optionee, as the case may be.

## 11.    <u>Stock Splits and Capital Adjustments.</u> If, prior to the complete exercise of this Option, there shall be declared and paid a stock dividend upon the Common Stock of the Company or if such stock shall be split up, converted, exchanged or reclassified, this Option, to the extent that it has not been exercised, shall entitle the holder, upon the future exercise of this Option, to such number and kind of securities or other property, subject to the terms of the Option, to which the holder would be entitled had he actually owned the stock subject to the unexercised portion of the Option at the time of the occurrence of such stock dividend, split up, conversion, exchange, reclassification or substitution; and the aggregate purchase price upon the future exercise of the Option shall be the same as if shares of Common Stock of the Company originally optioned were being purchased as provided herein.

## 12.    Acceleration of Exercise Date

<u>Sale of Assets, Merger, Consolidation and Change of Control.</u> The Board of Directors of the Company may, but shall not be required, to provide for immediate vesting of any or all outstanding unexercised Options in the event of any proposed merger, acquisition or sale of the Company (other than a merger, acquisition or sale with respect to which a majority of the members of the Board of Directors of the Company prior to the merger, acquisition or sale

5

continue to be a majority of the Board of Directors of the resulting corporation after such merger, acquisition or sale), all pursuant to and subject to the terms and conditions of the Plan including, *(handwritten)* without limitation, the limitations upon vesting imposed by Section 8 of the Plan.

*(handwritten: (Please refer to the employment offer letter attached as Exhibit #2 for*

**13.   Compliance With Securities Laws.**   *(handwritten: accelerated vesting in case of merger or acquisition))*

(a)    **Postpone Issuance.**   Notwithstanding any provision of this Option to the contrary, the Company may postpone the issuance and delivery of shares upon any exercise of this Option until one of the following conditions shall be met:

(i)    The shares of Optioned Stock with respect to which such Option has been exercised are at the time of the issue of such shares effectively registered under applicable Federal and state securities laws now in force or hereafter enacted or amended; or

(ii)   Counsel for the Company shall have given an opinion that registration of such shares under applicable Federal and state securities laws, as now in force or hereafter enacted or amended, is not required.

(b)    **Investment Representation.** In the event that for any reason the shares of Optioned Stock to be issued upon exercise of the Option shall not be effectively registered under the Securities Act of 1933 (the " 1933 Act"), upon any date on which the Option is exercised in whole or in part, the Company shall be under no further obligation to issue shares of Optioned Stock unless the Optionee shall give a written representation to the Company, in form satisfactory to the Company, that such person is acquiring the shares of Optioned Stock issued pursuant to such exercise of the Option for investment and not with a view to, or for sale in connection with, the distribution of any such shares, and that he/she will make no transfer of the same except in compliance with the 1933 Act and the rules and regulations promulgated thereunder and then in force, and in such event, the Company may place an "investment legend" upon any certificate for the shares of Optioned Stock issued by reason of such exercise.

**14.   Special Rules Regarding Incentive Options**

(a)    **Notice of Transfer.** If this Option is an Incentive Option, then the employee-Optionee hereby agrees to notify the Company in writing within three (3) days after any sale, transfer or other disposition of shares acquired upon the exercise of this Option which occurs within either twelve (12) months following the date of exercise or twenty-four (24) months following the Grant Date.

(b)    **$100,000 Per Year Exercise Limit.** If this option is an Incentive Option, then it shall be exercisable in accordance with the above schedule of Section 6, but in no event shall it be exercised to the extent that the aggregate fair market value of Optioned Stock, which is exercisable for the first time during any calendar year, when combined with the aggregate fair market value of all stock covered by

6

incentive stock options (as defined in the Code) granted to Optionee after December 31, 1986 by the Company, its parent or a subsidiary of the Company which are exercisable for the first time during the same calendar year, exceeds $100,000.

### 15. No Agreement of Employment

Neither the grant of this Option nor this Agreement shall be deemed to create any agreement with, or obligation by, the Company to employ the Optionee for any period of time, it being understood that employment is strictly "at will" in the absence of any written agreement to the contrary and, in the absence of such written agreement, such person may be terminated by the Company at any time, with or without cause.

### 16. Assignment of Inventions, Etc.; Non-Disclosure of Confidential Information

As further consideration for the issuance of the Option, the Optionee, if the Optionee is an Employee of the Company, agrees as follows:

(a) **Assignment of Inventions.** Any and all trade secrets, inventions and proprietary information which either (i) relates at the time of conception or reduction to practice to the company or its business, or actual or demonstrably anticipated research or development of the Company or (ii) results from any work performed by the Optionee for the Company is hereby assigned to, and shall become the absolute property of, the Company and shall at all times and for all purposes be regarded as acquired and held by the Optionee in a fiduciary capacity for the sole benefit of the Company, and the Optionee agrees that, upon request, the Optionee will promptly make all disclosures, execute all assignments, instruments and papers, and perform all acts whatsoever necessary or desired by the Company to vest and confirm in it, its successors, assigns and nominees, all rights created or contemplated by this subsection (a) and which may be necessary or desirable to enable the Company, its successors, assigns, and nominees to secure and enjoy the full benefits and advantages thereof.

(b) **Nondisclosure of Confidential Information.** The Optionee shall not, during the period of employment by the Company or at any time thereafter, directly or indirectly use, divulge, furnish or make accessible to anyone other than the Company, its directors and officers other than in the regular course of the business of the Company or any of its subsidiaries, any knowledge or information with respect to (i) confidential, secret or proprietary plans, data (including financial and cost data), specifications, procedures and techniques, methods, technology, "knowhow," or material relating to the business, products, services (whether existing or under development) or activities of the Company or its subsidiaries, (ii) any confidential business plans or surveys of the Company or its subsidiaries, (iii) any other confidential or secret aspect of the business, products, services or activities of the Company or its subsidiaries, or (iv) any customer usages and requirements or any customer lists of the Company or its subsidiaries. The Optionee shall not, upon leaving the employ of the Company, without the prior written consent of the Board of Directors of the Company,

7

M0077

Under its
1999 Stock Option Plan

take any data, customer lists, reports, studies, compilations, business plans, presentations/proposals, letters, memoranda, notes or other writings or documents whatever, or copies thereof, which reflect or deal with any of the confidential information described in this Section 16(b).

(c)   **Remedies.** The Optionee acknowledges that a breach of the provisions of this Agreement will cause the Company irreparable injury for which the Company cannot be reasonably or adequately compensated in damages. The Company shall, therefore, be entitled, in addition to all other remedies available to it, to injunctive and/or other equitable relief to prevent a breach of this Agreement, or any part of it, and to secure its enforcement, and any termination of Optionee as a result of a violation of this Section 16 shall be deemed "for cause."

## 17.   Subject to Plan.

This Option is issued subject and pursuant to the provisions of the Plan, receipt of a copy of which the Optionee acknowledges. A determination of the Board of Directors or the Committee established pursuant to the Plan as to any questions which may arise with respect to the interpretation of the provisions of this Option and of the Plan shall be final. The Board of Directors or the Committee may authorize and establish such rules and regulations, and revisions thereof, not inconsistent with the provisions of the Plan, as it may deem advisable. Any provision hereof which is inconsistent with, or contrary to, the terms and conditions of the Plan shall be superseded and governed by the Plan.

## 18. Severability

If any condition, term or provision of this Agreement is determined by a court to be illegal or in conflict with any law, state or Federal, the validity of the remaining portions or provisions shall not be affected, and the rights and obligations of the parties shall be construed and enforced as if this Agreement did not contain the particular condition, term or provision determined to be unenforceable.

## 19. Entire Agreement; New Hampshire Law

This Agreement contains the entire understanding and agreement between the parties hereto respecting the within subject matter, and there are no representations, agreements, arrangements or understandings, oral or written, between the parties hereto relating to the subject matter of this Agreement that are not fully expressed herein. The Company is a New Hampshire corporation, and this Agreement shall be governed by and construed in accordance with the laws of the State of New Hampshire.

WITNESS the signature of its duly authorized officer of the Company as of the date of

grant hereof.

M0078

8

Under its
1999 Stock Option Plan

## THE COMPANY:

WEBMANAGE TECHNOLOGIES, INC.

_Basanikedd_
Witness

By: _Vijay Basani_
Title: _PRESIDENT / CEO_
_VIJAY BASANI_

## THE OPTIONEE:

Acknowledged and Agreed to*:

_Brian Mehlman_
Signature

BRIAN MEHLMAN
Print Name

25 HAZEL Ave
Street Address

NAShUA NH 03062
City, State, Zip Code

603-883-8851
Social Security No.

*IF you have any "Inventions" to except from Section 16, you must IDENTIFY ALL SUCH INVENTIONS below, or, if the statement is not applicable, you must write NONE below.

_____

_____

_____

E:\MHBENSON\9410\OPTION.AGT

## Exhibit 1

## STOCK REDEMPTION AGREEMENT

This Stock Redemption Agreement (the "Agreement") is made as of _____ by and between WebManage Technologies, Inc., a New Hampshire corporation with a mailing address of Corporate Place, 547 Amherst Street, Suite 101, Nashua, New Hampshire,    03063 (the "Company") and _____, with a mailing address of _____ (the Shareholder")

## Recitals

A.    Contemporaneous with the execution of this Agreement, the Shareholder is acquiring _____ shares of the no par value common stock of the Company upon exercise of the Shareholder's Option pursuant to the terms of a certain Stock Option Agreement by and between the Company and the Shareholder dated _____, 199_ (the "Stock Option Agreement").

B.    As a condition of the award of the shares of stock in the Company to the Shareholder pursuant to the Stock Option Agreement, the Shareholder has agreed to provide the Company with certain rights related to such stock as provided herein.

## Terms

NOW, THEREFORE, in consideration of the covenants and promises herein contained, the receipt and sufficiency of which are hereby acknowledged, the Company and the Shareholder represent, covenant and agree as follows:

1.    **Right of First Refusal.** In the event that the Shareholder desires to sell, assign, encumber or otherwise transfer any or all of the no par value common Stock in the Company, which such Shareholder owns, whether now owned or hereafter acquired by him (the "Stock"), in any manner whatsoever, whether by sale, pledge, gift, transfer, assignment, mortgage, bequest or otherwise ("Dispose" or a "Disposition"), then the Company shall have the right of first refusal to redeem such Stock. In the event that the Shareholder desires to Dispose of any or all of the Stock, then the Shareholder shall first give to the Company at least sixty (60) days prior written notice of the intention to Dispose of such Stock (the "Notice"). The Notice, in addition to stating the Shareholder's desire to Dispose of the shares of Stock shall state the number of shares of Stock involved, the name and address of the proposed purchaser or transferee, the proposed date of encumbrance or transfer, the price to be paid for such Stock and all other relevant terms of the proposed transaction. The Company shall have the right and option within sixty (60) days after the Company's receipt of the Notice, to exercise by written notice to the

10

Shareholder its rights to redeem all or any portion of the Stock proposed to be disposed of by the Shareholder for the purchase price provided for in the Notice. In such event, the Company shall be entitled to pay such purchase price to the Shareholder in accordance with Section 4 hereof. In the event that the Company does not exercise its option to redeem any portion of the Shareholder's Stock as set forth in the Notice, then the Shareholder shall have the right to Dispose of the Stock upon the terms set forth in the Notice; provided, however, that such Disposition shall be made no later than thirty (30) days after the expiration of the sixty (60) day period commencing with the Notice. After the expiration of such thirty (30) day period, such Stock shall be subject to the provisions of this Agreement. Any purchaser or transferee of such Stock shall be required as part of such Disposition to execute and deliver a Stock Redemption Agreement in the form hereof to the Company.

2.    **Optional Redemption Upon Death, Disability or Termination of Employment.** The Company shall have the right and option to redeem any or all of the Shareholder's Stock in the event of a "Termination" which shall mean: (a) the Shareholder's death; (b) the Shareholder's Total Disability (as hereinafter defined); and (c) the Shareholder's voluntary or involuntary termination of full-time employment with the Company for any reason. The Corporation may exercise its right and option hereunder upon the occurrence of a Termination within one hundred-eighty (180) days after the date of such Termination. The occurrence of one event of Termination after which the Company does not exercise its rights hereunder to redeem the Shareholder's Stock shall not affect, limit or terminate the Company's rights to redeem the Shareholder's Stock upon the occurrence of a subsequent event of Termination. The Company's right and option to redeem the Shareholder's Stock upon the occurrence of a Termination shall be made for the purchase price computed and paid in accordance with the terms and provisions of Sections 3 and 4 hereof, respectively.

For purposes of this Agreement, the term "Total Disability" shall be defined as the condition of suffering from a physical or mental disability which prevents the Shareholder from performing every day routine functions on behalf of the Company for a continuous period of at least ninety (90) consecutive days.

3.    **Purchase Price.** The Purchase Price for the Shareholder's Stock to be redeemed by the Company upon the exercise of its option in the event of a Termination shall be the fair market value of such Stock as determined by the certified public accountant then serving the Company (the "Purchase Price"). The Purchase Price so determined shall be final, binding and conclusive of proper valuation upon all concerned parties.

4.    **Payment of Purchase Price.** The Purchase Price for the Shareholder's Stock to be redeemed pursuant to the terms of this Agreement shall be paid to the Shareholder (or the Shareholder's estate) in the form of a Promissory Note of the Company (the "Note"). The Note shall be payable over a period of ten (10) years in one hundred twenty (120) equal monthly installments of principal and interest. The Note shall bear simple interest fixed at the prime rate as stated in the Wall Street Journal money rates column published as of the day prior to the closing on the redemption of the Shareholder's Stock. The Note shall allow prepayment of principal at any time or from time to time without premium or penalty and shall provide that in the event of default in payment of any installment of the remaining principal and the continuance of such default for a period of thirty (30) days, the holder of the Note shall have the right to accelerate the payments thereof.

11

**5.** **Closing.** In the event that the Company elects to exercise its right and option to redeem the Shareholder's Stock pursuant to the terms of this Agreement, then the Company shall notify the Shareholder of the date on which the Company shall redeem the Shareholder's Stock which shall be not more than sixty (60) days after the date of the Company's notice to the Shareholder of its intention to redeem the Shareholder's Stock. At such closing, the Shareholder (or the Shareholder's legal representative) shall deliver the following documents to the then serving secretary of the Company:

    (a)    The Certificate or Certificates evidencing the shares of Stock to be redeemed by the Company from the Shareholder;

    (b)    Assignments Separate from such Certificates, properly executed;

    (c)    The written resignation, if applicable, of the Shareholder as an officer, director and employee of the Company as the case may be, effective upon delivery at the closing; and

    (d)    Any and all other documents that may be reasonably required by the Company in connection with its redemption of the Stock of the Shareholder.

**6.** **Endorsement on Stock Certificates.** All certificates representing the Stock shall be endorsed as follows:

This certificate is transferable only upon compliance with the Business Corporation Act of the State of New Hampshire and a certain Stock Redemption Agreement dated as of _____, 199____ by and between the Corporation and _____ providing for certain restrictions upon the transfer or encumbrance of this Stock, a copy of which is on file at both the offices of the Secretary of the Company and at the offices of Devine, Millimet & Branch, Professional Association, Manchester, New Hampshire.

**7.** **Waiver.** No waiver by a party hereto of a breach of any condition, term or provision of this Agreement shall be deemed to be a waiver of any preceding or subsequent breach of the same or any other condition, term or provision hereof.

**8.** **Notices.** All notices sent or required to be sent hereunder shall be by certified mail, postage prepaid, addressed to the last known address of the recipient, and shall be deemed given when delivered for mailing to the United States Post Office so addressed.

**9.** **Applicable Law.** This Agreement is made under, and shall be governed, construed and interpreted by, and in accordance with, the laws of the State of New Hampshire. All matters relating to this Agreement shall be litigated only in New Hampshire state courts or federal courts in the District of

12

New Hampshire of proper jurisdiction and venue. Each party hereto expressly agrees to submit to such jurisdiction and venue for purposes of this Agreement.

**16. Time of the Essence.**    TIME IS OF THE ESSENCE TO THIS AGREEMENT FOR ALL PURPOSES.

17. **Entire Agreement, Amendments.** This Agreement constitutes the entire agreement among the parties hereto and shall be binding upon and inure to the benefit of the successors, assigns, personal or legal representatives, heirs and legatees of the respective parties hereto.  This Agreement may be amended at any time by a written agreement of subsequent date hereto signed by each of the then Shareholders of the Company and a duly authorized representative of the Company.

**18. Gender, Number.** All pronouns and words denoting gender shall be construed so as to refer to the masculine, feminine, neuter, or singular form thereof as the identity of the persons, entities and situation may require.

IN WITNESS WHEREOF, the parties hereto have executed this Stock Redemption Agreement on the day and year stated above.

WEBMANAGE TECHNOLOGIES, INC.
(the "Corporation")

By:_____

_____
Witness

Title: _____

_____
Witness

_____

_____
("Shareholder")

E:\MHBENSON\9410\STKREDM.AGT

13

WebManage Technologies, Inc.

## NOTICE OF GRANT OF STOCK OPTIONS

Notice is hereby given of the following options grant (the "Option") to the purchase of the Common Stock of WebManage Technologies, Inc (the "Corporation"):

Optionee:                                Brian Mehlman

Grant Date:                          10/30/2000
Vesting Commencement Date:    11/10/00
Exercise Price:                      $0.86 per share
Number of Option Shares:       149,116 shares
Type of Options:                    Incentive Stock Option
Excerise Schedule:

    Twenty Five percent (25%) shares become exercisable on 11/10/2001;

    1/36[th] of shares become exercisable in successive equal monthly installments upon Optionee's completion of each month of Service starting from 11/10/2001 through 11/10/2004;

In no event shall the Options become exercisable for any additional Option Shares after Optionee's cessation of Service .

Optionee understands and agrees that the Option is granted subject to and in accordance with the terms of the A copy of the Plan is available upon request made to the Corporate Secretary at the Corporation's principal offices.
. 2000 Stock Option Plan (the "Plan"). A copy of the Plan is available upon request made to the Corporate Secretary at the Corporation's principal offices.

Optionee further agrees to be bound by the terms of the Plan and the terms of the Option as set forth in the Stock Option Agreement. A copy of the Agreement is available upon request made to the Corporate Secretary at the Corporation's principal offices. Optionee hereby acknowledges that the Stock Option Agreement and the Plan are made a part of this Notice of Grant of Stock Option.

No Employment or Service Contract. Nothing in this Notice or in the Stock Option Agreement or in the Plan shall confer upon Optionee any right to continue in Service for any period of specific duration or interfere with or otherwise restrict in any way the rights of the Corporation (or any Parent or Subsidiary employing or retaining Optionee) or of Optionee, which rights are hereby expressly reserved by each, to terminate Optionee's Service at any time for any reason, with or without cause.

Definitions. All capitalized terms in this Notice shall have the meaning assigned to them in this Notice or in the Stock Option Agreement.

Oct 30 ,2000
Date

                    WebManage Technologies, Inc.

By: _____
            Title: President/CEO

By: _____
            Brian Mehlman

**EXHIBIT B**

**WEBMANAGE TECHNOLOGIES, INC.**
**STOCK OPTION AGREEMENT**

**RECITALS**

A.        The Board has adopted the Plan for the purpose of retaining the services of selected Employees, non-employee members of the Board and consultants and other independent advisors who provide services to the Corporation.

B.        Optionee is to render valuable services to the Corporation, and this Agreement is executed pursuant to, and is intended to carry out the purposes of, the Plan in connection with the Corporation's grant of an option to Optionee.

C.        All capitalized terms in this Agreement shall have the meaning assigned to them in the attached Appendix.

**NOW, THEREFORE**, it is hereby agreed as follows:

1.        <u>Grant of Option</u>.  The Corporation hereby grants to Optionee, as of the Grant Date, an option to purchase up to the number of Option Shares specified in the Grant Notice.  The Option Shares shall be purchasable from time to time during the option term specified in Paragraph 2 at the Exercise Price.

2.        <u>Option Term</u>.  This option shall have a term of ten (10) years measured from the Grant Date and shall accordingly expire at the close of business on the Expiration Date, unless sooner terminated in accordance with Paragraph 5 or 6.

3.        <u>Limited Transferability</u>.  This option shall be neither transferable nor assignable by Optionee other than by will or by the laws of descent and distribution following Optionee's death and may be exercised, during Optionee's lifetime, only by Optionee.  However, if this option is designated a Non-Statutory Option in the Grant Notice, then this option may also be assigned, in whole or in part during Optionee's lifetime in accordance with the Optionee's estate plan, to one or more members of the Optionee's immediate family or to a trust established exclusively for one or more such family members.  The assigned portion may only be exercised by the person or persons who acquire a proprietary interest in the option pursuant to the assignment.  The terms applicable to the assigned portion shall be the same as those in effect for the option immediately prior to such assignment and shall be set forth in such documents issued to the assignee as the Plan Administrator may deem appropriate.

4.        <u>Dates of Exercise</u>.  This option shall become exercisable for the Option Shares in one or more installments as specified in the Grant Notice.  As the option becomes exercisable for such installments, those installments shall accumulate and the option shall remain exercisable for the accumulated installments until the Expiration Date or sooner termination of the option term under Paragraph 5 or 6.

5.        <u>Cessation of Service</u>.  The option term specified in Paragraph 2 shall terminate (and this option shall cease to be outstanding) prior to the Expiration Date should any of the following provisions become applicable:

(i)        Should Optionee cease to remain in Service for any reason (other than death, Permanent Disability or Misconduct) while this option is outstanding, then Optionee shall have a period of three (3) months (commencing with the date of such cessation of Service) during which to exercise this option, but in no event shall this option be exercisable at any time after the Expiration Date.

(ii)        Should Optionee die while this option is outstanding, then the personal representative of Optionee's estate or the person or persons to whom the option is transferred pursuant to Optionee's will or in accordance with the laws of descent and distribution shall have the right to exercise this option.  Such right shall lapse, and this option shall cease to be outstanding, upon the <u>earlier</u> of (A) the expiration of the twelve (12)- month period measured from the date of Optionee's death or (B) the Expiration Date.

(iii)        Should Optionee cease Service by reason of Permanent Disability while this option is outstanding, then Optionee shall have a period of twelve (12) months (commencing with the date of such cessation of Service) during which to exercise this option.  In no event shall this option be exercisable at any time after the Expiration Date.

M0087

(iv)    Should Optionee's Service be terminated for Misconduct, then this option shall terminate immediately and cease to remain outstanding.

(v)    During the applicable post-Service exercise period, this option may not be exercised in the aggregate for more than the number of vested Option Shares for which the option is exercisable at the time of Optionee's cessation of Service. Upon the expiration of such exercise period or (if earlier) upon the Expiration Date, this option shall terminate and cease to be outstanding for any vested Option Shares for which the option has not been exercised. However, this option shall, immediately upon Optionee's cessation of Service for any reason, terminate and cease to be outstanding with respect to any Option Shares in which Optionee is not otherwise at that time vested or for which this option is not otherwise at that time exercisable.

6.    **Special Acceleration of Option.**

(a)    This option, to the extent outstanding at the time of a Corporate Transaction but not otherwise fully exercisable, shall automatically accelerate so that this option shall, immediately prior to the effective date of the Corporate Transaction, become exercisable for all of the Option Shares at the time subject to this option and may be exercised for any or all of those Option Shares as fully-vested shares of Common Stock. No such acceleration of this option, however, shall occur if and to the extent: (i) this option is, in connection with the Corporate Transaction, either to be assumed by the successor corporation (or parent thereof) or to be replaced with a comparable option to purchase shares of the capital stock of the successor corporation (or parent thereof) or (ii) this option is to be replaced with a cash incentive program of the successor corporation which preserves the spread existing on the Option Shares at the time of the Corporate Transaction (the excess of the Fair Market Value of those Option Shares over the aggregate Exercise Price payable for such shares) and provides for subsequent pay-out in accordance with the option exercise schedule set forth in the Grant Notice. The determination of option comparability under clause (i) shall be made by the Plan Administrator, and such determination shall be final, binding and conclusive.

(b)    Immediately following the Corporate Transaction, this option, to the extent not previously exercised, shall terminate and cease to be outstanding, except to the extent assumed by the successor corporation (or parent thereof) in connection with the Corporate Transaction.

(c)    If this option is assumed in connection with a Corporate Transaction, then this option shall be appropriately adjusted, immediately after such Corporate Transaction, to apply to the number and class of securities which would have been issuable to Optionee in consummation of such Corporate Transaction had the option been exercised immediately prior to such Corporate Transaction, and appropriate adjustments shall also be made to the Exercise Price, provided the aggregate Exercise Price shall remain the same.

(d)    This Agreement shall not in any way affect the right of the Corporation to adjust, reclassify, reorganize or otherwise change its capital or business structure or to merge, consolidate, dissolve, liquidate or sell or transfer all or any part of its business or assets.

7.    **Adjustment in Option Shares.**   Should any change be made to the Common Stock by reason of any stock split, stock dividend, recapitalization, combination of shares, exchange of shares or other change affecting the outstanding Common Stock as a class without the Corporation's receipt of consideration, appropriate adjustments shall be made to (i) the total number and/or class of securities subject to this option and (ii) the Exercise Price in order to reflect such change and thereby preclude a dilution or enlargement of benefits hereunder.

8.    **Stockholder Rights.**   The holder of this option shall not have any stockholder rights with respect to the Option Shares until such person shall have exercised the option, paid the Exercise Price and become a holder of record of the purchased shares.

9.    **Manner of Exercising Option.**

(a)    In order to exercise this option with respect to all or any part of the Option Shares for which this option is at the time exercisable, Optionee (or any other person or persons exercising the option) must take the following actions:

(i)    Execute and deliver to the Corporation a Notice of Exercise for the Option Shares for which the option is exercised.

2

M0088

(ii)     Pay the aggregate Exercise Price for the purchased shares in one or more of the following forms:

(A)     cash or check made payable to the Corporation;

(B)     shares of Common Stock held by Optionee (or any other person or persons exercising the option) for the requisite period necessary to avoid a charge to the Corporation's earnings for financial reporting purposes and valued at Fair Market Value on the Exercise Date; or

(C)     through a special sale and remittance procedure pursuant to which Optionee (or any other person or persons exercising the option) shall concurrently provide irrevocable instructions (I) to the Corporation to effect the immediate sale of the purchased shares and remit to the Corporation, out of the sale proceeds available on the settlement date, sufficient funds to cover the aggregate Exercise Price payable for the purchased shares plus all applicable Federal, state and local income and employment taxes required to be withheld by the Corporation by reason of such exercise and (II) to the Corporation to deliver the certificates for the purchased shares in order to complete the sale transaction.

Except to the extent the sale and remittance procedure is utilized in connection with the option exercise, payment of the Exercise Price must accompany the Notice of Exercise delivered to the Corporation in connection with the option exercise.

(iii)     Furnish to the Corporation appropriate documentation that the person or persons exercising the option (if other than Optionee) have the right to exercise this option.

(iv)     Make appropriate arrangements with the Corporation (or Parent or Subsidiary employing or retaining Optionee) for the satisfaction of all Federal, state and local income and employment tax withholding requirements applicable to the option exercise.

(b)     As soon as practical after the Exercise Date, the Corporation shall issue to or on behalf of Optionee (or any other person or persons exercising this option) a certificate for the purchased Option Shares, with the appropriate legends affixed thereto.

(c)     In no event may this option be exercised for any fractional shares.

10.     **Compliance with Laws and Regulations**.

(a)     The exercise of this option and the issuance of the Option Shares upon such exercise shall be subject to compliance by the Corporation and Optionee with all applicable requirements of law relating thereto.

(b)     The inability of the Corporation to obtain approval from any regulatory body having authority deemed by the Corporation to be necessary to the lawful issuance and sale of any Common Stock pursuant to this option shall relieve the Corporation of any liability with respect to the non-issuance or sale of the Common Stock as to which such approval shall not have been obtained. The Corporation, however, shall use its best efforts to obtain all such approvals.

11.     **Successors and Assigns**. Except to the extent otherwise provided in Paragraphs 3 and 6, the provisions of this Agreement shall inure to the benefit of, and be binding upon, the Corporation and its successors and assigns and Optionee, Optionee's assigns and the legal representatives, heirs and legatees of Optionee's estate.

12.     **Notices**. Any notice required to be given or delivered to the Corporation under the terms of this Agreement shall be in writing and addressed to the Corporation at its principal corporate offices. Any notice required to be given or delivered to Optionee shall be in writing and addressed to Optionee at the address indicated below Optionee's signature line on the Grant Notice. All notices shall be deemed effective upon personal delivery or upon deposit in the U.S. mail, postage prepaid and properly addressed to the party to be notified.

3

13.    Construction. This Agreement and the option evidenced hereby are made and granted pursuant to the Plan and are in all respects limited by and subject to the terms of the Plan. All decisions of the Plan Administrator with respect to any question or issue arising under the Plan or this Agreement shall be conclusive and binding on all persons having an interest in this option.

14.    Governing Law. The interpretation, performance and enforcement of this Agreement shall be governed by the laws of the State of California without resort to that State's conflict-of-laws rules.

15.    Excess Shares. If the Option Shares covered by this Agreement exceed, as of the Grant Date, the number of shares of Common Stock which may without stockholder approval be issued under the Plan, then this option shall be void with respect to those excess shares, unless stockholder approval of an amendment sufficiently increasing the number of shares of Common Stock issuable under the Plan is obtained in accordance with the provisions of the Plan.

16.    Additional Terms Applicable to an Incentive Option. In the event this option is designated an Incentive Option in the Grant Notice, the following terms and conditions shall also apply to the grant:

(a)    This option shall cease to qualify for favorable tax treatment as an Incentive Option if (and to the extent) this option is exercised for one or more Option Shares: (A) more than three (3) months after the date Optionee ceases to be an Employee for any reason other than death or Permanent Disability or (B) more than twelve (12) months after the date Optionee ceases to be an Employee by reason of Permanent Disability.

(b)    No installment under this option shall qualify for favorable tax treatment as an Incentive Option if (and to the extent) the aggregate Fair Market Value (determined at the Grant Date) of the Common Stock for which such installment first becomes exercisable hereunder would, when added to the aggregate value (determined as of the respective date or dates of grant) of the Common Stock or other securities for which this option or any other Incentive Options granted to Optionee prior to the Grant Date (whether under the Plan or any other option plan of the Corporation) first become exercisable during the same calendar year, exceed One Hundred Thousand Dollars ($100,000) in the aggregate. Should such One Hundred Thousand Dollar ($100,000) limitation be exceeded in any calendar year, this option shall nevertheless become exercisable for the excess shares in such calendar year as a Non-Statutory Option.

(c)    Should the exercisability of this option be accelerated upon a Corporate Transaction, then this option shall qualify for favorable tax treatment as an Incentive Option only to the extent the aggregate Fair Market Value (determined at the Grant Date) of the Common Stock for which this option first becomes exercisable in the calendar year in which the Corporate Transaction occurs does not, when added to the aggregate value (determined as of the respective date or dates of grant) of the Common Stock or other securities for which this option or one or more other Incentive Options granted to Optionee prior to the Grant Date (whether under the Plan or any other option plan of the Corporation) first become exercisable during the same calendar year, exceed One Hundred Thousand Dollars ($100,000) in the aggregate. Should the applicable One Hundred Thousand Dollar ($100,000) limitation be exceeded in the calendar year of such Corporate Transaction, the option may nevertheless be exercised for the excess shares in such calendar year as a Non-Statutory Option.

(d)    Should Optionee hold, in addition to this option, one or more other options to purchase Common Stock which become exercisable for the first time in the same calendar year as this option, then the foregoing limitations on the exercisability of such options as Incentive Options shall be applied on the basis of the order in which such options are granted.

17.    Leave of Absence. The following provisions shall apply upon the Optionee's commencement of an authorized leave of absence:

(a)    The exercise schedule in effect under the Grant Notice shall be frozen as of the first day of the authorized leave, and the option shall not become exercisable for any additional installments of the Option Shares during the period Optionee remains on such leave.

M0090

(b)    Should Optionee resume active Employee status within sixty (60) days after the start date of the authorized leave, Optionee shall, for purposes of the exercise schedule set forth in the Grant Notice, receive Service credit for the entire period of such leave. If Optionee does not resume active Employee status within such sixty (60)-day period, then no Service credit shall be given for the period of the leave.

(c)    If the option is designated as an Incentive Stock Option in the Grant Notice, then the following additional provision shall apply:

If the leave of absence continues for more than ninety (90) days, then the option shall automatically convert to a Non-Statutory Option under the federal tax laws on the ninety-first (91st) day of such leave, unless the Optionee's reemployment rights are guaranteed by statute or by written agreement. Following any such conversion of the option, all subsequent exercises of such option, whether effected before or after Optionee's return to active Employee status, shall result in an immediate taxable event, and the Corporation shall be required to collect from Optionee the federal, state and local income and employment withholding taxes applicable to such exercise.

(d)    In no event shall this option become exercisable for any additional Option Shares or otherwise remain outstanding if Optionee does not resume Employee status prior to the Expiration Date of the option term.

IN WITNESS WHREOF, the Corporation has caused this agreement to be executed by a duly authorized officer of the Corporation as of the date of grant hereof.

WEBMANAGE TECHNOLOGIES, INC.
(the "Corporation@)

By: _____
Vijay Basani, President and CEO

_____
Witness

Acknowledged and agreed to this 30 day of October, 2000:

_____
(the Optionee)

5

M0091

## EXHIBIT I

### NOTICE OF EXERCISE

I hereby notify WebManage Technologies, Inc. (the "Corporation") that I elect to purchase _____ shares of the Corporation's Common Stock (the "Purchased Shares") at the option exercise price of $_____ per share (the "Exercise Price") pursuant to that certain option (the "Option") granted to me under the Corporation's 2000 Stock Incentive Plan.

Concurrently with the delivery of this Exercise Notice to the Corporation, I shall hereby pay to the Corporation the Exercise Price for the Purchased Shares in accordance with the provisions of my agreement with the Corporation (or other documents) evidencing the Option and shall deliver whatever additional documents may be required by such agreement as a condition for exercise. Alternatively, I may utilize the sale and remittance procedure specified in my agreement to effect payment of the Exercise Price.

Date: _____, 200_

Optionee: _____

Address: _____

Print name in exact manner
it is to appear on the
stock certificate:                    _____

Address to which certificate
is to be sent, if different
from address above:                   _____

                                      _____

Social Security Number:               _____

Employee Number:                      _____

M0092

i

## APPENDIX

The following definitions shall be in effect under the Agreement:

A.    **Agreement** shall mean this Stock Option Agreement.

B.    **Board** shall mean the Corporation's Board of Directors.

C.    **Code** shall mean the Internal Revenue Code of 1986, as amended.

D.    **Common Stock** shall mean the Corporation's common stock.

E.    **Corporate Transaction** shall mean either of the following stockholder-approved transactions to which the Corporation is a party:

    (i)    a merger or consolidation in which securities possessing more than fifty percent (50%) of the total combined voting power of the Corporation's outstanding securities are transferred to a person or persons different from the persons holding those securities immediately prior to such transaction, or

    (ii)    the sale, transfer or other disposition of all or substantially all of the Corporation's assets in complete liquidation or dissolution of the Corporation.

F.    **Corporation** shall mean WebManage Technologies, Inc., a Delaware corporation.

G.    **Employee** shall mean an individual who is in the employ of the Corporation, subject to the control and direction of the employer entity as to both the work to be performed and the manner and method of performance.

H.    **Exercise Date** shall mean the date on which the option shall have been exercised in accordance with Paragraph 9 of the Agreement.

I.    **Exercise Price** shall mean the exercise price per share as specified in the Grant Notice.

J.    **Expiration Date** shall mean the date on which the option expires as specified in the Grant Notice.

K.    **Fair Market Value** per share of Common Stock on any relevant date shall be determined by the Board.

L.    **Grant Date** shall mean the date of grant of the option as specified in the Grant Notice.

M.    **Grant Notice** shall mean the Notice of Grant of Stock Option accompanying the Agreement, pursuant to which Optionee has been informed of the basic terms of the option evidenced hereby.

N.    **Incentive Option** shall mean an option which satisfies the requirements of Code Section 422.

O.    **Misconduct** shall mean the commission of any act of fraud, embezzlement or dishonesty by Optionee, any unauthorized use or disclosure by Optionee of confidential information or trade secrets of the Corporation, or any other intentional misconduct by Optionee adversely affecting the business or affairs of the Corporation in a material manner. The foregoing definition shall not be deemed to be inclusive of all the acts or omissions which the Corporation may consider as grounds for the dismissal or discharge of Optionee or any other individual in the Service of the Corporation.

P.    **Non-Statutory Option** shall mean an option not intended to satisfy the requirements of Code Section 422.

Q.    **Notice of Exercise** shall mean the notice of exercise in the form attached hereto as Exhibit I.

R.    **Option Shares** shall mean the number of shares of Common Stock subject to the option as specified in the Grant Notice.

M0093

S.     **Optionee** shall mean the person to whom the option is granted as specified in the Grant Notice.

T.     **Parent** shall mean any corporation (other than the Corporation) in an unbroken chain of corporations ending with the Corporation, provided each corporation in the unbroken chain (other than the Corporation) owns, at the time of the determination, stock possessing fifty percent (50%) or more of the total combined voting power of all classes of stock in one of the other corporations in such chain.

U.     **Permanent Disability** shall mean the inability of Optionee to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which is expected to result in death or has lasted or can be expected to last for a continuous period of twelve (12) months or more.

V.     **Plan** shall mean the Corporation's 2000 Stock Incentive Plan.

W.     **Plan Administrator** shall mean either the Board or a committee of Board members, to the extent the committee is at the time responsible for the administration of the Plan.

X.     **Service** shall mean the Optionee's performance of services for the Corporation (or any Parent or Subsidiary) in the capacity of an Employee, a non-employee member of the board of directors or a consultant or independent advisor.

Y.     **Subsidiary** shall mean any corporation (other than the Corporation) in an unbroken chain of corporations beginning with the Corporation, provided each corporation (other than the last corporation) in the unbroken chain owns, at the time of the determination, stock possessing fifty percent (50%) or more of the total combined voting power of all classes of stock in one of the other corporations in such chain.

M0094

Exhibit C

# Trial Exhibit D

*Confirmation of Exercise*

**Network Appliance, Inc.**
ID: 77-0307520
495 East Java Drive
Sunnyvale, CA 94089

---

**Brian D Mehlman**
**25 Hazel Avenue**
**Nashua, NH 03062**

**Same-Day Sale**

---

| | | | |
|---|---|---|---|
| Option Number | 007215 | Date of Exercise | 9/14/04 |
| Option Date | 3/20/01 | Shares Exercised | 812 |
| Option Type | NQ | Market Value per Share | $22.7600 |
| Plan | 99 | Option Price per Share | $18.6250 |
| | | Sale Price per Share | $22.6700 |

---

**Calculation of Gain**

| | | **Calculation of Taxes** | | |
|---|---|---|---|---|
| | | | Rate % | Amount |
| Market Value (Shares Issued) | $ .00 | Federal | 25.00 | $ 821.14 |
| Sale Price (Shares Sold) | $18,408.04 | NH-State | 0.00 | $ .00 |
| Option Price | $(15,123.50) | Social Security | 6.20 | $ 203.64 |
| | | Medicare | 1.45 | $ 47.63 |
| Total Gain | $3,284.54 | | | |
| W-2 Income | $3,284.54 | Total Tax | | $1,072.41 |

**Stock Distribution**

| | |
|---|---|
| Shares Sold | 812 |
| Shares Issued | 0 |

**Cash Distribution**

| | | **Funds Required** | |
|---|---|---|---|
| Total Sale Price | $18,408.04 | Total Option Price | $15,123.50 |
| Total Due Company | $(16,195.91) | Total Tax | $1,072.41 |
| Total Due Optionee | $2,212.13 | Total Due Company | $16,195.91 |

---

**Transfer Agent Instructions**

**Registration:**
SalomonSmith Barney, DTC 0418
The Daniels Group
FBO Brian D Mehlman

**Accounting Use Only:**
Option Price Received: _____
Source: _____ _____

Tax Withholding Received:_____
Source: _____ _____

| | |
|---|---|
| Account Number: | 740-52841-13 |
| Deliver: | DWAC |
| Control Number: | 091404-2 |
| Confirm Date: | 9/15/04 |

**CONFIDENTIAL**

NetApp 000027

**Network Appliance, Inc.**
ID: 77-0307520
495 East Java Drive
Sunnyvale, CA 94089

*Confirmation of Exercise*

| Brian D Mehlman | Same-Day Sale |
| --- | --- |
| 25 Hazel Avenue | |
| Nashua, NH 03062 | |

| Option Number | 019104 | Date of Exercise | 9/14/04 |
| --- | --- | --- | --- |
| Option Date | 2/07/02 | Shares Exercised | 583 |
| Option Type | NQ | Market Value per Share | $22.7600 |
| Plan | 99 | Option Price per Share | $15.3200 |
| | | Sale Price per Share | $22.6700 |

**Calculation of Gain**

**Calculation of Taxes**

| | | | Rate % | Amount |
| --- | --- | --- | --- | --- |
| Market Value (Shares Issued) | $    .00 | Federal | 25.00 | $1,071.26 |
| Sale Price (Shares Sold) | $13,216.61 | NH-State | 0.00 | $    .00 |
| Option Price | $(8,931.56) | Social Security | 6.20 | $ 265.67 |
| | | Medicare | 1.45 | $ 62.13 |
| Total Gain | $4,285.05 | | | |
| W-2 Income | $4,285.05 | Total Tax | | $1,399.06 |

**Stock Distribution**

| Shares Sold | 583 |
| --- | --- |
| Shares Issued | 0 |

**Cash Distribution**

**Funds Required**

| Total Sale Price | $13,216.61 | Total Option Price | $8,931.56 |
| --- | --- | --- | --- |
| Total Due Company | $(10,330.62) | Total Tax | $1,399.06 |
| Total Due Optionee | $2,885.99 | Total Due Company | $10,330.62 |

**Transfer Agent Instructions**

**Registration:**

SalomonSmith Barney, DTC 0418
The Daniels Group
FBO Brian D Mehlman

**Accounting Use Only:**

Option Price Received: _____
Source: _____

Tax Withholding Received:_____
Source: _____

| Account Number: | 740-52841-13 |
| --- | --- |
| Deliver: | DWAC |
| Control Number: | 091404-2 |
| Confirm Date: | 9/15/04 |

**CONFIDENTIAL**

NetApp 000028

*Confirmation of Exercise*

**Network Appliance, Inc.**
ID: 77-0307520
495 East Java Drive
Sunnyvale, CA 94089

**Brian D Mehlman**
**25 Hazel Avenue**
**Nashua, NH 03062**

**Same-Day Sale**

| | | |
|---|---|---|
| Option Number | 020479 | |
| Option Date | 3/04/02 | |
| Option Type | NQ | |
| Plan | 99 | |

| | |
|---|---|
| Date of Exercise | 9/28/04 |
| Shares Exercised | 562 |
| Market Value per Share | $22.2600 |
| Option Price per Share | $20.5200 |
| Sale Price per Share | $22.0200 |

**Calculation of Gain**

| | |
|---|---|
| Market Value (Shares Issued) | $ .00 |
| Sale Price (Shares Sold) | $12,375.24 |
| Option Price | $(11,532.24) |
| Total Gain | $ 843.00 |
| W-2 Income | $ 843.00 |

**Calculation of Taxes**

| | Rate % | Amount |
|---|---|---|
| Federal | 25.00 | $ 210.75 |
| NH-State | 0.00 | $ .00 |
| Social Security | 6.20 | $ 52.27 |
| Medicare | 1.45 | $ 12.22 |
| Total Tax | | $ 275.24 |

**Stock Distribution**

| | |
|---|---|
| Shares Sold | 562 |
| Shares Issued | 0 |

**Cash Distribution**

| | |
|---|---|
| Total Sale Price | $12,375.24 |
| Total Due Company | $(11,807.48) |
| Total Due Optionee | $ 567.76 |

**Funds Required**

| | |
|---|---|
| Total Option Price | $11,532.24 |
| Total Tax | $ 275.24 |
| Total Due Company | $11,807.48 |

**Transfer Agent Instructions**

**Registration:**
SalomonSmith Barney, DTC 0418
The Daniels Group
FBO Brian D Mehlman

**Accounting Use Only:**
Option Price Received: _____
Source: _____

Tax Withholding Received:_____
Source: _____

| | |
|---|---|
| Account Number: | 740-52841-13 |
| Deliver: | DWAC |
| Control Number: | 092804-2 |
| Confirm Date: | 9/29/04 |

**CONFIDENTIAL**

NetApp 000029

*Confirmation of Exercise*

**Network Appliance, Inc.**
ID: 77-0307520
495 East Java Drive
Sunnyvale, CA 94089

**Brian D Mehlman**
**25 Hazel Avenue**
**Nashua, NH 03062**

**Same-Day Sale**

| | | | |
|---|---|---|---|
| Option Number | 021557 | Date of Exercise | 9/28/04 |
| Option Date | 4/01/02 | Shares Exercised | 562 |
| Option Type | NQ | Market Value per Share | $22.2600 |
| Plan | 99 | Option Price per Share | $21.0100 |
| | | Sale Price per Share | $22.0200 |

**Calculation of Gain**

| | |
|---|---|
| Market Value (Shares Issued) | $   .00 |
| Sale Price (Shares Sold) | $12,375.24 |
| Option Price | $(11,807.62) |
| Total Gain | $ 567.62 |
| W-2 Income | $ 567.62 |

**Calculation of Taxes**

| | Rate % | Amount |
|---|---|---|
| Federal | 25.00 | $ 141.91 |
| NH-State | 0.00 | $   .00 |
| Social Security | 6.20 | $ 35.19 |
| Medicare | 1.45 | $ 8.23 |
| Total Tax | | $ 185.33 |

**Stock Distribution**

| | |
|---|---|
| Shares Sold | 562 |
| Shares Issued | 0 |

**Cash Distribution**

| | |
|---|---|
| Total Sale Price | $12,375.24 |
| Total Due Company | $(11,992.95) |
| Total Due Optionee | $ 382.29 |

**Funds Required**

| | |
|---|---|
| Total Option Price | $11,807.62 |
| Total Tax | $ 185.33 |
| Total Due Company | $11,992.95 |

**Transfer Agent Instructions**

**Registration:**
SalomonSmith Barney, DTC 0418
The Daniels Group
FBO Brian D Mehlman

| | |
|---|---|
| Account Number: | 740-52841-13 |
| Deliver: | DWAC |
| Control Number: | 092804-2 |
| Confirm Date: | 9/29/04 |

**Accounting Use Only:**
Option Price Received: _____
Source: _____

Tax Withholding Received:_____
Source: _____

**CONFIDENTIAL**

NetApp 000030

**Network Appliance, Inc.**
ID: 77-0307520
495 East Java Drive
Sunnyvale, CA 94089

*Confirmation of Exercise*

Brian D Mehlman
25 Hazel Avenue
Nashua, NH 03062

**Same-Day Sale**

| | | | |
|---|---|---|---|
| Option Number | 009371 | Date of Exercise | 9/30/04 |
| Option Date | 4/19/01 | Shares Exercised | 791 |
| Option Type | NQ | Market Value per Share | $23.0500 |
| Plan | 99 | Option Price per Share | $22.3000 |
| | | Sale Price per Share | $22.9900 |

**Calculation of Gain**

| | |
|---|---|
| Market Value (Shares Issued) | $ .00 |
| Sale Price (Shares Sold) | $18,185.09 |
| Option Price | $(17,639.30) |
| Total Gain | $ 545.79 |
| W-2 Income | $ 545.79 |

**Calculation of Taxes**

| | Rate % | Amount |
|---|---|---|
| Federal | 25.00 | $ 136.45 |
| NH-State | 0.00 | $ .00 |
| Social Security | 6.20 | $ 33.84 |
| Medicare | 1.45 | $ 7.91 |
| Total Tax | | $ 178.20 |

**Stock Distribution**

| | |
|---|---|
| Shares Sold | 791 |
| Shares Issued | 0 |

**Cash Distribution**

| | |
|---|---|
| Total Sale Price | $18,185.09 |
| Total Due Company | $(17,817.50) |
| Total Due Optionee | $ 367.59 |

**Funds Required**

| | |
|---|---|
| Total Option Price | $17,639.30 |
| Total Tax | $ 178.20 |
| Total Due Company | $17,817.50 |

**Transfer Agent Instructions**

**Registration:**
SalomonSmith Barney, DTC 0418
The Daniels Group
FBO Brian D Mehlman

| | |
|---|---|
| Account Number: | 740-52841-13 |
| Deliver: | DWAC |
| Control Number: | 093004-2 |
| Confirm Date: | 10/01/04 |

**Accounting Use Only:**
Option Price Received: _____
Source: _____

Tax Withholding Received: _____
Source: _____

CONFIDENTIAL

**Confirmation of Exercise**

**Network Appliance, Inc.**
ID: 77-0307520
495 East Java Drive
Sunnyvale, CA 94089

| | | |
|---|---|---|
| Brian D Mehlman<br>25 Hazel Avenue<br>Nashua, NH 03062 | | **Same-Day Sale** |

| | | | |
|---|---|---|---|
| Option Number | 011482 | Date of Exercise | 10/01/04 |
| Option Date | 5/18/01 | Shares Exercised | 770 |
| Option Type | NQ | Market Value per Share | $24.2700 |
| Plan | 99 | Option Price per Share | $22.9400 |
| | | Sale Price per Share | $23.9000 |

**Calculation of Gain**

**Calculation of Taxes**

| | | | Rate % | Amount |
|---|---|---|---|---|
| Market Value (Shares Issued) | $ .00 | Federal | 25.00 | $ 184.80 |
| Sale Price (Shares Sold) | $18,403.00 | NH-State | 0.00 | $ .00 |
| Option Price | $(17,663.80) | Social Security | 6.20 | $ 45.83 |
| | | Medicare | 1.45 | $ 10.72 |
| Total Gain | $ 739.20 | | | |
| W-2 Income | $ 739.20 | Total Tax | | $ 241.35 |

**Stock Distribution**

| | |
|---|---|
| Shares Sold | 770 |
| Shares Issued | 0 |

**Cash Distribution**

**Funds Required**

| | | | |
|---|---|---|---|
| Total Sale Price | $18,403.00 | Total Option Price | $17,663.80 |
| Total Due Company | $(17,905.15) | Total Tax | $ 241.35 |
| Total Due Optionee | $ 497.85 | Total Due Company | $17,905.15 |

**Transfer Agent Instructions**

**Registration:**

SalomonSmith Barney, DTC 0418
The Daniels Group
FBO Brian D Mehlman

**Accounting Use Only:**

Option Price Received: _____
Source: _____

Tax Withholding Received: _____
Source: _____

| | |
|---|---|
| Account Number: | 740-52841-13 |
| Deliver: | DWAC |
| Control Number: | 100104-1 |
| Confirm Date: | 10/04/04 |

**CONFIDENTIAL**

# Trial Exhibit E

## NETWORK APPLIANCE, INC.
## NOTICE OF GRANT OF STOCK OPTION

Notice is hereby given of the following option grant (the "Option") to purchase shares of the Common Stock of Network Appliance, Inc. (the "Corporation"):

Optionee:

Brian D Mehlman
25 Hazel Avenue
Nashua, NH 03062

Grant Number: 007215

Grant Date: March 20, 2001

Vesting Commencement Date: March 20, 2001

Exercise Price: $18.6250 per share

Number of Option Shares: 1,000 shares

Expiration Date: March 19, 2011

Type of Option: Non-Qualified Stock Option

Exercise Schedule:

*125 shares* become exercisable on September 20, 2001;

*875 shares* become exercisable in successive equal monthly installments upon Optionee's completion of each month of Service through March 20, 2005;

In no event shall the Option become exercisable for any additional Option Shares after Optionee's cessation of Service.

Optionee understands and agrees that the Option is granted subject to and in accordance with the terms of the Network Appliance, Inc. 1999 Stock Option Plan (the "Plan"). A copy of the Plan is available upon request made to the Corporate Secretary at the Corporation's principal offices.

Optionee further agrees to be bound by the terms of the Plan and the terms of the Option as set forth in the Stock Option Agreement, which is available and appears as "1999 Plan Stock Option Agreement" on the Corporation's internal web site at http://web.netapp.com/stock/. Optionee hereby acknowledges that the official prospectus for the Plan, which appears as "1999 Plan Summary and Prospectus" is available on the Corporation's internal web site at http://web.netapp.com/stock/ and that the Stock Option Agreement and the Plan Summary and Prospectus are made a part of this Notice of Grant of Stock Option.

No Employment or Service Contract. Nothing in this Notice or in the Stock Option Agreement or in the Plan shall confer upon Optionee any right to continue in Service for any period of specific duration or interfere with or otherwise restrict in any way the rights of the Corporation (or any Parent or Subsidiary employing or retaining Optionee) or of Optionee, which rights are hereby expressly reserved by each, to terminate Optionee's Service at any time for any reason, with or without cause.

Definitions. All capitalized terms in this Notice shall have the meaning assigned to them in this Notice or in the Stock Option Agreement.

April       12 , 2001
_____
Date

NETWORK APPLIANCE, INC.

By: _____

Title: Senior Vice President, Human Resources

By: _____

Optionee: Brian D Mehlman

**CONFIDENTIAL**

NetApp 000011

## NETWORK APPLIANCE, INC.
## NOTICE OF GRANT OF STOCK OPTION

Notice is hereby given of the following option grant (the "Option") to purchase shares of the Common Stock of Network Appliance. Inc. (the "Corporation"):

Optionee:

Brian D Mehlman
25 Hazel Avenue
Nashua, NH 03062

Grant Number: 009371

Grant Date: April 19, 2001

Vesting Commencement Date: April 19, 2001

Exercise Price: $22.30 per share

Number of Option Shares: 1,000 shares

Expiration Date: April 18, 2011

Type of Option: Non-Qualified Stock Option

Exercise Schedule:

> *125 shares* become exercisable on October 19, 2001;
>
> *875 shares* become exercisable in successive equal monthly installments upon Optionee's completion of each month of Service through April 19, 2005:

In no event shall the Option become exercisable for any additional Option Shares after Optionee's cessation of Service.

Optionee understands and agrees that the Option is granted subject to and in accordance with the terms of the Network Appliance, Inc. 1999 Stock Option Plan (the "Plan"). A copy of the Plan is available upon request made to the Corporate Secretary at the Corporation's principal offices.

Optionee further agrees to be bound by the terms of the Plan and the terms of the Option as set forth in the Stock Option Agreement, which is available and appears as "1999 Plan Stock Option Agreement" on the Corporation's internal web site at http://web.netapp.com/stock/. Optionee hereby acknowledges that the official prospectus for the Plan, which appears as "1999 Plan Summary and Prospectus" is available on the Corporation's internal web site at http://finance-web.netapp.com/stock/options.html and that the Stock Option Agreement and the Plan Summary and Prospectus are made a part of this Notice of Grant of Stock Option.

No Employment or Service Contract. Nothing in this Notice or in the Stock Option Agreement or in the Plan shall confer upon Optionee any right to continue in Service for any period of specific duration or interfere with or otherwise restrict in any way the rights of the Corporation (or any Parent or Subsidiary employing or retaining Optionee) or of Optionee, which rights are hereby expressly reserved by each, to terminate Optionee's Service at any time for any reason, with or without cause.

Definitions. All capitalized terms in this Notice shall have the meaning assigned to them in this Notice or in the Stock Option Agreement.

_____ ___, 2001
Date

NETWORK APPLIANCE, INC.

By: _____

Title: Senior Vice President, Human Resources

By: _____
Optionee: Brian D Mehlman

**CONFIDENTIAL**

NetApp 000012

# NETWORK APPLIANCE, INC.
## NOTICE OF GRANT OF STOCK OPTION

Notice is hereby given of the following option grant (the "Option") to purchase shares of the Common Stock of Network Appliance, Inc. (the "Corporation"):

Optionee:

Brian D Mehlman
25 Hazel Avenue
Nashua, NH 03062

Grant Number: 011482
Grant Date: May 18, 2001
Vesting Commencement Date: May 18, 2001
Exercise Price: $22.94 per share
Number of Option Shares: 1,000 shares
Expiration Date: May 17, 2011
Type of Option: Non-Qualified Stock Option
Exercise Schedule:

*125 shares* become exercisable on November 18, 2001;

*875 shares* become exercisable in successive equal monthly installments upon Optionee's completion of each month of Service through May 18, 2005;

In no event shall the Option become exercisable for any additional Option Shares after Optionee's cessation of Service.

Optionee understands and agrees that the Option is granted subject to and in accordance with the terms of the Network Appliance, Inc. 1999 Stock Option Plan (the "Plan"). A copy of the Plan is available upon request made to the Corporate Secretary at the Corporation's principal offices.

Optionee further agrees to be bound by the terms of the Plan and the terms of the Option as set forth in the Stock Option Agreement, which is available and appears as "1999 Plan Stock Option Agreement" on the Corporation's internal web site at http://web.netapp.com/stock/. Optionee hereby acknowledges that the official prospectus for the Plan, which appears as "1999 Plan Summary and Prospectus" is available on the Corporation's internal web site at http://finance-web.netapp.com/stock/options.html and that the Stock Option Agreement and the Plan Summary and Prospectus are made a part of this Notice of Grant of Stock Option.

No Employment or Service Contract. Nothing in this Notice or in the Stock Option Agreement or in the Plan shall confer upon Optionee any right to continue in Service for any period of specific duration or interfere with or otherwise restrict in any way the rights of the Corporation (or any Parent or Subsidiary employing or retaining Optionee) or of Optionee, which rights are hereby expressly reserved by each, to terminate Optionee's Service at any time for any reason, with or without cause.

Definitions. All capitalized terms in this Notice shall have the meaning assigned to them in this Notice or in the Stock Option Agreement.

6/ 11 _____, 2001
_____
Date

NETWORK APPLIANCE, INC.

By: _Chris Causton_
_____
Title: Senior Vice President, Human Resources

By: _Brian Mehlman_
_____
Optionee: Brian D Mehlman

**CONFIDENTIAL**

NetApp 000013

**NETWORK APPLIANCE, INC.**
**NOTICE OF GRANT OF STOCK OPTION**

Notice is hereby given of the following option grant (the "Option") to purchase shares of the Common Stock of Network Appliance, Inc. (the "Corporation"):

Optionee:

BRIAN D MEHLMAN
25 HAZEL AVENUE
NASHUA, NH 03062

Grant Number: 019104

Grant Date: February 7, 2002

Vesting Commencement Date: February 7, 2002

Exercise Price: $15.32 per share

Number of Option Shares: 1,000 shares

Expiration Date: February 6, 2012

Type of Option: Non-Qualified Stock Option

Exercise Schedule:

> 250 shares become exercisable on February 7, 2003
>
> 750 shares become exercisable in successive equal monthly installments upon Optionee's completion of each month of Service through February 7, 2006

In no event shall the Option become exercisable for any additional Option Shares after Optionee's cessation of Service.

Optionee understands and agrees that the Option is granted subject to and in accordance with the terms of the Network Appliance, Inc. 1999 Stock Option Plan (the "Plan"). A copy of the Plan is available upon request made to the Corporate Secretary at the Corporation's principal offices.

Optionee further agrees to be bound by the terms of the Plan and the terms of the Option as set forth in the Stock Option Agreement, which is available and appears as "1999 Plan Stock Option Agreement" on the Corporation's internal web site at http://web.netapp.com/stock/. Optionee hereby acknowledges that the official prospectus for the Plan, which appears as "1999 Plan Summary and Prospectus" is available on the Corporation's internal web site at http://finance-web.netapp.com/stock/options.html and that the Stock Option Agreement and the Plan Summary and Prospectus are made a part of this Notice of Grant of Stock Option.

No Employment or Service Contract. Nothing in this Notice or in the Stock Option Agreement or in the Plan shall confer upon Optionee any right to continue in Service for any period of specific duration or interfere with or otherwise restrict in any way the rights of the Corporation (or any Parent or Subsidiary employing or retaining Optionee) or of Optionee, which rights are hereby expressly reserved by each, to terminate Optionee's Service at any time for any reason, with or without cause.

Definitions. All capitalized terms in this Notice shall have the meaning assigned to them in this Notice or in the Stock Option Agreement.

2 | 9 _____, 200 2
Date

NETWORK APPLIANCE, INC.

By: _____

Title: Senior Vice President, Human Resources

By: _____

Optionee: BRIAN D MEHLMAN

**CONFIDENTIAL**

**NETWORK APPLIANCE, INC.**
**NOTICE OF GRANT OF STOCK OPTION**

Notice is hereby given of the following option grant (the "Option") to purchase shares of the Common Stock of Network Appliance, Inc. (the "Corporation"):

Optionee:

BRIAN D MEHLMAN
25 HAZEL AVENUE
NASHUA, NH 03062

Grant Number: 020479

Grant Date: March 4, 2002

Vesting Commencement Date: March 4, 2002

Exercise Price: $20.52 per share

Number of Option Shares: 1,000 shares

Expiration Date: March 3, 2012

Type of Option: Non-Qualified Stock Option

Exercise Schedule:

250 shares become exercisable on March 4, 2003

750 shares become exercisable in successive equal monthly installments upon Optionee's completion of each month of Service through March 4, 2006

In no event shall the Option become exercisable for any additional Option Shares after Optionee's cessation of Service.

Optionee understands and agrees that the Option is granted subject to and in accordance with the terms of the Network Appliance, Inc. 1999 Stock Option Plan (the "Plan"). A copy of the Plan is available upon request made to the Corporate Secretary at the Corporation's principal offices.

Optionee further agrees to be bound by the terms of the Plan and the terms of the Option as set forth in the Stock Option Agreement, which is available and appears as "1999 Plan Stock Option Agreement" on the Corporation's internal web site at http://web.netapp.com/stock/. Optionee hereby acknowledges that the official prospectus for the Plan, which appears as "1999 Plan Summary and Prospectus" is available on the Corporation's internal web site at http://finance-web.netapp.com/stock/options.html and that the Stock Option Agreement and the Plan Summary and Prospectus are made a part of this Notice of Grant of Stock Option.

No Employment or Service Contract. Nothing in this Notice or in the Stock Option Agreement or in the Plan shall confer upon Optionee any right to continue in Service for any period of specific duration or interfere with or otherwise restrict in any way the rights of the Corporation (or any Parent or Subsidiary employing or retaining Optionee) or of Optionee, which rights are hereby expressly reserved by each, to terminate Optionee's Service at any time for any reason, with or without cause.

Definitions. All capitalized terms in this Notice shall have the meaning assigned to them in this Notice or in the Stock Option Agreement.

<u>4     1</u>, 2002
Date

NETWORK APPLIANCE, INC.

By: _____
Title: Senior Vice President, Human Resources

By: _____
Optionee: BRIAN D MEHLMAN

**CONFIDENTIAL**

**NETWORK APPLIANCE, INC.**
**NOTICE OF GRANT OF STOCK OPTION**

Notice is hereby given of the following option grant (the "Option") to purchase shares of the Common Stock of Network Appliance, Inc. (the "Corporation"):

Optionee:

BRIAN D MEHLMAN
25 HAZEL AVENUE
NASHUA, NH 03062

Grant Number: 021557

Grant Date: April 1, 2002

Vesting Commencement Date: April 1, 2002

Exercise Price: $21.01 per share

Number of Option Shares: 1,000 shares

Expiration Date: March 31, 2012

Type of Option: Non-Qualified Stock Option

Exercise Schedule:

250 shares become exercisable on April 1, 2003

750 shares become exercisable in successive equal monthly installments upon Optionee's completion of each month of Service through April 1, 2006

In no event shall the Option become exercisable for any additional Option Shares after Optionee's cessation of Service.

Optionee understands and agrees that the Option is granted subject to and in accordance with the terms of the Network Appliance, Inc. 1999 Stock Option Plan (the "Plan"). A copy of the Plan is available upon request made to the Corporate Secretary at the Corporation's principal offices.

Optionee further agrees to be bound by the terms of the Plan and the terms of the Option as set forth in the Stock Option Agreement, which is available and appears as "1999 Plan Stock Option Agreement" on the Corporation's internal web site at http://web.netapp.com/stock/. Optionee hereby acknowledges that the official prospectus for the Plan, which appears as "1999 Plan Summary and Prospectus" is available on the Corporation's internal web site at http://finance-web.netapp.com/stock/options.html and that the Stock Option Agreement and the Plan Summary and Prospectus are made a part of this Notice of Grant of Stock Option.

No Employment or Service Contract. Nothing in this Notice or in the Stock Option Agreement or in the Plan shall confer upon Optionee any right to continue in Service for any period of specific duration or interfere with or otherwise restrict in any way the rights of the Corporation (or any Parent or Subsidiary employing or retaining Optionee) or of Optionee, which rights are hereby expressly reserved by each, to terminate Optionee's Service at any time for any reason, with or without cause.

Definitions. All capitalized terms in this Notice shall have the meaning assigned to them in this Notice or in the Stock Option Agreement.

5/1        , 200 2
Date

NETWORK APPLIANCE, INC.

By: _Chris Cancton_

Title: Senior Vice President, Human Resources

By: _Brian Mel_

OPTIONEE: BRIAN D MEHLMAN

**CONFIDENTIAL**

NetApp 000016

# Trial Exhibit F

# NetApp®

## Notice of Separation

| Company:<br>☒ NetApp ☐ NetFed | Name:<br>Brian Mehlman | Employee Id:<br>2630 | Dept Id:<br>4991 |
|---|---|---|---|
| Manager:<br>Narayan Venkat | Last Day Worked:<br>7/2/04 | | Separation Date:<br>7/2/04 |

**Reason for Leaving:**

☒ Resignation
    Advanced notice given? ☒ yes ☐ no

☒ Retirement

☒ Returning to School

☐ Other -

☒ Termination
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

☒ Other - Explain
▓▓▓▓

**Additional Comments/Explanation/Instructions:** ▓▓▓▓

**For Human Resources and Payroll only:**

Exit Interview Date: ▓▓▓▓

Final Paycheck: ☒ Picked up by HR ☒ FedEx to home - Home address verified? ☒ yes ☒ no

Is there a Severance Agreement: ☒ yes ☒ no
If yes, how much $ ▓▓▓

Are there additional months of COBRA to be paid by NetApp? ☒ yes ☒ no   If yes, how many? ▓ months

### Required Signatures

| Employee ▓▓▓ | Date ▓▓▓ |
|---|---|
| Manager ▓▓▓ | Date ▓▓▓ |
| Human Resources *(signature)* | Date 6/28/04 |

Email to HR Ops team and dl-payroll

Company Confidential

**CONFIDENTIAL**

Rev Feb 2004

**NetApp 000062**

# Employee Information as of 7/21/03

## Personal Data

Emp ID                          002630

Name                            Mehlman,Brian

Address                         25 Hazel Avenue
City                            Nashua
State                           NH
Postal                          03062
Country                         USA
Home phone                      603/883-8851

## Job Data

Job Code                        MPM410
Job Code Title                  Manager Product Marketing 1
Grade                           10

Annual Salary                   110,500.00
Currency                        USD
Bonus %                         10.00
Target Commission               0

Eff Date of Salary              2003-06-30
Last Inc Amt                    4,500.00

## Employment Data

Original Hire Date              2000-11-15        **Rehire Date:**

Dept ID                         010-4911
Dept Name                       Product Mgmt - S/W

Manager                         Venkateswaran,Narayanan

Full/Part time                  Full-Time

Std Hours                       40.00

Last Review Rating              3

Business Card Title             Product Marketing Manager

**CONFIDENTIAL**

**NetApp 000063**

# Employee Information as of 7/29/02

**<u>Personal Data</u>**

Emp ID                           002630

Name                            Mehlman,Brian

Address                         25 Hazel Avenue
City                               Nashua
State                             NH
Postal                           03062
Country                        USA
Home phone                 603/883-8851

**<u>Job Data</u>**

Job Code                       MPM410
Job Code Title               Manager Product Marketing 1
Grade                          10

Annual Salary               106,000.00
Currency                      USD
Bonus %                       10.00
Target Commission        0

Eff Date of Salary         2002-07-01
Last Inc Amt                 6,000.00

**<u>Employment Data</u>**

Hire Date                      2000-11-15

Dept ID                        10630
Dept Name                    CDBU Product Marketing

Manager                       Edwin Chow

Full/Part time               Full-Time

Std Hours                     40.00

Last Review Rating         2

Business Card Title         Product Marketing Manager

**CONFIDENTIAL**

**NetApp 000064**

## Employee Information as of **4/4/02**

### Personal Data

| | |
|---|---|
| Emp ID | 002630 |
| Name | Brian Mehlman |
| Address | 25 Hazel Avenue |
| City | Nashua |
| State | NH |
| Postal | 03062 |
| Country | USA |
| Home Phone | 603/883-8851 |

### Job Data

| | |
|---|---|
| Job Code | MPM410 |
| Job Code Title | Manager Product Marketing 1 |
| Grade | 10 |
| Annual Salary | 100,000.00 |
| Currency | USD |
| Bonus % | 10.00 |
| Target Commission | 0 |
| Eff Date of Salary | 2000-11-15 |
| Last Inc Amt | 0.00 |

### Employment Data

| | |
|---|---|
| Hire Date | 2000-11-15 |
| Dept ID | 10630 |
| Dept Name | CDBU Product Marketing |
| Manager | Edwin Chow |
| Full/Part time | Full-Time |
| Std Hours | 40.00 |
| Last Review Rating | S |
| Business Card Title | Product Marketing Manager |

**CONFIDENTIAL**

**NetApp 000065**

# Trial Exhibit G

**From:**       Mahoney, Janice [Janice.Mahoney@netapp.com]
**Sent:**       Thursday, March 07, 2002 1:55 PM
**To:**         Mehlman, Brian
**Subject:**    RE: Stock option vesting report

**Attachments:**    mehlman.rtf



mehlman.rtf (16 KB)

            Hi,
Attached is a summary of your option status.  Please let me know if you have any questions
or need any other information.

Regards,
Jan
 <<mehlman.rtf>>


> -----Original Message-----
> From:    Mehlman, Brian
> Sent:    Thursday, March 07, 2002 1:09 PM
> To: Mahoney, Janice
> Subject:  Stock option vesting report
>
> Janice,
> Can I get a report of options I have vested?
> Thanks in advance,
> ----------------------------------------------------------------
> -----------------
> Brian Mehlman
> Product Manager
> (Desk)   978-863-2229
> (Cell)    603-860-9291
> (Email) bmehlman@netapp.com <mailto:bmehlman@netapp.com>
> ----------------------------------------------------------------
> -----------------
>

CONFIDENTIAL

NetApp 000267

# Personnel Option Status

**Network Appliance, Inc.**
ID: 77-0307520
495 East Java Drive
Sunnyvale, CA 94089

Page: 1
File:  Optstmt
Date:  3/7/02
Time:  1:53:23 PM

AS OF 3/7/02

**Brian D Mehlman**
25 Hazel Avenue
Nashua, NH UNITED STATES 03062

ID:  2630

| Number | Option Date | Plan | Type | Granted | Price | Exercised | Vested | Cancelled | Unvested | Outstanding | Exercisable |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 005439 | 11/15/00 | WM99 | ISO | 635 | $19.670 | | 0 | | 0 | 318 | 317 |
| 005494 | 11/15/00 | WM99 | ISO | 3,178 | $9.840 | | 0 | | 0 | 0 | 3,178 |
| 005532 | 11/15/00 | WM00 | NQ | 3,792 | $33.820 | | 0 | | 0 | 2,607 | 1,185 |
| 007215 | 3/20/01 | 99 | NQ | 1,000 | $18.625 | | 0 | | 0 | 771 | 229 |
| 009371 | 4/19/01 | 99 | NQ | 1,000 | $22.300 | | 0 | | 0 | 792 | 208 |
| 011482 | 5/18/01 | 99 | NQ | 1,000 | $22.940 | | 0 | | 0 | 813 | 187 |
| 019104 | 2/7/02 | 99 | NQ | 1,000 | $15.320 | | 0 | | 0 | 1,000 | 0 |
| 020479 | 3/4/02 | 99 | NQ | 1,000 | $20.520 | | 0 | | 0 | 1,000 | 0 |
| | | | | 12,605 | | | 0 | 5,304 | 0 | 7,301 | 5,304 |

| Number | Option Date | Plan | Type | Granted | Price | Exercised | Vested | Cancelled | Unvested | Outstanding | Exercisable |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 005439 | 11/15/00 | WM99 | ISO | 635 | $19.670 | | 317 | 0 | 0 | 318 | 317 |
| 005494 | 11/15/00 | WM99 | ISO | 3,178 | $9.840 | | 3,178 | 0 | 0 | 0 | 3,178 |
| 005532 | 11/15/00 | WM00 | NQ | 3,792 | $33.820 | | 1,185 | 0 | 0 | 2,607 | 1,185 |
| 007215 | 3/20/01 | 99 | NQ | 1,000 | $18.625 | | 229 | 0 | 0 | 771 | 229 |
| 009371 | 4/19/01 | 99 | NQ | 1,000 | $22.300 | | 208 | 0 | 0 | 792 | 208 |
| 011482 | 5/18/01 | 99 | NQ | 1,000 | $22.940 | | 187 | 0 | 0 | 813 | 187 |
| 019104 | 2/7/02 | 99 | NQ | 1,000 | $15.320 | | 0 | 0 | 0 | 1,000 | 0 |
| 020479 | 3/4/02 | 99 | NQ | 1,000 | $20.520 | | 0 | 0 | 0 | 1,000 | 0 |
| | | | | 12,605 | | | 5,304 | | 0 | 7,301 | 5,304 |

**Registration**

**Broker**

SalomonSmith Barney, DTC 0418
The Daniels Group

**Alternate Address**

**Information Currently on File**

| Tax | Rate % |
|---|---|
| Federal | 27.000 |
| NH-State | 0.000 |
| Social Security | 6.200 |
| Medicare | 1.450 |

**CONFIDENTIAL**

NetApp 000268

# Trial Exhibit H

| | |
|---|---|
| **From:** | Mahoney, Janice [Janice.Mahoney@netapp.com] |
| **Sent:** | Thursday, March 07, 2002 5:59 PM |
| **To:** | Mehlman, Brian |
| **Subject:** | RE: Stock option vesting report |

Hi,
That option has a 3 year vesting schedule--with semi-annual vesting dates.  The vesting
dates are March 17 and Sept 17--so 106 additional shares will be vesting on the 17th.  The
option will be fully vested on March 17, 2003.

Please let me know if you have any other questions.

Regards,
Jan

> -----Original Message-----
> From:     Mehlman, Brian
> Sent:     Thursday, March 07, 2002 3:23 PM
> To: Mahoney, Janice
> Subject:  RE: Stock option vesting report
>
> Janice,
> It's not a big deal, it's more of a curiosity.  I have a question on the 635 options at
> 19.67 (WM99).  Are these vesting out over 4 years or 3?  These were from a webmanage plan
> that I thought were on a 3 year vest (and I thought I was about 2.5 years into the vesting
> period).  If I do my math it seems like they're vesting out over 4 years.
>
> Thanks,
> Brian
>         -----Original Message-----
>     From:         Mahoney, Janice
>     Sent: Thursday, March 07, 2002 1:56 PM
>     To:   Mehlman, Brian
>     Subject:    RE: Stock option vesting report
>
>     Hi,
>     Attached is a summary of your option status.  Please let me know if you have any
> questions or need any other information.
>
>     Regards,
>     Jan
>     << File: mehlman.rtf >>
>
>
>           -----Original Message-----
>           From: Mehlman, Brian
>           Sent: Thursday, March 07, 2002 1:09 PM
>           To:   Mahoney, Janice
>           Subject:    Stock option vesting report
>
>           Janice,
>           Can I get a report of options I have vested?
>           Thanks in advance,
>
>           -------------------------------------------------------------------------
---------
>           Brian Mehlman
>           Product Manager
>           (Desk)  978-863-2229
>           (Cell)    603-860-9291
>           (Email) bmehlman@netapp.com <mailto:bmehlman@netapp.com>
>

CONFIDENTIAL

NetApp 000269

> ---------------------------------------------------------------------
> -----------------
>

CONFIDENTIAL

NetApp 000270

# Trial Exhibit I



**NetworkAppliance®**

March 22, 2001

Dear Brian:

At the February All Hand's meeting, Chris Carlton emphasized that we are a performance centric company and that stock option grants are one way we recognize employee performance and contribution. She spoke of the opportunity employees have to build a portfolio of stock options based on performance. The stock program Dan Warmenhoven announced on March 8, 2001 has begun.

I am pleased to notify you that you will be granted an option to purchase 3,000 shares of Network Appliance, Inc. common stock. These options will be granted to you over a three month period. The first 1,000 of these options will be granted effective March 20, 2001 with an exercise price of $18.625. You will receive additional grants of 1,000 options, to be granted and priced on April 19, 2001 and 1,000 options, granted and priced on May 18, 2001.

These options will be granted pursuant to the Company's stock option plan and will have a term of ten (10) years. Each of these option grants will start vesting six months from the grant date and will continue to vest in installments during your service with the Company (6/48th upon the six month anniversary of the grant and 1/48th monthly thereafter). You will receive full grant details from Stock Administration within 4 weeks.

This grant is awarded to you in recognition of your current and future contribution to the success of Network Appliance. You play a role in this success and your efforts are very much appreciated. Congratulations and I look forward to continuing to work with you.

Sincerely,

Amit Pandey

cc: Personnel File: Mehlman,Brian D
10630

M0030

# Trial Exhibit J

## NETWORK APPLIANCE, INC.
## NOTICE OF GRANT OF STOCK OPTION

Notice is hereby given of the following option grant (the "Option") to purchase shares of the Common Stock of Network Appliance, Inc. (the "Corporation"):

Optionee:

Brian D Mehlman
25 Hazel Avenue
Nashua, NH 03062

Grant Number: 011482

Grant Date: May 18, 2001

Vesting Commencement Date: May 18, 2001

Exercise Price: $22.94 per share

Number of Option Shares: 1,000 shares

Expiration Date: May 17, 2011

Type of Option: Non-Qualified Stock Option

Exercise Schedule:

> *125 shares* become exercisable on November 18, 2001;
>
> *875 shares* become exercisable in successive equal monthly installments upon Optionee's completion of each month of Service through May 18, 2005;

In no event shall the Option become exercisable for any additional Option Shares after Optionee's cessation of Service.

Optionee understands and agrees that the Option is granted subject to and in accordance with the terms of the Network Appliance, Inc. 1999 Stock Option Plan (the "Plan"). A copy of the Plan is available upon request made to the Corporate Secretary at the Corporation's principal offices.

Optionee further agrees to be bound by the terms of the Plan and the terms of the Option as set forth in the Stock Option Agreement, which is available and appears as "1999 Plan Stock Option Agreement" on the Corporation's internal web site at http://web.netapp.com/stock/. Optionee hereby acknowledges that the official prospectus for the Plan, which appears as "1999 Plan Summary and Prospectus" is available on the Corporation's internal web site at http://finance-web.netapp.com/stock/options.html and that the Stock Option Agreement and the Plan Summary and Prospectus are made a part of this Notice of Grant of Stock Option.

No Employment or Service Contract. Nothing in this Notice or in the Stock Option Agreement or in the Plan shall confer upon Optionee any right to continue in Service for any period of specific duration or interfere with or otherwise restrict in any way the rights of the Corporation (or any Parent or Subsidiary employing or retaining Optionee) or of Optionee, which rights are hereby expressly reserved by each, to terminate Optionee's Service at any time for any reason, with or without cause.

Definitions. All capitalized terms in this Notice shall have the meaning assigned to them in this Notice or in the Stock Option Agreement.

_____, 2001
Date

NETWORK APPLIANCE, INC.

By: _____

Title: Senior Vice President, Human Resources

By: _____

Optionee: Brian D Mehlman

# Trial Exhibit K

# SALOMON SMITH BARNEY

A member of citigroup

**Client Statement**
**Forms 1099 for 2001**

Page 2 of 3

Ref.: 00001448 00006206

**Payer**

SALOMON SMITH BARNEY INC.
388 GREENWICH STREET
NEW YORK, NEW YORK 10013
Attn: Tax Reporting Service Center
Tax ID Number 11-2418191

**Your Financial Consultant**

STEVEN DANIELS
SALOMON SMITH BARNEY INC.
2775 SAND HILL ROAD
SUITE 120
MENLO PARK  CA 94025
Branch Office : 650-926-7800
Email: steven.daniels@rssmb.com

Account Number  740-52841-13 768    SS # 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

BRIAN MEHLMAN
25 HAZEL AVE.
NASHUA NH
03062-1448

*This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported.*

## 1099-B Proceeds from Broker and Barter Exchange Transactions 2001

(OMB#1545-0715)

Gross proceeds from each transaction are individually reported to the IRS after deducting commissions. For bond transactions, accrued income is also deducted. Taxable accrued interest is reported on Form 1099-INT and included in your "Details of 1099 Reported Interest Income".

| Reference number | Date of sale (Box 1a) | CUSIP number (Box 1b) | Quantity | Description (Box 8) | Price | Gross proceeds less commissions (Box 2) | Federal income tax withheld (Box 4) |
|---|---|---|---|---|---|---|---|
| 120000100 | 12/05/01 | 64120L104000 | 425 | NETWORK APPLIANCE INC | $ 18.70 | $ 7,942.24 | |
| Totals | | | | | | $ 7,942.24 | |

M0181

SALOMON SMITH BARNEY

A member of citigroup↑

Ref: 00001306 000051.92

**Client Statement**
**Forms 1099 for 2002**

Account Number  740-52841-13 768    SS #  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

| Payer | Your Financial Consultant | |
|---|---|---|
| SALOMON SMITH BARNEY INC. | STEVEN DANIELS | BRIAN MEHLMAN |
| 388 GREENWICH STREET | SALOMON SMITH BARNEY INC. | 26 HAZEL AVE. |
| NEW YORK, NEW YORK 10013 | 2775 SAND HILL ROAD | NASHUA NH |
| Attn: Tax Reporting Service Center | SUITE 120 | 03062-1448 |
| Tax ID Number 11-2419191 | MENLO PARK  CA 94025 | |
| | Branch Office : 650-926-7600 | |
| | Email: steven.daniels@rssmb.com | |

This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return,
a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not
been reported.

**1099-B Proceeds from Broker and Barter Exchange Transactions 2002**    (OMB#1545-0715)

Gross proceeds from each transaction are individually reported to the IRS after deducting commissions. For bond transactions, accrued income
is also deducted. Taxable accrued interest is reported on Form 1099-INT and included in your "Details of 1099 Reported Interest Income".

| Reference number | Date of sale (Box 1a) | CUSIP number (Box 1b) | Quantity | Description (Box 5) | Price | Gross proceeds less commissions (Box 2) | Federal income tax withheld (Box 4) |
|---|---|---|---|---|---|---|---|
| 120000100 | 11/18/02 | 64120L104000 | 300 | NETWORK APPLIANCE INC | $ 11.43 | $ 3,423.89 | COST 3500 |
| 120000300 | 12/02/02 | 64120L104000 | 302 | NETWORK APPLIANCE INC | 14.30 | 4,313.47 | Cost 4188.24 |
| Totals | | | | | | $ 7,737.36 | |

SALOMON SMITH BARNEY

A member of citigroup↑

Ref: 00001306 000051.93

**Client Statement**
**2002 Year End Summary**

BRIAN MEHLMAN
Account Number  740-52841-13 768    SS #  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

**Value of your portfolio**

| Description | Amount |
|---|---|
| Stocks | $ 120.00 |
| Value of your account on 12/21/02 | $ 120.00 |
| Value of your account on 12/21/01 | $ 874.80 |

2
0
0
2

Y
E
A
R

E
N
D

S
U
M
M
A
R
Y

Y
R
A
M
M
U
S

.
D
N
E

R
A
E
Y

3
0
0
2

Value of your portfolio

| Description | Amount |
|---|---|
| Value of your account on 11/27/03 | $ 245.28 |
| Value of your account on 11/27/03 | $ 1,136.00 |

Account Number 740-52841-13 768    SS # 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

BRIAN MEHLMAN

Client Statement
2003 Year End Summary

Page 3 of 3

SMITH BARNEY
citigroup

Ref: 00001543 00006129

---

SMITH BARNEY
citigroup

Ref: 00001543 00006128

Client Statement
Forms 1099 for 2003

Page 2 of 3

Payer

CITIGROUP GLOBAL MKTS INC.
388 GREENWICH STREET
NEW YORK, NEW YORK 10013
Attn: Tax Reporting Service Center
Tax ID Number 11-2418191

Your Financial Consultant

STEVEN DANIELS
CITIGROUP GLOBAL MKTS INC.
2775 SAND HILL ROAD
SUITE 120
MENLO PARK CA 94025
Branch Office : 650-926-7600
Email: steven.daniels@smithbarney.com

BRIAN MEHLMAN
25 HAZEL AVE.
NASHUA NH
03062-1440

Account Number 740-52841-13 768    SS # 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

This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return,
a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not
been reported.

### 1099-B Proceeds from Broker and Barter Exchange Transactions 2003

(OMB #1545-0715)

Gross proceeds from each transaction are individually reported to the IRS after deducting commissions. For bond transactions, accrued income
is also deducted. Taxable accrued interest is reported on Form 1099-INT and included in your "Details of 1099 Reported Interest Income".

| Reference number | Date of sale (Box 1a) | CUSIP number (Box 1b) | Quantity | Description (Box 5) | Price | Gross proceeds less commissions (Box 2) | Federal income tax withheld (Box 4) |
|---|---|---|---|---|---|---|---|
| 120000200 | 06/02/03 | 64120L104000 | 306 | NETWORK APPLIANCE INC | $ 17.51 | $ 5,352.80 | |
| 120000300 | 06/02/03 | 64120L104000 | 3,178 | NETWORK APPLIANCE INC<br>SOMEMPLID XXXXXX173<br>EXERCISE QUANTITY_____3,178<br>GRANT PRICE_____9.8400<br>OPTION COST_____31,271.52<br>SEC FEE_____2.91<br>TRANSACTION FEE_____5.00<br>Avg Price shown-details on req<br>Px Incds Mark-dwn: 0<br>VS NO COST<br>FULL PRICE IS 17.53127120 | 17.531 | 55,706.77 | |
| 120000500 | 12/01/03 | 64120L104000 | 316 | NETWORK APPLIANCE INC | 23.18 | 7,313.21 | |
| Totals | | | | | | $ 68,372.78 | |


**Client Statement**
**Forms 1099 for 2004**

Page 3 of 4

Ref: 00000253 00001085

**BRIAN MEHLMAN**
Account Number 740-52841-13 768    SS # 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

*This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported.*

## 1099-B Proceeds from Broker and Barter Exchange Transactions 2004 —continued

(OMB#1545-0715)

| Reference number | Date of sale or exchange (Box 1a) | CUSIP number (Box 1b) | Quantity | Description (box 7) | Price | Gross proceeds less commissions (Box 2) | Federal income tax withheld (Box 4) |
|---|---|---|---|---|---|---|---|
| 120000300 | 09/14/04 | 64120L104000 | 583 ✓ | NETWORK APPLIANCE INC<br>SOMEMPLID XXXXXX173<br>EXERCISE QUANTITY_____583<br>GRANT PRICE_____15.3200<br>OPTION COST_____8,931.56<br>FEDERAL TAX_____1,071.26<br>FICA TAX1_____265.67<br>FICA TAX2_____62.13<br>SEC FEE_____.31<br>Px Inclds Mark-dwn: 0<br>VS NO COST | $ 22.87 | $ 13,218.30 | |
| 120000400 | 09/28/04 | 64120L104000 | 1,124 ✓ | NETWORK APPLIANCE INC | 22.02 | 24,654.98 | |
| 120000500 | 09/30/04 | 64120L104000 | 791 ✓ | NETWORK APPLIANCE INC | 22.99 | 18,179.66 | |
| 120000600 | 10/01/04 | 64120L104000 | 770 ✓ | NETWORK APPLIANCE INC<br>SOMEMPLID XXXXXX173<br>EXERCISE QUANTITY_____770<br>GRANT PRICE_____22.9400<br>OPTION COST_____17,863.80<br>FEDERAL TAX_____184.60<br>FICA TAX1_____45.83<br>FICA TAX2_____10.72<br>SEC FEE_____.44<br>TRANSACTION FEE_____5.00<br>Px Inclds Mark-dwn: 0<br>VS NO COST | 23.90 | 18,397.56 | |
| 120000700 | 10/14/04 | 6412L104000 | 12 | NETWORK APPLIANCE INC | 23.44 | 276.27 | |
| **Totals** | | | | | | $ 99,257.44 | |

M0184

**Statement of Taxable Income**

Network Appliance, Inc.
ID: 77-0307520
495 East Java Drive
Sunnyvale, CA 94089

Page: 1
File: Tax
Date: 1/24/2005
Time: 6:33:19PM

FROM 1/1/2004 TO 12/31/2004

Brian D Mehlman
25 Hazel Avenue
Nashua, NH 03062

SS#: 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
Termination Date:  7/2/2004

| Number | Grant Date | Price/Tax Basis | Transaction Date | Value Date | Value Basis | Sale Date | Sale Price | Shares | Total Price | Total Value | Adjusted Sale Price | W-2 Income | Adjustment for AMT Calculation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RESTRICTED/NON-QUALIFIED TRANSACTIONS** | | | | | | | | | | | | | |
| 011482 | 05/18/01 | $22.9400 | 10/01/04 | 10/01/04 | $23.9000 | | $0.0000 | 770 | $17,663.80 | $18,403.00 | | $739.20 | |
| 009371 | 04/19/01 | $22.3000 | 09/30/04 | 09/30/04 | $22.9900 | | $0.0000 | 791 | $17,639.30 | $18,185.09 | | $545.79 | |
| 020479 | 03/04/02 | $20.5200 | 09/28/04 | 09/28/04 | $22.0200 | | $0.0000 | 562 | $11,532.24 | $12,375.24 | | $843.00 | |
| 021557 | 04/01/02 | $21.0100 | 09/28/04 | 09/28/04 | $22.0200 | | $0.0000 | 562 | $11,807.62 | $12,375.24 | | $567.62 | |
| 007215 | 03/20/01 | $18.6250 | 09/14/04 | 09/14/04 | $22.6700 | | $0.0000 | 812 | $15,123.50 | $18,408.04 | | $3,284.54 | |
| 019104 | 02/07/02 | $15.3200 | 09/14/04 | 09/14/04 | $22.6700 | | $0.0000 | 583 | $8,931.56 | $13,216.61 | | $4,285.05 | |
| | | | | | | | | | | | | $10,265.20 | |
| | | | | | | | | Total W-2 Income | | | | $10,265.20 | |

---

**SMITHBARNEY**
citigroup

Ref: 00000253 00001064

**Client Statement
Forms 1099 for 2004**

Page 2 of 4

**Account Number** 740-52841-13 768     SS # 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

**Payer**

CITIGROUP GLOBAL MKTS INC.
388 GREENWICH STREET
NEW YORK, NEW YORK 10013
Attn: Tax Reporting Service Center
Tax ID Number 11-2418191

*Your Financial Consultant*

STEVEN DANIELS
CITIGROUP GLOBAL MKTS INC.
2775 SAND HILL ROAD
SUITE 120
MENLO PARK CA 94025
Branch Office : 650-926-7600
Email: steven.daniels@smithbarney.com

BRIAN MEHLMAN
25 HAZEL AVE.
NASHUA NH
03062-1448

*This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported.*

**1099-B Proceeds from Broker and Barter Exchange Transactions 2004**     (OMB# 1545-0715)

Gross proceeds from each transaction are individually reported to the IRS after deducting commissions. For bond transactions, accrued income is also deducted. Taxable accrued interest is reported on Form 1099-INT and included in your "Details of 1099 Reported Interest Income".

| Reference number | Date of sale or exchange (Box 1a) | CUSIP number (Box 1b) | Quantity | Description (Box 7) | Price | Gross proceeds less commissions (Box 2) | Federal income tax withheld (Box 4) |
|---|---|---|---|---|---|---|---|
| | | | | 10.4125 | | | |
| 120000100 | 06/01/04 | 64120L104000 | 319 | NETWORK APPLIANCE INC | $ 19.284 | $ 6,140.07 | |
| 120000200 | 09/14/04 | 64120L104000 | 812 | NETWORK APPLIANCE INC | 22.87 | 18,402.60 | |
| | | | | SOMEMPUD XXXXXX173 | | | |
| | | | | EXERCISE QUANTITY        812 | | | |
| | | | | GRANT PRICE        18.6250 | | | |
| | | | | OPTION COST        15,123.50 | | | |
| | | | | FEDERAL TAX        821.14 | | | |
| | | | | FICA TAX1        203.84 | | | |
| | | | | FICA TAX2        47.63 | | | |
| | | | | SEC FEE        .44 | | | |
| | | | | TRANSACTION FEE        5.00 | | | |
| | | | | Px inclds Mark-dwn:  0 | | | |
| | | | | VS NO COST | | | |



Statement of Active Services and through Morgan Morgan Stanley DW Inc. member SIPC

**Statement of Taxable Income**
**Stock Purchase**

FROM 1/1/2004 TO 12/31/2004

Network Appliance, Inc.
ID: 77-0307520
495 East Java Drive
Sunnyvale, CA 94089

Page: 1
File:   Prbstmt
Date:  1/25/2005
Time:  11:05:37 AM

Brian D Mehlman
25 Hazel Avenue
Nashua, NH 03062

SS#: 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
Termination Date:   7/2/2004

| Purchase Date | Purchase Price | Value on Purchase Date | Sale Date | Shares Sold | Total Value on Purchase Date | Total Purchase Price | Subscription Date | Discount on Subscription Date | Total Discount on Subscription Date | Sale Price | Total Sale Price | W-2 Income |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **DISQUALIFYING DISPOSITIONS** | | | | | | | | | | | | |
| 5/28/2004 | $10.4125 | $19.8000 | 6/1/2004 | 164 | $3,247.20 | $1,707.65 | 6/3/2002 | | | | | |
| 5/28/2004 | $10.4125 | $19.8000 | 6/1/2004 | 155 | $3,069.00 | $1,613.94 | 6/3/2002 | | | | | $1,539.55 |
| | | | | | | | | | | | | $1,455.06 |
| | | | | | | | | | | | | $2,994.61 |

W-2 Income for Disqualifying Dispositions is the difference between the Total Value on the Purchase Date and the Total Purchase Price.

Total W-2 Income

$2,994.61

M0186

**Statement of Taxable Income**

Network Appliance, Inc.
ID: 77-0307520
495 East Java Drive
Sunnyvale, CA 94089

Page: 1
File: Tax
Date: 1/13/2004
Time: 1:36:42PM

FROM 1/1/2003 TO 12/31/2003

Brian D Mehlman
25 Hazel Avenue
Nashua, NH 03062

SS#: 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

| Number | Grant Date | Price/ Tax Basis | Transaction Date | Value Date | Value Basis | Sale Date | Sale Price | Shares | Total Price | Total Value | Adjusted Sale Price | W-2 Income | Adjustment for AMT Calculation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INFORMATION FOR CALCULATION OF ALTERNATIVE MINIMUM TAX** | | | | | | | | | | | | | |
| 0005494 | 11/15/00 | $9.8400 | 06/02/03 | 06/02/03 | $16.6900 | 06/02/03 | $17.5313 | 3,178 | $31,271.52 | $53,040.82 | $55,714.47 | $0.00 | $24,442.95 |
| | | | | | | | | | | | | $0.00 | $24,442.95 |
| **ISO DISQUALIFYING DISPOSITIONS** | | | | | | | | | | | | | |
| 0005494 | 11/15/00 | $9.8400 | 06/02/03 | 06/02/03 | $16.6900 | 06/02/03 | $17.5313 | 3,178 | $31,271.52 | $53,040.82 | $55,714.47 | $24,442.95 | |
| | | | | | | | | | | | | $24,442.95 | |
| | | | | | | | | | | | Total W-2 Income | $24,442.95 | |

The W-2 income and/or company tax deduction reflected on this report assumes that all dispositions constitute sales to unrelated parties. Please verify these amounts with your tax professional if the dispositions reflected in this report are not sales to unrelated parties.

**Statement of Taxable Income**
**Stock Purchase**

Network Appliance, Inc.
ID: 77-0307520
495 East Java Drive
Sunnyvale, CA 94089

Page: 1
File: Prbxstmt
Date: 1/13/2004
Time: 5:39:13PM

FROM 1/1/2003 TO 12/31/2003

Brian D Mehlman
25 Hazel Avenue
Nashua, NH 03062

SS#: 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

| Purchase Date | Purchase Price | Value on Purchase Date | Sale Date | Shares Sold | Total Value on Purchase Date | Total Purchase Price | Subscription Date | Discount on Subscription Date | Total Discount on Subscription Date | Sale Price | Total Sale Price | W-2 Income |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **DISQUALIFYING DISPOSITIONS** | | | | | | | | | | | | |
| | | | | | | | | | | | | $4,015.57 |
| 11/28/2003 | $10.4125 | $23.1200 | 12/1/2003 | 316 | $7,305.92 | $3,290.35 | 6/3/2002 | | | | | $2,024.95 |
| 5/30/2003 | $10.4125 | $17.0300 | 6/3/2003 | 306 | $5,211.18 | $3,186.23 | 6/3/2002 | | | | | |
| | | | | | | | | | | | | $6,040.52 |

W-2 Income for Disqualifying Dispositions is the difference between the Total Value on the Purchase Date and the Total Purchase Price.

Total W-2 Income   $6,040.52

M0187

# Trial Exhibit L

| Holding | Symbol | Qty | ####### | Value |
|---|---|---|---|---|
| Fidelity | | | | |
| Cash | | | | 305 |
| Agilent | A | 23 | 55 | 1265 |
| Barnes & Noble | BNBN | 200 | 2.25 | 450 |
| CMGI | CMGI | 110 | 9.68 | 1064.8 |
| Dell | DELL | 100 | 18.8 | 1880 |
| Blue Chip Growth | FBGRX | 107.4 | 52.8 | 5670.72 |
| Equity Income II | FEQTX | 388.8 | 27.69 | 10765.87 |
| Mid Cap Stock | FMCSX | 356.9 | 25.32 | 9036.708 |
| Hewlett Packard | HWP | 16 | 33 | 528 |
| Internet Infinity | ITNF | 1000 | 0.15 | 150 |
| Lucent | LU | 41 | 15.3 | 627.3 |
| PLC | PLC | 1000 | 0.56 | 560 |
| | | | Total | 32543.95 |
| **Fidelity IRA** | | | | |
| Growth & Income | FGRIX | 71.57 | 42.85 | 3066.775 |
| Retirement | FDFFX | 180.72 | 24.7 | 4463.784 |
| Fidelity 50 | FFTYX | 190.62 | 17.02 | 3244.352 |
| | | | Total | 10774.91 |
| **BankBoston** | | | | |
| Cash | | | Total | 6000 |
| **Morgan Stanley Dean Witter** | | | | |
| ADCT | | 50 | 25.5 | 1275 |
| EXDS | | 38 | 25.75 | 978.5 |
| INTC | | 25 | 36 | 900 |
| RMBS | | 29 | 49.5 | 1435.5 |
| | | | | 4589 |
| **Morgan Stanley/Dean Witter** | | | | |
| Cash | | | | 84.68 |
| Franklin Small Cap | FRSGX | 185.24 | 37.64 | 6972.434 |
| Van Camp Emerging Growth | ACEMX | 63.44 | 67 | 4250.48 |
| Oppenheimer Global | OGLBX | 136.05 | 50 | 6802.5 |
| EV Tax Managed Growth | EMTGX | 332.84 | 22 | 7322.48 |
| | | | | 25432.57 |
| **Goldman Sachs 401K** | | | | |
| Capital Growth Fund | | 120 | 27.19 | 3262.8 |
| CORE (sm) US Equity | | 95 | 34.64 | 3290.8 |
| Asset Allocation Growth & Income | | 127 | 11.83 | 1502.41 |
| | | | Total | 8056.01 |
| **The American Funds Group (ROTH IRA)** | | | | |
| Investment Company of America | | 33.47 | 32.61 | 1091.457 |
| Washington Mutual Investors Fund A | | 31.899 | 28.13 | 897.3189 |
| | | | Total | 1988.776 |

**Vesting Schedule for incentive**
**Options of NTAP (approximate)**                    **Current NTAP Price:**        90

| Vest Date | Qty | Cost/share Cost | Proceed |
|---|---|---|---|

M0190

| | | | | | |
|---|---|---|---|---|---|
| 05-Jul-99 | 550 | 9.5 | 5225 | 44275 | |
| 05-Jan-00 | 550 | 9.5 | 5225 | 44275 | |
| 05-Jul-00 | 550 | 9.5 | 5225 | 44275 | |
| 17-Sep-00 | 110 | 19 | 2090 | 7810 | 140635 |
| 05-Jan-01 | 550 | 9.5 | 5225 | 44275 | |
| 17-Mar-01 | 110 | 19 | 2090 | 7810 | |
| 05-Jul-01 | 550 | 9.5 | 5225 | 44275 | |
| 17-Sep-01 | 110 | 19 | 2090 | 7810 | |
| 01-Nov-01 | 950 | 33 | 31350 | 54150 | |
| 05-Jan-02 | 550 | 9.5 | 5225 | 44275 | |
| 17-Mar-02 | 110 | 19 | 2090 | 7810 | |
| 01-May-02 | 475 | 33 | 15675 | 27075 | |
| 17-Sep-02 | 110 | 19 | 2090 | 7810 | |
| 01-Nov-02 | 475 | 33 | 15675 | 27075 | |
| 17-Mar-03 | 110 | 19 | 2090 | 7810 | |
| 01-May-03 | 475 | 33 | 15675 | 27075 | |
| 01-Nov-03 | 475 | 33 | 15675 | 27075 | |
| 01-May-03 | 475 | 33 | 15675 | 27075 | |
| 01-Nov-04 | 475 | 33 | 15675 | 27075 | |
| | 7760 | | | 529110 | |

M0191

Total w/o NTAP        86231.72
Total w/ NTAP         226866.7 (Todays Valuation)
Total w/NTAP          615341.7 (Future projection at todays value)

M0192

(Total value vested at current NTAP price)

M0193

# Trial Exhibit M

**Your Broker/Dealer is**

**CITIGROUP GLOBAL MARKETS INC.**

SMITH BARNEY
2121 S EL CAMINO REAL
SUITE 900
SAN MATEO, CA 94403

Account Number:                    XXX-XX-X173 Plan 24M

DANIELS GROUP
STOCK OPTION PROGRAM           1-800-367-4777


BRIAN      MEHLMAN
25 HAZEL AVENUE
NASHUA          NH 03062

---

NETWORK APPLIANCE INC
LIMIT ORDER
WE ENTERED YOUR ORDER ON DATE
SHOWN. GOOD UNTIL CANCELLED.
Plan # 13   ID XXXXXX173
ISO  Grant ID 001115
Exercise Quantity     3,178
Limit Price        20.0000

---

Order Date:   05/29/03        CUSIP#  64120L 10 4        Unsolicited Order
Market:                       Security# N279754          Cash Acct
                              Symbol:   NTAP             Ref#:  0001757

We acted as your agent in this transaction.

---

M0233

Citigroup Global Markets Inc., member NYSE, NASD and other principal exchanges. Smith Barney is a division and service mark of Citigroup Global Markets Inc. and its affiliates and is used and registered throughout the world. CITIGROUP and the Umbrella Device are trademarks and service marks of Citicorp or its affiliates and are used and registered throughout the world. Citigroup Global Markets Inc. is a member of the Securities Investor Protection Corporation (SIPC).

As a reminder, payment for securities purchased or delivery of securities sold must be deposited with us by the Settlement Date. See reverse for further details. Keep this document for your records. Thank you for doing business with us.

Please review this document carefully. If the details of any transaction are incorrect, you must notify the Branch Manager of the office servicing your account immediately. Failure to make such notification within three (3) days of receipt of this document constitutes your acceptance of the transaction(s).

**Unless you have directed that the order be executed on a specified exchange or market and we have agreed to such execution, we will, at our sole discretion and without prior notification to you, execute any of your orders to purchase or sell securities on the over-the-counter market in any location or on any exchange, including a foreign exchange, where such security is traded, either on a principal or agency basis.**

**The firm receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. When such remuneration is received, it is considered compensation to the firm, and the source and amount of any compensation received by the firm in connection with your transaction will be disclosed upon request.**

**For NASDAQ principal transactions: Any mark-up or mark-down shown on the front of this Confirmation represents the difference between the reported price to NASDAQ and your price. Your Financial Consultant receives a portion of any mark-up or mark-down as compensation in connection with these transactions, and may receive additional compensation from these transactions. Your Financial Consultant usually receives compensation from transactions that have no mark-up or mark-down. Per share prices and per share mark-ups or mark-downs will be furnished on request.**

**Should the Firm communicate an erroneous report of an execution that is more favorable than the actual execution price the Firm may at its discretion, and without notice to you, automatically pass on the price improvement to you.**

A. When applicable, the transaction(s) set forth on the front of this confirmation constitutes an offer to the client made pursuant to the information contained in the enclosed prospectus or official statement.

B. Descriptive words in the title of any security are used for identification purposes only, and do not constitute representations.

C. The time of execution will be furnished upon written request. In transactions where we act as agent, the name of buyer and seller will be furnished on written request.

D. For Debt Securities, call features may exist in addition to those described on the front of this confirmation. Debt securities subject to call features or other redemption features such as sinking funds, may be redeemed in whole or in part before maturity. Such occurrences may affect yield. Please contact your Financial Consultant for further information. Yields on mortgage-backed securities (MBS) are quoted as a Corporate Bond Equivalent Yield (BEY). Actual yield may vary based on prepayment rates. Total amount due on MBS may be subject to change after settlement date due to factor changes. Additional information will be provided upon request.

E. For Zero Coupon, Compound Interest and Multiplier securities, no periodic payments of interest or principal are generally made. These securities may be callable at a price below their maturity value without prior notice by mail to holder unless the holder has requested these securities be held in registered form. Unless specifically requested and agreed to by us, clients' securities will not be held in registered form. Additional information will be furnished upon request.

F. For the purpose of evaluating Federal Deposit Insurance, CDs are aggregated with all other deposits held by a client in the same legal capacity at the issuing institution. The insurance limit is $100,000 combined principal and interest for interest bearing CDs or accreted value for zero-coupon CDs.

G. If this confirmation relates to a debt obligation in bearer form, we agree to satisfy the conditions set forth in U.S. Treasury regulation sections 1.165-12(c)(3), and covenants with you to deliver the obligation in bearer form in accordance with the requirements of paragraph (c)(1)(ii) and (iv) of those regulations. The regulations prohibit deliveries, and restrict resales of obligations in bearer form within the United States, and may affect the resale market for such obligations. Consult your tax advisor.

H. For certain asset-backed debt securities, the actual yield may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning factors that affect yield (including estimated yield, weighted average life and the prepayment assumptions underlying yield) will be furnished upon written request.

I. Rating information is provided based on good faith inquiry, but its accuracy or completeness cannot be guaranteed.

J. Structured debt securities differ substantially from standard fixed income obligations. Risks include unpredictable movements of the related index, increased volatility, reduced liquidity, and unusual call features leading to premature returns of capital that can reduce expected yield.

4/2003

Your Broker/Dealer is
**CITIGROUP GLOBAL MKTS INC.**
2775 SAND HILL ROAD
SUITE 120
MENLO PARK  CA 94025

Confirmation

SMITH BARNEY
citigroup

Account Number:        740-52841-1-3-022
Financial Consultant:   SMC/THE DANIELS GROUP
                        650-926-7600

BRIAN MEHLMAN                    #1,569
25 HAZEL AVE.
NASHUA NH 03062-1448

'ou Sold 306 shares

NETWORK APPLIANCE INC
EXCHAGNE PACIFIC COAST
RPT PRICE TO NASDAQ: 17.51
WE ARE A MARKET MAKER

| | |
|---|---|
| Gross Amount | $ 5,358.06 |
| SEC Fee | .26 |
| Transaction Fee | 5.00 |
| **Amount** | **$ 5,352.80** |
| **Settlement Date** | **06/05/2003** |

rade Date: 06/02/2003          CUSIP#:  64120L-10-4      Unsolicited Order
Market: Over-The-Counter       Security#: N279754        Cash Acct.              HOLD PROCEEDS
                               Symbol:  NTAP             Ref #: 26519

We acted as principal in this transaction.

Citigroup Global Markets Inc., member NYSE, NASD and other principal exchanges. Smith Barney is a division and service mark of Citigroup
Global Markets Inc. and its affiliates and is used and registered throughout the world. CITIGROUP and the Umbrella Device are trademarks
and service marks of Citicorp or its affiliates and are used and registered throughout the world. Citigroup Global Markets Inc.
is a member of the Securities Investor Protection Corporation (SIPC).
As a reminder, payment for securities purchased or delivery of securities sold must be deposited with us by the Settlement Date.
See reverse for further details. Keep this document for your records. Thank you for doing business with us.

                                                        06/02/2003  SD-001829-S

Please review this document carefully. If the details of any transaction are incorrect, you must notify the Branch Manager of the office servicing your account immediately. Failure to make such notification within three (3) days of receipt of this document constitutes your acceptance of the transaction(s).

**Unless you have directed that the order be executed on a specified exchange or market and we have agreed to such execution, we will, at our sole discretion and without prior notification to you, execute any of your orders to purchase or sell securities on the over-the-counter market in any location or on any exchange, including a foreign exchange, where such security is traded, either on a principal or agency basis.**

**The firm receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. When such remuneration is received, it is considered compensation to the firm, and the source and amount of any compensation received by the firm in connection with your transaction will be disclosed upon request.**

**For NASDAQ principal transactions: Any mark-up or mark-down shown on the front of this Confirmation represents the difference between the reported price to NASDAQ and your price. Your Financial Consultant receives a portion of any mark-up or mark-down as compensation in connection with these transactions, and may receive additional compensation from these transactions. Your Financial Consultant usually receives compensation from transactions that have no mark-up or mark-down. Per share prices and per share mark-ups or mark-downs will be furnished on request.**

Should the Firm communicate an erroneous report of an execution that is more favorable than the actual execution price the Firm may at its discretion, and without notice to you, automatically pass on the price improvement to you.

A. When applicable, the transaction(s) set forth on the front of this confirmation constitutes an offer to the client made pursuant to the information contained in the enclosed prospectus or official statement.

B. Descriptive words in the title of any security are used for identification purposes only, and do not constitute representations.

C. The time of execution will be furnished upon written request. In transactions where we act as agent, the name of buyer and seller will be furnished on written request.

D. For Debt Securities, call features may exist in addition to those described on the front of this confirmation. Debt securities subject to call features or other redemption features such as sinking funds, may be redeemed in whole or in part before maturity. Such occurrences may affect yield. Please contact your Financial Consultant for further information. Yields on mortgage-backed securities (MBS) are quoted as a Corporate Bond Equivalent Yield (BEY). Actual yield may vary based on prepayment rates. Total amount due on MBS may be subject to change after settlement date due to factor changes. Additional information will be provided upon request.

E. For Zero Coupon, Compound Interest and Multiplier securities, no periodic payments of interest or principal are generally made. These securities may be callable at a price below their maturity value without prior notice by mail to holder unless the holder has requested these securities be held in registered form. Unless specifically requested and agreed to by us, clients' securities will not be held in registered form. Additional information will be furnished upon request.

F. For the purpose of evaluating Federal Deposit Insurance, CDs are aggregated with all other deposits held by a client in the same legal capacity at the issuing institution. The insurance limit is $100,000 combined principal and interest for interest bearing CDs or accreted value for zero-coupon CDs.

G. If this confirmation relates to a debt obligation in bearer form, we agree to satisfy the conditions set forth in U.S. Treasury regulation sections 1.165-12(c)(3), and covenants with you to deliver the obligation in bearer form in accordance with the requirements of paragraph (c)(1)(ii) and (iv) of those regulations. The regulations prohibit deliveries, and restrict resales of obligations in bearer form within the United States, and may affect the resale market for such obligations. Consult your tax advisor.

H. For certain asset-backed debt securities, the actual yield may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning factors that affect yield (including estimated yield, weighted average life and the prepayment assumptions underlying yield) will be furnished upon written request.

I. Rating information is provided based on good faith inquiry, but its accuracy or completeness cannot be guaranteed.

J. Structured debt securities differ substantially from standard fixed income obligations. Risks include unpredictable movements of the related index, increased volatility, reduced liquidity, and unusual call features leading to premature returns of capital that can reduce expected yield.

4/2003

Your Broker/Dealer is

**CITIGROUP GLOBAL MARKETS INC.**

Stock Plan Services
U.S. Service Center
100 Citibank Drive
San Antonio, TX 78245

Account Number:                 XXX-XX-X173 Plan 24M

San Antonio
Service Center                          1-800-303-3508

BRIAN      MEHLMAN
25 HAZEL AVENUE
NASHUA        NH 03062

NETWORK APPLIANCE INC
CANCEL
YOUR OPEN ORDER OF 08/26/04
WAS CANCELLED ON   09/10/04
Plan # 06    ID XXXXXX173
NQ    Grant ID 010320
Exercise Quantity        812
Limit Price        23.5000

Order Date:    08/26/04          CUSIP#    64120L 10 4        Unsolicited Order
Market:                          Security#  N279754           Cash Acct
                                 Symbol:    NTAP              Ref#:   0001220

We acted as your agent in this transaction.

M0237

Citigroup Global Markets Inc., member NYSE, NASD and other principal exchanges. Smith Barney is a division and service mark of Citigroup Global Markets Inc. and its affiliates and is used and registered throughout the world. CITIGROUP and the Umbrella Device are trademarks and service marks of Citicorp or its affiliates and are used and registered throughout the world. Citigroup Global Markets Inc. is a member of the Securities Investor Protection Corporation (SIPC).

As a reminder, payment for securities purchased or delivery of securities sold must be deposited with us by the Settlement Date. See reverse for further details. Keep this document for your records. Thank you for doing business with us.

Please review this document carefully. If the details of any transaction are incorrect, you must notify the Branch Manager of the office servicing your account immediately. Failure to make such notification within three (3) days of receipt of this document constitutes your acceptance of the transaction(s).

**Unless you have directed that the order be executed on a specified exchange or market and we have agreed to such execution, we will, at our sole discretion and without prior notification to you, execute any of your orders to purchase or sell securities on the over-the-counter market in any location or on any exchange, including a foreign exchange, where such security is traded, either on a principal or agency basis.**

The firm receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. When such remuneration is received, it is considered compensation to the firm, and the source and amount of any compensation received by the firm in connection with your transaction will be disclosed upon request.

**For NASDAQ principal transactions: Any mark-up or mark-down shown on the front of this Confirmation represents the difference between the reported price to NASDAQ and your price. Your Financial Consultant receives a portion of any mark-up or mark-down as compensation in connection with these transactions, and may receive additional compensation from these transactions. Your Financial Consultant usually receives compensation from transactions that have no mark-up or mark-down. Per share prices and per share mark-ups or mark-downs will be furnished on request.**

Should the Firm communicate an erroneous report of an execution that is more favorable than the actual execution price the Firm may at its discretion, and without notice to you, automatically pass on the price improvement to you.

A. When applicable; the transaction(s) set forth on the front of this confirmation constitutes an offer to the client made pursuant to the information contained in the enclosed prospectus or official statement.

B. Descriptive words in the title of any security are used for identification purposes only, and do not constitute representations.

C. The time of execution will be furnished upon written request. In transactions where we act as agent, the name of buyer and seller will be furnished on written request.

D. For Debt Securities, call features may exist in addition to those described on the front of this confirmation. Debt securities subject to call features or other redemption features such as sinking funds, may be redeemed in whole or in part before maturity. Such occurrences may affect yield. Please contact your Financial Consultant for further information. Yields on mortgage-backed securities (MBS) are quoted as a Corporate Bond Equivalent Yield (BEY). Actual yield may vary based on prepayment rates. Total amount due on MBS may be subject to change after settlement date due to factor changes. Additional information will be provided upon request.

E. For Zero Coupon, Compound Interest and Multiplier securities, no periodic payments of interest or principal are generally made. These securities may be callable at a price below their maturity value without prior notice by mail to holder unless the holder has requested these securities be held in registered form. Unless specifically requested and agreed to by us, clients' securities will not be held in registered form. Additional information will be furnished upon request.

F. For the purpose of evaluating Federal Deposit Insurance, CDs are aggregated with all other deposits held by a client in the same legal capacity at the issuing institution. The insurance limit is $100,000 combined principal and interest for interest bearing CDs or accreted value for zero-coupon CDs.

G. If this confirmation relates to a debt obligation in bearer form, we agree to satisfy the conditions set forth in U.S. Treasury regulation sections 1.165-12(c)(3), and covenants with you to deliver the obligation in bearer form in accordance with the requirements of paragraph (c)(1)(ii) and (iv) of those regulations. The regulations prohibit deliveries, and restrict resales of obligations in bearer form within the United States, and may affect the resale market for such obligations. Consult your tax advisor.

H. For certain asset-backed debt securities, the actual yield may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning factors that affect yield (including estimated yield, weighted average life and the prepayment assumptions underlying yield) will be furnished upon written request.

I. Rating information is provided based on good faith inquiry, but its accuracy or completeness cannot be guaranteed.

J. Structured debt securities differ substantially from standard fixed income obligations. Risks include unpredictable movements of the related index, increased volatility, reduced liquidity, and unusual call features leading to premature returns of capital that can reduce expected yield.

4/2003

**Your Broker/Dealer Is**

**CITIGROUP GLOBAL MARKETS INC.**

Stock Plan Services
U.S. Service Center
100 Citibank Drive
San Antonio, TX 78245

SMITH BARNEY
citigroup

Account Number:                    XXX-XX-X173 Plan 24M

San Antonio
Service Center                    1-800-303-3508

BRIAN      MEHLMAN
25 HAZEL AVENUE
NASHUA      NH 03062

---

NETWORK APPLIANCE INC
CANCEL
YOUR OPEN ORDER OF 08/26/04
WAS CANCELLED ON  09/10/04
Plan # 06   ID XXXXXX173
NQ   Grant ID 020207
Exercise Quantity      583
Limit Price      23.5000

---

Order Date:  08/26/04          CUSIP#  64120L 10 4        Unsolicited Order
Market:                        Security#  N279754          Cash Acct
                               Symbol:  NTAP               Ref#:  0001220

We acted as your agent in this transaction.

---

M0239

Citigroup Global Markets Inc., member NYSE, NASD and other principal exchanges. Smith Barney is a division and service mark of Citigroup Global Markets Inc. and its affiliates and is used and registered throughout the world. CITIGROUP and the Umbrella Device are trademarks and service marks of Citicorp or its affiliates and are used and registered throughout the world. Citigroup Global Markets Inc. is a member of the Securities Investor Protection Corporation (SIPC).

As a reminder, payment for securities purchased or delivery of securities sold must be deposited with us by the Settlement Date. See reverse for further details. Keep this document for your records. Thank you for doing business with us.

Please review this document carefully. If the details of any transaction are incorrect, you must notify the Branch Manager of the office servicing your account immediately. Failure to make such notification within three (3) days of receipt of this document constitutes your acceptance of the transaction(s).

**Unless you have directed that the order be executed on a specified exchange or market and we have agreed to such execution, we will, at our sole discretion and without prior notification to you, execute any of your orders to purchase or sell securities on the over-the-counter market in any location or on any exchange, including a foreign exchange, where such security is traded, either on a principal or agency basis.**

**The firm receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. When such remuneration is received, it is considered compensation to the firm, and the source and amount of any compensation received by the firm in connection with your transaction will be disclosed upon request.**

**For NASDAQ principal transactions: Any mark-up or mark-down shown on the front of this Confirmation represents the difference between the reported price to NASDAQ and your price. Your Financial Consultant receives a portion of any mark-up or mark-down as compensation in connection with these transactions, and may receive additional compensation from these transactions. Your Financial Consultant usually receives compensation from transactions that have no mark-up or mark-down. Per share prices and per share mark-ups or mark-downs will be furnished on request.**

**Should the Firm communicate an erroneous report of an execution that is more favorable than the actual execution price the Firm may at its discretion, and without notice to you, automatically pass on the price improvement to you.**

A. When applicable, the transaction(s) set forth on the front of this confirmation constitutes an offer to the client made pursuant to the information contained in the enclosed prospectus or official statement.

B. Descriptive words in the title of any security are used for identification purposes only, and do not constitute representations.

C. The time of execution will be furnished upon written request. In transactions where we act as agent, the name of buyer and seller will be furnished on written request.

D. For Debt Securities, call features may exist in addition to those described on the front of this confirmation. Debt securities subject to call features or other redemption features such as sinking funds, may be redeemed in whole or in part before maturity. Such occurrences may affect yield. Please contact your Financial Consultant for further information. Yields on mortgage-backed securities (MBS) are quoted as a Corporate Bond Equivalent Yield (BEY). Actual yield may vary based on prepayment rates. Total amount due on MBS may be subject to change after settlement date due to factor changes. Additional information will be provided upon request.

E. For Zero Coupon, Compound Interest and Multiplier securities, no periodic payments of interest or principal are generally made. These securities may be callable at a price below their maturity value without prior notice by mail to holder unless the holder has requested these securities be held in registered form. Unless specifically requested and agreed to by us, clients' securities will not be held in registered form. Additional information will be furnished upon request.

F. For the purpose of evaluating Federal Deposit Insurance, CDs are aggregated with all other deposits held by a client in the same legal capacity at the issuing institution. The insurance limit is $100,000 combined principal and interest for interest bearing CDs or accreted value for zero-coupon CDs.

G. If this confirmation relates to a debt obligation in bearer form, we agree to satisfy the conditions set forth in U.S. Treasury regulation sections 1.165–12(c)(3), and covenants with you to deliver the obligation in bearer form in accordance with the requirements of paragraph (c)(1)(ii) and (iv) of those regulations. The regulations prohibit deliveries, and restrict resales of obligations in bearer form within the United States, and may affect the resale market for such obligations. Consult your tax advisor.

H. For certain asset-backed debt securities, the actual yield may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning factors that affect yield (including estimated yield, weighted average life and the prepayment assumptions underlying yield) will be furnished upon written request.

I. Rating information is provided based on good faith inquiry, but its accuracy or completeness cannot be guaranteed.

J. Structured debt securities differ substantially from standard fixed income obligations. Risks include unpredictable movements of the related index, increased volatility, reduced liquidity, and unusual call features leading to premature returns of capital that can reduce expected yield.

4/2003

M0240

CITIGROUP GLOBAL MKTS INC.
2775 SAND HILL ROAD
SUITE 120
MENLO PARK CA 94025

Account Number:      740-52841-1-3-768
Financial Consultant:  STEVEN DANIELS
                       650-926-7600

||l....ll.ll...ll...ll..ll.ll.l.lll.l.l.l.l..l.l.l.l.l.l.l
BRIAN MEHLMAN                #1,048
25 HAZEL AVE.
NASHUA NH 03062-1448

n SEPTEMBER 28TH, 2004, we cancelled your Good Till Cancelled order to sell 1,395 at a price of 22.0.

ETWORK APPLIANCE INC

rder Date: 09/28/2004          CUSIP#:   64120L-10-4
                               Security#: N279754        Cash Acct.
                               Symbol:   NTAP

tigroup Global Markets Inc., member NYSE, NASD and other principal exchanges. Smith Barney is a division and service mark of Citigroup
obal Markets Inc. and its affiliates and is used and registered throughout the world. CITIGROUP and the Umbrella Device are trademarks
d service marks of Citicorp or its affiliates and are used and registered throughout the world. Citigroup Global Markets Inc.
a member of the Securities Investor Protection Corporation (SIPC).
a reminder, payment for securities purchased or delivery of securities sold must be deposited with us by the Settlement Date.
e reverse for further details. Keep this document for your records. Thank you for doing business with us.          09/28/2004   SD-001252-S

M0241

Please review this document carefully. If the details of any transaction are incorrect, you must notify the Branch Manager of the office servicing your account immediately. Failure to make such notification within three (3) days of receipt of this document constitutes your acceptance of the transaction(s).

Unless you have directed that the order be executed on a specified exchange or market and we have agreed to such execution, we will, at our sole discretion and without prior notification to you, execute any of your orders to purchase or sell securities on the over-the-counter market in any location or on any exchange, including a foreign exchange, where such security is traded, either on a principal or agency basis.

The firm receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. When such remuneration is received, it is considered compensation to the firm, and the source and amount of any compensation received by the firm in connection with your transaction will be disclosed upon request.

For NASDAQ principal transactions: Any mark-up or mark-down shown on the front of this Confirmation represents the difference between the reported price to NASDAQ and your price. Your Financial Consultant receives a portion of any mark-up or mark-down as compensation in connection with these transactions, and may receive additional compensation from these transactions. Your Financial Consultant usually receives compensation from transactions that have no mark-up or mark-down. Per share prices and per share mark-ups or mark-downs will be furnished on request.

Should the Firm communicate an erroneous report of an execution that is more favorable than the actual execution price the Firm may at its discretion, and without notice to you, automatically pass on the price improvement to you.

A. When applicable, the transaction(s) set forth on the front of this confirmation constitutes an offer to the client made pursuant to the information contained in the enclosed prospectus or official statement.

B. Descriptive words in the title of any security are used for identification purposes only, and do not constitute representations.

C. The time of execution will be furnished upon written request. In transactions where we act as agent, the name of buyer and seller will be furnished on written request.

D. For Debt Securities, call features may exist in addition to those described on the front of this confirmation. Debt securities subject to call features or other redemption features such as sinking funds, may be redeemed in whole or in part before maturity. Such occurrences may affect yield. Please contact your Financial Consultant for further information. Yields on mortgage-backed securities (MBS) are quoted as a Corporate Bond Equivalent Yield (BEY). Actual yield may vary based on prepayment rates. Total amount due on MBS may be subject to change after settlement date due to factor changes. Additional information will be provided upon request.

E. For Zero Coupon, Compound Interest and Multiplier securities, no periodic payments of interest or principal are generally made. These securities may be callable at a price below their maturity value without prior notice by the holder to holder unless the holder has requested these securities be held in registered form. Unless specifically requested and agreed to by us, clients' securities will not be held in registered form. Additional information will be furnished upon request.

F. For the purpose of evaluating Federal Deposit Insurance, CDs are aggregated with all other deposits held by a client in the same legal capacity at the issuing institution. The insurance limit is $100,000 combined principal and interest for interest bearing CDs or accreted value for zero-coupon CDs.

G. If this confirmation relates to a debt obligation in bearer form, we agree to satisfy the conditions set forth in U.S. Treasury regulation sections 1.165-12(c)(3), and covenants with you to deliver the obligation in bearer form in accordance with the requirements of paragraph (c)(1)(ii) and (iv) of those regulations. The regulations prohibit deliveries, and restrict resales of obligations in bearer form within the United States, and may affect the resale market for such obligations. Consult your tax advisor.

H. For certain asset-backed debt securities, the actual yield may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning factors that affect yield (including estimated yield, weighted average life and the prepayment assumptions underlying yield) will be furnished upon written request.

I. Rating information is provided based on good faith inquiry, but its accuracy or completeness cannot be guaranteed.

J. Structured debt securities differ substantially from standard fixed income obligations. Risks include unpredictable movements of the related index, increased volatility, reduced liquidity, and unusual call features leading to premature returns of capital that can reduce expected yield.

4/2003

**SMITH BARNEY**
**citigroup**

CITIGROUP GLOBAL MKTS INC.
2775 SAND HILL ROAD
SUITE 120
MENLO PARK CA 94025

Account Number: 740-52841-1-3-768
Financial Consultant: STEVEN DANIELS
650-926-7600

BRIAN MEHLMAN                    #1,048
25 HAZEL AVE.
NASHUA NH 03062-1448

ou Sold 1,395 shares

ETWORK APPLIANCE INC
ASHLESS EXERCISE
PT PRICE TO NASDAQ: 22.02
E ARE A MARKET MAKER

| | |
|---|---|
| Gross Amount | $ 30,717.90 |
| Charge / Mark-down | 111.60 |
| SEC Fee | .72 |
| Transaction Fee | 5.00 |
| **Amount** | **$ 30,600.58** |
| **Settlement Date** | **10/01/2004** |

ade Date: 09/28/2004       CUSIP#:   64120L-10-4     Unsolicited Order
arket: Over-The-Counter    Security#: N279754        Cash Acct.              HOLD PROCEEDS
                           Symbol:    NTAP           Ref #: 47541

e acted as principal in this transaction.

tigroup Global Markets Inc., member NYSE, NASD and other principal exchanges. Smith Barney is a division and service mark of Citigroup
obal Markets Inc. and its affiliates and is used and registered throughout the world. CITIGROUP and the Umbrella Device are trademarks
id service marks of Citicorp or its affiliates and are used and registered throughout the world. Citigroup Global Markets Inc.
a member of the Securities Investor Protection Corporation (SIPC).
: a reminder, payment for securities purchased or delivery of securities sold must be deposited with us by the Settlement Date.
ie reverse for further details. Keep this document for your records. Thank you for doing business with us.              09/28/2004  SD-001253-S

M0243

Please review this document carefully. If the details of any transaction are incorrect, you must notify the Branch Manager of the office servicing your account immediately. Failure to make such notification within three (3) days of receipt of this document constitutes your acceptance of the transaction(s).

Unless you have directed that the order be executed on a specified exchange or market and we have agreed to such execution, we will, at our sole discretion and without prior notification to you, execute any of your orders to purchase or sell securities on the over-the-counter market in any location or on any exchange, including a foreign exchange, where such security is traded, either on a principal or agency basis.

The firm receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. When such remuneration is received, it is considered compensation to the firm, and the source and amount of any compensation received by the firm in connection with your transaction will be disclosed upon request.

For NASDAQ principal transactions: Any mark-up or mark-down shown on the front of this Confirmation represents the difference between the reported price to NASDAQ and your price. Your Financial Consultant receives a portion of any mark-up or mark-down as compensation in connection with these transactions, and may receive additional compensation from these transactions. Your Financial Consultant usually receives compensation from transactions that have no mark-up or mark-down. Per share prices and per share mark-ups or mark-downs will be furnished on request.

Should the Firm communicate an erroneous report of an execution that is more favorable than the actual execution price the Firm may at its discretion, and without notice to you, automatically pass on the price improvement to you.

A. When applicable, the transaction(s) set forth on the front of this confirmation constitutes an offer to the client made pursuant to the information contained in the enclosed prospectus or official statement.

B. Descriptive words in the title of any security are used for identification purposes only, and do not constitute representations.

C. The time of execution will be furnished upon written request. In transactions where we act as agent, the name of buyer and seller will be furnished on written request.

D. For Debt Securities, call features may exist in addition to those described on the front of this confirmation. Debt securities subject to call features or other redemption features such as sinking funds, may be redeemed in whole or in part before maturity. Such occurrences may affect yield. Please contact your Financial Consultant for further information. Yields on mortgage-backed securities (MBS) are quoted as a Corporate Bond Equivalent Yield (BEY). Actual yield may vary based on prepayment rates. Total amount due on MBS may be subject to change after settlement date due to factor changes. Additional information will be provided upon request.

E. For Zero Coupon, Compound Interest and Multiplier securities, no periodic payments of interest or principal are generally made. These securities may be callable at a price below their maturity value without prior notice by mail to holder unless the holder has requested these securities be held in registered form. Unless specifically requested and agreed to by us, clients' securities will not be held in registered form. Additional information will be furnished upon request.

F. For the purpose of evaluating Federal Deposit Insurance, CDs are aggregated with all other deposits held by a client in the same legal capacity at the issuing institution. The insurance limit is $100,000 combined principal and interest for interest bearing CDs or accreted value for zero-coupon CDs.

G. If this confirmation relates to a debt obligation in bearer form, we agree to satisfy the conditions set forth in U.S. Treasury regulation sections 1.165-12(c)(3), and covenants with you to deliver the obligation in bearer form in accordance with the requirements of paragraph (c)(1)(iii) and (iv) of those regulations. The regulations prohibit deliveries, and restrict resales of obligations in bearer form within the United States, and may affect the resale market for such obligations. Consult your tax advisor.

H. For certain asset-backed debt securities, the actual yield may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning factors that affect yield (including estimated yield, weighted average life and the prepayment assumptions underlying yield) will be furnished upon written request.

I. Rating information is provided based on good faith inquiry, but its accuracy or completeness cannot be guaranteed.

J. Structured debt securities differ substantially from standard fixed income obligations. Risks include unpredictable movements of the related index, increased volatility, reduced liquidity, and unusual call features leading to premature returns of capital that can reduce expected yield.

4/2003

CITIGROUP GLOBAL MKTS INC.
2775 SAND HILL ROAD
SUITE 120
MENLO PARK  CA 94025

Account Number: 740-52841-1-3-768
Financial Consultant: STEVEN DANIELS
650-926-7600

Page 1 of **1**

IIII.....III.....III.....IIII.....III.II.II.II.II.II.II.II.II.II.I
BRIAN MEHLMAN                    #838
25 HAZEL AVE.
NASHUA NH 03062-1448

| | |
|---|---|
| Summary For Settlement Date | 10/01/2004 |
| Total Sales | $ 5,945.60 |
| Net Amount | $ 5,945.60  Debit |

We Cancelled your sale of 1,395 shares

NETWORK APPLIANCE INC
CASHLESS EXERCISE
RPT PRICE TO NASDAQ: 22.02
WE ARE A MARKET MAKER
TO CXL PREVIOUS SELL

| | |
|---|---|
| Gross Amount | $ 30,717.90 |
| Charge / Mark-down | 111.60 |
| SEC Fee | .72 |
| Transaction Fee | 5.00 |
| **Amount** | **$ 30,600.58** |
| Settlement Date | 10/01/2004 |

Trade Date: 09/28/2004      CUSIP#:   64120L-10-4      Unsolicited Order
Market: Over-The-Counter     Security#: N279754           Cash Acct.
                             Symbol:   NTAP              Ref #: 47541          HOLD PROCEEDS

We acted as principal in this transaction.

You Sold 1,124 shares

NETWORK APPLIANCE INC
CASHLESS EXERCISE
RPT PRICE TO NASDAQ: 22.02
WE ARE A MARKET MAKER
TRADE AS OF 09/28/04

| | |
|---|---|
| Gross Amount | $ 24,750.48 |
| Charge / Mark-down | 89.92 |
| SEC Fee | .58 |
| Transaction Fee | 5.00 |
| **Amount** | **$ 24,654.98** |
| Settlement Date | 10/01/2004 |

Trade Date: 09/28/2004      CUSIP#:   64120L-10-4      Unsolicited Order
Market: Over-The-Counter     Security#: N279754           Cash Acct.
                             Symbol:   NTAP              Ref #: 47541          HOLD PROCEEDS

We acted as principal in this transaction.

M0245

Citigroup Global Markets Inc., member NYSE, NASD and other principal exchanges. Smith Barney is a division and service mark of Citigroup
Global Markets Inc. and its affiliates and is used and registered throughout the world. CITIGROUP and the Umbrella Device are trademarks
and service marks of Citicorp or its affiliates and are used and registered throughout the world. Citigroup Global Markets Inc.,
a member of the Securities Investor Protection Corporation (SIPC).
As a reminder, payment for securities purchased or delivery of securities sold must be deposited with us by the Settlement Date.
See reverse for further details. Keep this document for your records. Thank you for doing business with us.        09/29/2004  SD-001584-L

Please review this document carefully. If the details of any transaction are incorrect, you must notify the Branch Manager of the office servicing your account immediately. Failure to make such notification within three (3) days of receipt of this document constitutes your acceptance of the transaction(s).

**Unless you have directed that the order be executed on a specified exchange or market and we have agreed to such execution, we will, at our sole discretion and without prior notification to you, execute any of your orders to purchase or sell securities on the over-the-counter market in any location or on any exchange, including a foreign exchange, where such security is traded, either on a principal or agency basis.**

**The firm receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. When such remuneration is received, it is considered compensation to the firm, and the source and amount of any compensation received by the firm in connection with your transaction will be disclosed upon request.**

**For NASDAQ principal transactions: Any mark-up or mark-down shown on the front of this Confirmation represents the difference between the reported price to NASDAQ and your price. Your Financial Consultant receives a portion of any mark-up or mark-down as compensation in connection with these transactions, and may receive additional compensation from these transactions. Your Financial Consultant usually receives compensation from transactions that have no mark-up or mark-down. Per share prices and per share mark-ups or mark-downs will be furnished on request.**

**Should the Firm communicate an erroneous report of an execution that is more favorable than the actual execution price the Firm may at its discretion, and without notice to you, automatically pass on the price improvement to you.**

A. When applicable, the transaction(s) set forth on the front of this confirmation constitutes an offer to the client made pursuant to the information contained in the enclosed prospectus or official statement.

B. Descriptive words in the title of any security are used for identification purposes only, and do not constitute representations.

C. The time of execution will be furnished upon written request. In transactions where we act as agent, the name of buyer and seller will be furnished on written request.

D. For Debt Securities, call features may exist in addition to those described on the front of this confirmation. Debt securities subject to call features or other redemption features such as sinking funds, may be redeemed in whole or in part before maturity. Such occurrences may affect yield. Please contact your Financial Consultant for further information. Yields on mortgage-backed securities (MBS) are quoted as a Corporate Bond Equivalent Yield (BEY). Actual yield may vary based on prepayment rates. Total amount due on MBS may be subject to change after settlement date due to factor changes. Additional information will be provided upon request.

E. For Zero Coupon, Compound Interest and Multiplier securities, no periodic payments of interest or principal are generally made. These securities may be callable at a price below their maturity value without prior notice by mail to holder unless the holder has requested these securities be held in registered form. Unless specifically requested and agreed to by us, clients' securities will not be held in registered form. Additional information will be furnished upon request.

F. For the purpose of evaluating Federal Deposit Insurance, CDs are aggregated with all other deposits held by a client in the same legal capacity at the issuing institution. The insurance limit is $100,000 combined principal and interest for interest bearing CDs or accreted value for zero-coupon CDs.

G. If this confirmation relates to a debt obligation in bearer form, we agree to satisfy the conditions set forth in U.S. Treasury regulation sections 1.165-12(c)(3), and covenants with you to deliver the obligation in bearer form in accordance with the requirements of paragraph (c)(1)(ii) and (iv) of those regulations. The regulations prohibit deliveries, and restrict resales of obligations in bearer form within the United States, and may affect the resale market for such obligations. Consult your tax advisor.

H. For certain asset-backed debt securities, the actual yield may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning factors that affect yield (including estimated yield, weighted average life and the prepayment assumptions underlying yield) will be furnished upon written request.

I. Rating information is provided based on good faith inquiry, but its accuracy or completeness cannot be guaranteed.

J. Structured debt securities differ substantially from standard fixed income obligations. Risks include unpredictable movements of the related index, increased volatility, reduced liquidity, and unusual call features leading to premature returns of capital that can reduce expected yield.

4/2003

M0246

**Citigroup**

CITIGROUP GLOBAL MKTS INC
2775 SAND HILL ROAD
SUITE 120
MENLO PARK CA 94025

Account Number:     740-52841-1-3-768
Financial Consultant:    STEVEN DANIELS
                    650-926-7600

Page 1 of 1

BRIAN MEHLMAN                #1,495
25 HAZEL AVE.
NASHUA NH 03062-1448

| | Summary For Settlement Date | 10/06/2004 |
|---|---|---|
| | Total Sales | $ 492.41 |
| | Net Amount | $ 492.41  Credit |

You Sold 770 shares

NETWORK APPLIANCE INC
SOMEMPLID XXXXXX173
EXERCISE QUANTITY_____770
GRANT PRICE_____22.9400
OPTION COST_____17,663.80
FEDERAL TAX_____184.80
FICA TAX1_____45.83
FICA TAX2_____10.72
SEC FEE_____.44
TRANSACTION FEE_____5.00
Px Inclds Mark-dwn:  0
RPT PRICE TO NASDAQ: 23.90000
VS NO COST
WE ARE A MARKET MAKER

| | | |
|---|---|---|
| Gross Amount | $ 18,403.00 |
| Total Exercise Costs | 17,910.59 |
| **Amount** | **$ 492.41** |
| **Settlement Date** | **10/06/2004** |

Trade Date: 10/01/2004         CUSIP#:  64120L-10-4        Unsolicited Order
Market: Over-The-Counter       Security#: N279754          Cash Acct.
                               Symbol:   NTAP              Ref #: 509584

We acted as principal in this transaction.

M0247

Citigroup Global Markets Inc., member NYSE, NASD and other principal exchanges. Smith Barney is a division and service mark of Citigroup Global Markets Inc. and its affiliates and is used and registered throughout the world. CITIGROUP and the Umbrella Device are trademarks and service marks of Citicorp or its affiliates and are used and registered throughout the world. Citigroup Global Markets Inc. is a member of the Securities Investor Protection Corporation (SIPC).
As a reminder, payment for securities purchased or delivery of securities sold must be deposited with us by the Settlement Date.
See reverse for further details. Keep this document for your records. Thank you for doing business with us.

10/01/2004  SD-003392-L

Please review this document carefully. If the details of any transaction are incorrect, you must notify the Branch Manager of the office servicing your account immediately. Failure to make such notification within three (3) days of receipt of this document constitutes your acceptance of the transaction(s).

Unless you have directed that the order be executed on a specified exchange or market and we have agreed to such execution, we will, at our sole discretion and without prior notification to you, execute any of your orders to purchase or sell securities on the over-the-counter market in any location or on any exchange, including a foreign exchange, where such security is traded, either on a principal or agency basis.

The firm receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. When such remuneration is received, it is considered compensation to the firm, and the source and amount of any compensation received by the firm in connection with your transaction will be disclosed upon request.

For NASDAQ principal transactions: Any mark-up or mark-down shown on the front of this Confirmation represents the difference between the reported price to NASDAQ and your price. Your Financial Consultant receives a portion of any mark-up or mark-down as compensation in connection with these transactions, and may receive additional compensation from these transactions. Your Financial Consultant usually receives compensation from transactions that have no mark-up or mark-down. Per share prices and per share mark-ups or mark-downs will be furnished on request.

Should the Firm communicate an erroneous report of an execution that is more favorable than the actual execution price the Firm may at its discretion, and without notice to you, automatically pass on the price improvement to you.

A. When applicable, the transaction(s) set forth on the front of this confirmation constitutes an offer to the client made pursuant to the information contained in the enclosed prospectus or official statement.

B. Descriptive words in the title of any security are used for identification purposes only, and do not constitute representations.

C. The time of execution will be furnished upon written request. In transactions where we act as agent, the name of buyer and seller will be furnished on written request.

D. For Debt Securities, call features may exist in addition to those described on the front of this confirmation. Debt securities subject to call features or other redemption features such as sinking funds, may be redeemed in whole or in part before maturity. Such occurrences may affect yield. Please contact your Financial Consultant for further information. Yields on mortgage-backed securities (MBS) are quoted as a Corporate Bond Equivalent Yield (BEY). Actual yield may vary based on prepayment rates. Total amount due on MBS may be subject to change after settlement date due to factor changes. Additional information will be provided upon request.

E. For Zero Coupon, Compound Interest and Multiplier securities, no periodic payments of interest or principal are generally made. These securities may be callable at a price below their maturity value without prior notice by mail to holder unless the holder has requested these securities be held in registered form. Unless specifically requested and agreed to by us, clients' securities will not be held in registered form. Additional information will be furnished upon request.

F. For the purpose of evaluating Federal Deposit Insurance, CDs are aggregated with all other deposits held by a client in the same legal capacity at the issuing institution. The insurance limit is $100,000 combined principal and interest for interest bearing CDs or accreted value for zero-coupon CDs.

G. If this confirmation relates to a debt obligation in bearer form, we agree to satisfy the conditions set forth in U.S. Treasury regulation sections 1.165-12(c)(3), and covenants with you to deliver the obligation in bearer form in accordance with the requirements of paragraph (c)(1)(ii) and (iv) of those regulations. The regulations prohibit deliveries, and restrict resales of obligations in bearer form within the United States, and may affect the resale market for such obligations. Consult your tax advisor.

H. For certain asset-backed debt securities, the actual yield may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning factors that affect yield (including estimated yield, weighted average life and the prepayment assumptions underlying yield) will be furnished upon written request.

I. Rating information is provided based on good faith inquiry, but its accuracy or completeness cannot be guaranteed.

J. Structured debt securities differ substantially from standard fixed income obligations. Risks include unpredictable movements of the related index, increased volatility, reduced liquidity, and unusual call features leading to premature returns of capital that can reduce expected yield.

4/2003

M0248

# SMITHBARNEY
## citigroup

Ref: 00000675 00003948

74010476852841000000675 304268AA01 CPGF0001A
**BRIAN MEHLMAN**
25 HAZEL AVE.
NASHUA NH 03062-1448

## Client Statement
### June 28 - September 26, 2004

*Account number 740-5284173*

**Your Broker/Dealer is**
**CITIGROUP GLOBAL MKTS INC.**
*Your Financial Consultant*
STEVEN DANIELS
2775 SAND HILL ROAD
SUITE 120
MENLO PARK CA 94025
650-926-7600
Email: steven.daniels@smithbarney.com
www.smithbarney.com

Branch: 800-585-7109

Citigroup Global Markets Inc., member NYSE, NASD, and other principal exchanges. Smith Barney is a division and service mark of Citigroup Global Markets Inc. and its affiliates and is used and registered throughout the world. CITIGROUP and the Umbrella Device are trademarks and service marks of Citicorp or its affiliates and are used and registered throughout the world. Citigroup Global Markets Inc. is a member of the Securities Investor Protection Corporation (SIPC).

## Account value

| | Last period | This period |
|---|---|---|
| Stocks | $ 253.56 | $ 275.28 |
| **Total value** | **$ 253.56** | **$ 275.28** |

## Cash, money fund, bank deposits

| | This period |
|---|---|
| Opening balance | $ 0.00 |
| Securities bought and other subtractions | 0.00 |
| Securities sold and other additions | 5,092.37 |
| Withdrawals | (5,092.37) |
| **Closing balance** | **$ 0.00** |

A free credit balance in any securities account may be paid to you on demand. Although properly accounted for on our books and records, these funds may be used for our business purposes.

M0249

# SMITHBARNEY
## citigroup

Ref: 00000675 00003949

## Client Statement
### June 28 – September 26, 2004

**BRIAN MEHLMAN**

**Account number 740-52841-19 7**

### PORTFOLIO DETAILS
The values of your holdings are as of 09/24/04.

Securities purchased or sold are included or excluded in this section as of the trade-date. This section may include securities that have not settled as of this statement closing date. Please see the "Unsettled purchases/sales" section for more information. Dividend yield is the estimated annual income, assuming the current dividend, divided by the security's market price at the end of the statement period. We do not guarantee the accuracy of the prices reflected on the statement nor do these prices represent levels at which securities can be bought or sold. Please note unrealized gain/(loss) is being prepared for informational purposes only and should not be used for tax preparation without the assistance of your tax advisor.

## Stocks

### Common stocks

| | No. of shares | Price | Yield | Anticipated Income (annualized) | U.S. Dollar Market value | Comment |
|---|---|---|---|---|---|---|
| NETWORK APPLIANCE INC | 12 | $ 22.94 | | $ 0.00 | $ 275.28 | Symbol: NTAP Rating:S&P* :2 |
| **Total stocks** | | | | | **$ 275.28** | |

Smith Barney and independent, third-party research ratings may be shown for certain securities. All research ratings represent the "opinions" of the research provider and are not representations or guarantees of performance. Because the research report contains more complete information regarding the analyst's opinions, analysis, and rating, you should read the entire research report and not infer its contents from the rating. Smith Barney's stock recommendations include an Investment rating and risk rating. The Investment Rating Code (1, 2 or 3) is a function of Smith Barney's expectation of total return (forecast price appreciation and dividend yield within the next 12 months) and a Risk Rating. The Risk Rating (L, M, H or S) represents the stock's expected risk, taking into account price volatility and fundamental criteria. Please refer to the end of this statement for a guide describing Smith Barney's research ratings. Independent, third-party research ratings have been normalized by such third-party providers to a 1 (Buy), 2 (Hold), and 3 (Sell). Smith Barney is not the author of, does not take responsibility for, and does not guarantee the accuracy, completeness, or timeliness of the independent, third-party research. Except as noted by an asterisk (*), each independent research provider was selected by an Independent Consultant as required under the Global Research Analyst Settlement.

M0250

# SMITHBARNEY
## citigroup

Ref: 00000675 00003950

## Client Statement
### June 28 - September 26, 2004

**BRIAN MEHLMAN**

Account number 740-52841-13

## TRANSACTION DETAILS
*All transactions appearing are based on trade date.*

### Investment activity

| Date | Activity | Description | Quantity | Price | Amount |
|---|---|---|---|---|---|
| 09/14/04 | Sold | NETWORK APPLIANCE INC<br>SOMEMPLID XXXXX173<br>EXERCISE QUANTITY   812<br>GRANT PRICE   18.6250<br>OPTION COST   15,123.50<br>FEDERAL TAX   821.14<br>FICA TAX1   203.64<br>FICA TAX2   47.63<br>SEC FEE   .44<br>TRANSACTION FEE   5.00<br>Px Incids Mark-dwn:   0<br>VS NO COST | -812 | $ 22.67 | $ 2,005.39 |
| 09/14/04 | Sold | NETWORK APPLIANCE INC<br>SOMEMPLID XXXXX173<br>EXERCISE QUANTITY   583<br>GRANT PRICE   15.3200<br>OPTION COST   8,931.56<br>FEDERAL TAX   1,071.26<br>FICA TAX1   265.67<br>FICA TAX2   62.13<br>SEC FEE   .31<br>Px Incids Mark-dwn:   0<br>VS NO COST | -583 | 22.67 | 2,885.08 |

**Total securities bought and other subtractions**   $ 0.00

**Total securities sold and other additions**   $ 5,092.37

## Open Orders

*This section shows "Good until cancelled" and "Good until executed" (eligible for off hours trading) orders you requested that were not executed by the statement date. Please review these for accuracy, and notify your Financial Consultant if you wish to change them.*

| Activity/Date | Description | Exchange | No. of shares | Order price | Current price | Special Instructions |
|---|---|---|---|---|---|---|
| Sell<br>09/10/04 | NETWORK APPLIANCE INC | OTC | 1,395 | $ 22.00 | $ 22.94 | Stop |

M0251

# SMITH BARNEY
## citigroup

Ref: 00000675 00003951

## Client Statement
### June 28 - September 26, 2004

**BRIAN MEHLMAN**

Account number 740-52841-13076

## Other security activity

| Date | Activity | Description | Reference no. | Quantity | Value |
|------|----------|-------------|---------------|----------|-------|
| 09/16/04 | Received | NETWORK APPLIANCE INC<br>SOS - STKRCV TO RETAIL ACCT | | 812 | $ 18,302.48 |
| 09/16/04 | Received | NETWORK APPLIANCE INC<br>SOS - STKRCV TO RETAIL ACCT | | 583 | 13,140.82 |
| Net value of securities deposited/withdrawn | | | | | $ 31,443.30 |

## Withdrawals

| Date | Description | Reference no. | Amount |
|------|-------------|---------------|--------|
| 09/17/04 | 24M034582173   CK NO 00574984 | | 5,092.37 |

| Date | Description | Reference no. | Amount |
|------|-------------|---------------|--------|

M0252

# SMITHBARNEY
## citigroup♪

Ref: 00000675 00003952

## Client Statement
### June 28 - September 26, 2004

**BRIAN MEHLMAN**                    **Account number 740-52841-13**

## Guide to Investment Ratings

**Stock Ratings**

Investment ratings are based upon Smith Barney's expectation of total return (forecast price appreciation plus dividend yield within the next 12 months) and risk rating.

Developed Markets  (US, UK, Europe, Japan, and Australia/New Zealand)

| Code | Rating | Expected Total Return |
|------|--------|----------------------|
| 1 | Buy | 10% or more for Low-Risk stocks, 15% or more for Medium-Risk stocks, 20% or more for High-Risk stocks, and 35% or more for Speculative stocks |
| 2 | Hold | 0-10% for Low-Risk stocks, 0-15% for Medium-Risk stocks, 0-20% for High-Risk stocks, and 0-35% for Speculative stocks |
| 3 | Sell | Negative total return |

**Stock Risk**

Takes into account price volatility and a select list of fundamental criteria.

| Code | Rating | Definitions |
|------|--------|-------------|
| L | Low | High predictability of financial results and low volatility |
| M | Medium | Moderate predictability of financial results and volatility |
| H | High | Low predictability of financial results and high volatility |
| S | Speculative | Exceptionally low financial predictability, highest risk and volatility |

**Message:**  Important items to note regarding the new Smith Barney Accel℠ Program as noted in your September statement insert:

* The new Smith Barney Accel Program will replace the current Preferred Client℠ and the Select Client℠ programs.
* FMA Cardholders will have the ability to deposit and withdraw funds in their FMA accounts at U.S. and Puerto Rico based Citibank locations, only.
* Effective January 1, 2005, the International FMA fee (which is also an FMA PLUS account) will become $150.  Please refer to the 'In The Know' statement insert regarding additional benefits now available for FMA PLUS clients.
* The Citigroup Chairman℠ Card is only available for qualifying U.S. domestic based clients.

Not all products and services are available in all jurisdictions, and are subject to all local regulatory standards.  Contact your Financial Consultant for more information.

**Message:**  Independent, third-party research on certain companies covered by the firm's research is available to clients of the firm at no cost. Clients can access this research at www.smithbarney.com or call 1-866-836-9542 to request that a copy of this research be sent to them.

**Message:**  Beginning with this month's statement, the value of your asset holdings will be reported based on the trade date. We believe this enhancement provides a more immediate picture of your account activity and will help you make more informed investment decisions. To learn more, see the enclosed booklet, or speak with your Financial Consultant.

**Message:**  As an information service for investors, the National Association of Securities Dealers (NASD) is offering a brochure detailing its Public Disclosure Program (PDP), a service designed to help investors gain convenient access to information about securities firms and their employees. For further information about PDP, including a copy of the brochure, please call the NASD Regulation Program Hotline at 1-800-289-9999 or check the NASD Regulation Web Site at www.nasdr.com.

**Message:**  Enclosed please find our annual privacy notice entitled "Our Privacy Notice", which describes the firm's privacy policies and procedures.  This notice will help you understand how we handle the personal information about you that we collect and may disclose, and how you can limit the disclosure of such information. Please review the notice carefully.

# SMITH BARNEY
## citigroup

**Client Statement**
June 28 - September 26, 2004

BRIAN MEHLMAN

Account number 740-52841-19-7...

Ref: 00000675 00003953

Information regarding commissions and charges will be made available to you promptly upon request. Please advise us of any material change in your financial objectives or financial situation.
All checks written and deposited to your account must be made payable to Smith Barney.
If you believe your statement is not correct, you must contact us within ten (10) days. Complaints and incorrect statement issues may be directed to the Manager of the branch servicing your
account (see page 1 of statement for address and phone number) or Citigroup Global Markets Inc., Attention: Compliance Department, 111 Wall Street, 11th Floor, New York, NY 10005-3500.

M0254

**Confirmation of Exercise**

Network Appliance, Inc.
ID: 77-0307520
495 East Java Drive
Sunnyvale, CA 94089

---

Brian D Mehlman
25 Hazel Avenue
Nashua, NH 03062

Same-Day Sale

| | | | |
|---|---|---|---|
| Option Number | 011482 | Date of Exercise | 10/01/04 |
| Option Date | 5/18/01 | Shares Exercised | 770 |
| Option Type | NQ | Market Value per Share | $24.2700 |
| Plan | 99 | Option Price per Share | $22.9400 |
| | | Sale Price per Share | $23.9000 |

---

**Calculation of Gain**

| | |
|---|---|
| Market Value (Shares Issued) | $ .00 |
| Sale Price (Shares Sold) | $18,403.00 |
| Option Price | $(17,663.80) |
| Total Gain | $ 739.20 |
| W-2 Income | $ 739.20 |

**Calculation of Taxes**

| | Rate % | Amount |
|---|---|---|
| Federal | 25.00 | $ 184.80 |
| NH-State | 0.00 | $ .00 |
| Social Security | 6.20 | $ 45.83 |
| Medicare | 1.45 | $ 10.72 |
| Total Tax | | $ 241.35 |

**Stock Distribution**

| | |
|---|---|
| Shares Sold | 770 |
| Shares Issued | 0 |

**Cash Distribution**

| | |
|---|---|
| Total Sale Price | $18,403.00 |
| Total Due Company | $(17,905.15) |
| Total Due Optionee | $ 497.85 |

**Funds Required**

| | |
|---|---|
| Total Option Price | $17,663.80 |
| Total Tax | $ 241.35 |
| Total Due Company | $17,905.15 |

---

**Transfer Agent Instructions**

**Registration:**

SalomonSmith Barney, DTC 0418
The Daniels Group
FBO Brian D Mehlman

| | |
|---|---|
| Account Number: | 740-52841-13 |
| Deliver: | DWAC |
| Control Number: | 100104-1 |
| Confirm Date: | 10/04/04 |

**Accounting Use Only:**

Option Price Received: _____
Source: _____

Tax Withholding Received: _____
Source: _____

M0255

*Confirmation of Exercise*

**Network Appliance, Inc.**
ID: 77-0307520
495 East Java Drive
Sunnyvale, CA 94089

**Brian D Mehlman**
**25 Hazel Avenue**
**Nashua, NH 03062**

**Same-Day Sale**

| | | | |
|---|---|---|---|
| Option Number | 021557 | Date of Exercise | 9/28/04 |
| Option Date | 4/01/02 | Shares Exercised | 562 |
| Option Type | NQ | Market Value per Share | $22.2600 |
| Plan | 99 | Option Price per Share | $21.0100 |
| | | Sale Price per Share | $22.0200 |

| **Calculation of Gain** | | **Calculation of Taxes** | | |
|---|---|---|---|---|
| | | | Rate % | Amount |
| Market Value (Shares Issued) | $ .00 | Federal | 25.00 | $ 141.91 |
| Sale Price (Shares Sold) | $12,375.24 | NH-State | 0.00 | $ .00 |
| Option Price | $(11,807.62) | Social Security | 6.20 | $ 35.19 |
| | | Medicare | 1.45 | $ 8.23 |
| Total Gain | $ 567.62 | | | |
| W-2 Income | $ 567.62 | Total Tax | | $ 185.33 |

**Stock Distribution**

| | |
|---|---|
| Shares Sold | 562 |
| Shares Issued | 0 |

| **Cash Distribution** | | **Funds Required** | |
|---|---|---|---|
| Total Sale Price | $12,375.24 | Total Option Price | $11,807.62 |
| Total Due Company | $(11,992.95) | Total Tax | $ 185.33 |
| Total Due Optionee | $ 382.29 | Total Due Company | $11,992.95 |

**Transfer Agent Instructions**

**Registration:**

SalomonSmith Barney, DTC 0418
The Daniels Group
FBO Brian D Mehlman

**Accounting Use Only:**

Option Price Received: _____
Source: _____

Tax Withholding Received:_____
Source: _____

| | |
|---|---|
| Account Number: | 740-52841-13 |
| Deliver: | DWAC |
| Control Number: | 092804-2 |
| Confirm Date: | 9/29/04 |

M0256

**Network Appliance, Inc.**
ID: 77-0307520
495 East Java Drive
Sunnyvale, CA 94089

### *Confirmation of Exercise*

Brian D Mehlman
25 Hazel Avenue
Nashua, NH 03062

**Same-Day Sale**

| | | | |
|---|---|---|---|
| Option Number | 009371 | Date of Exercise | 9/30/04 |
| Option Date | 4/19/01 | Shares Exercised | 791 |
| Option Type | NQ | Market Value per Share | $23.0500 |
| Plan | 99 | Option Price per Share | $22.3000 |
| | | Sale Price per Share | $22.9900 |

**Calculation of Gain**

**Calculation of Taxes**

| | | Rate % | Amount |
|---|---|---|---|
| Market Value (Shares Issued) | $ .00 | | |
| Sale Price (Shares Sold) | $18,185.09 | Federal | 25.00 | $ 136.45 |
| Option Price | $(17,639.30) | NH-State | 0.00 | $ .00 |
| | | Social Security | 6.20 | $ 33.84 |
| | | Medicare | 1.45 | $ 7.91 |
| Total Gain | $ 545.79 | | |
| W-2 Income | $ 545.79 | Total Tax | $ 178.20 |

**Stock Distribution**

| | |
|---|---|
| Shares Sold | 791 |
| Shares Issued | 0 |

**Cash Distribution**

**Funds Required**

| | | | |
|---|---|---|---|
| Total Sale Price | $18,185.09 | Total Option Price | $17,639.30 |
| Total Due Company | $(17,817.50) | Total Tax | $ 178.20 |
| Total Due Optionee | $ 367.59 | Total Due Company | $17,817.50 |

**Transfer Agent Instructions**

**Registration:**

SalomonSmith Barney, DTC 0418
The Daniels Group
FBO Brian D Mehlman

**Accounting Use Only:**

Option Price Received: _____
Source: _____

Tax Withholding Received: _____
Source: _____

| | |
|---|---|
| Account Number: | 740-52841-13 |
| Deliver: | DWAC |
| Control Number: | 093004-2 |
| Confirm Date: | 10/01/04 |

**Confirmation of Exercise**

Network Appliance, Inc.
ID: 77-0307520
495 East Java Drive
Sunnyvale, CA 94089

Brian D Mehlman
25 Hazel Avenue
Nashua, NH 03062

Same-Day Sale

| | | | | |
|---|---|---|---|---|
| Option Number | 020479 | Date of Exercise | | 9/28/04 |
| Option Date | 3/04/02 | Shares Exercised | | 562 |
| Option Type | NQ | Market Value per Share | | $22.2600 |
| Plan | 99 | Option Price per Share | | $20.5200 |
| | | Sale Price per Share | | $22.0200 |

**Calculation of Gain**

| | |
|---|---|
| Market Value (Shares Issued) | $ .00 |
| Sale Price (Shares Sold) | $12,375.24 |
| Option Price | $(11,532.24) |
| Total Gain | $ 843.00 |
| W-2 Income | $ 843.00 |

**Calculation of Taxes**

| | Rate % | Amount |
|---|---|---|
| Federal | 25.00 | $ 210.75 |
| NH-State | 0.00 | $ .00 |
| Social Security | 6.20 | $ 52.27 |
| Medicare | 1.45 | $ 12.22 |
| Total Tax | | $ 275.24 |

**Stock Distribution**

| | |
|---|---|
| Shares Sold | 562 |
| Shares Issued | 0 |

**Cash Distribution**

| | |
|---|---|
| Total Sale Price | $12,375.24 |
| Total Due Company | $(11,807.48) |
| Total Due Optionee | $ 567.76 |

**Funds Required**

| | |
|---|---|
| Total Option Price | $11,532.24 |
| Total Tax | $ 275.24 |
| Total Due Company | $11,807.48 |

**Transfer Agent Instructions**

**Registration:**
SalomonSmith Barney, DTC 0418
The Daniels Group
FBO Brian D Mehlman

| | |
|---|---|
| Account Number: | 740-52841-13 |
| Deliver: | DWAC |
| Control Number: | 092804-2 |
| Confirm Date: | 9/29/04 |

**Accounting Use Only:**
Option Price Received: _____
Source: _____

Tax Withholding Received: _____
Source: _____

**SALOMON SMITH BARNEY INC.**
2775 SAND HILL ROAD
SUITE 120
MENLO PARK CA 94025

Account Number: 740-52841-1-3-768
Financial Consultant: STEVEN DANIELS
650-926-7600

BRIAN MEHLMAN                    #2,365
25 HAZEL AVE.
NASHUA NH 03062-1448

'ou Sold 425 at a price of 18.70

NETWORK APPLIANCE INC
EXCHAGNE PACIFIC COAST
RPT PRICE TO NASDAQ: 18.70
PX INCLDS MARK-DWN:   0
SALOMON SMITH BARNEY
IS A MARKET MAKER

| | |
|---|---|
| Gross Amount | $ 7,947.50 |
| SEC Fee | .26 |
| Transaction Fee | 5.00 |
| **Amount** | **$ 7,942.24** |
| **Settlement Date** | **12/10/2001** |

Trade Date: 12/05/2001        CUSIP#: 64120L-10-4     Unsolicited Order
Market: Over-The-Counter       Security#: N279754      Cash Acct.              HOLD PROCEEDS
                               Symbol:  NTAP           Ref #: 190689

We acted as principal in this transaction.

As a reminder, payment for securities purchased or delivery of securities sold must be deposited with us by the Settlement Date.
See reverse for further details. Keep this document for your records. Thank you for doing business with us.      12/05/2001   SD-003140-S

M0259

Please review this document carefully. If the details of any transaction are incorrect, you must notify the Branch Manager of the office servicing your account immediately. Failure to make such notification within three (3) days of receipt of this document constitutes your acceptance of the transaction(s)..

**Unless you have directed that the order be executed on a specified exchange or market and we have agreed to such execution, we will, at our sole discretion and without prior notification to you, execute any of your orders to purchase or sell securities on the over-the-counter market in any location or on any exchange, including a foreign exchange, where such security is traded, either on a principal or agency basis.**

**The firm receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. When such remuneration is received, it is considered compensation to the firm, and the source and amount of any compensation received by the firm in connection with your transaction will be disclosed upon request.**

**For NASDAQ principal transactions: Any mark-up or mark-down shown on the front of this Confirmation represents the difference between the reported price to NASDAQ and your price. Your Financial Consultant receives a portion of any mark-up or mark-down as compensation in connection with these transactions, and may receive additional compensation from these transactions. Your Financial Consultant usually receives compensation from transactions that have no mark-up or mark-down. Per share prices and per share mark-ups or mark-downs will be furnished on request.**

A. When applicable, the transaction(s) set forth on the front of this confirmation constitutes an offer to the client made pursuant to the information contained in the enclosed prospectus or official statement.

B. Descriptive words in the title of any security are used for identification purposes only, and do not constitute representations.

C. The time of execution will be furnished upon written request. In transactions where Salomon Smith Barney Inc. acts as agent, the name of buyer and seller will be furnished on written request.

D. For Debt Securities, call features may exist in addition to those described on the front of this confirmation. Debt securities subject to call features or other redemption features such as sinking funds, may be redeemed in whole or in part before maturity. Such occurrences may affect yield. Please contact your Financial Consultant for further information. Yields on mortgage-backed securities (MBS) are quoted as a Corporate Bond Equivalent Yield (BEY). Actual yield may vary based on prepayment rates. Total amount due on MBS may be subject to change after settlement date due to factor changes. Additional information will be provided upon request.

E. For Zero Coupon, Compound Interest and Multiplier securities, no periodic payments of interest or principal are generally made. These securities may be callable at a price below their maturity value without prior notice by mail to holder unless the holder has requested these securities be held in registered form. Unless specifically requested and agreed to by Salomon Smith Barney Inc., clients' securities will not be held in registered form. Additional information will be furnished upon request.

F. For the purpose of evaluating Federal Deposit Insurance, CDs are aggregated with all other deposits held by a client in the same legal capacity at the issuing institution. The insurance limit is $100,000 combined principal and interest for interest bearing CDs or accreted value for zero-coupon CDs.

G. If this confirmation relates to a debt obligation in bearer form, Salomon Smith Barney Inc. agrees to satisfy the conditions set forth in U.S. Treasury regulation sections 1.165-12(c)(3), and covenants with you to deliver the obligation in bearer form in accordance with the requirements of paragraph (c)(1)(ii) and (iv) of those regulations. The regulations prohibit deliveries, and restrict resales of obligations in bearer form within the United States, and may affect the resale market for such obligations. Consult your tax advisor.

H. For certain asset-backed debt securities, the actual yield may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning factors that affect yield (including estimated yield, weighted average life and the prepayment assumptions underlying yield) will be furnished upon written request.

I. Rating information is provided based on good faith inquiry, but its accuracy or completeness cannot be guaranteed.

J. Structured debt securities differ substantially from standard fixed income obligations. Risks include unpredictable movements of the related index, increased volatility, reduced liquidity, and unusual call features leading to premature returns of capital that can reduce expected yield.

**Salomon Smith Barney is a service mark of Salomon Smith Barney Inc.**

5/99

Your Broker/Dealer is
**CITIGROUP GLOBAL MKTS INC.**
2775 SAND HILL ROAD
SUITE 120
MENLO PARK CA 94025

Account Number:       740-52841-1-3-022
Financial Consultant:  SMC/THE DANIELS GROUP
                       650-926-7600

Page 1 of 1

BRIAN MEHLMAN                              #1,439
25 HAZEL AVE.
NASHUA NH 03062-1448

| | |
|---|---|
| Summary For Settlement Date | 06/05/2003 |
| Total Sales | $ 24,435.25 |
| Net Amount | $ 24,435.25  Credit |

You Sold 3,178 shares

NETWORK APPLIANCE INC
PROSPECTUS ON INITIAL PURCHASE
SOMEMPLID XXXXXX173
EXERCISE QUANTITY_____3,178
GRANT PRICE_____9.8400
OPTION COST_____31,271.52
SEC FEE_____2.61
TRANSACTION FEE_____5.00
Avg Price shown-details on req
Px Inclds Mark-dwn:  0
RPT PRICE TO NASDAQ:  17.53127
VS NO COST
WE ARE A MARKET MAKER
FULL PRICE IS 17.53127120

| | |
|---|---|
| Gross Amount | $ 55,714.38 |
| Total Exercise Costs | 31,279.13 |
| **Amount** | **$ 24,435.25** |
| **Settlement Date** | **06/05/2003** |

Trade Date: 06/02/2003        CUSIP#:  64120L-10-4        Unsolicited Order
Market: Over-The-Counter      Security#: N279754          Cash Acct.
                              Symbol:  NTAP               Ref #: 508986

We acted as principal in this transaction.

M0261

Citigroup Global Markets Inc., member NYSE, NASD and other principal exchanges. Smith Barney is a division and service mark of Citigroup Global Markets Inc. and its affiliates and is used and registered throughout the world. CITIGROUP and the Umbrella Device are trademarks and service marks of Citicorp or its affiliates and are used and registered throughout the world. Citigroup Global Markets Inc. is a member of the Securities Investor Protection Corporation (SIPC).
As a reminder, payment for securities purchased or delivery of securities sold must be deposited with us by the Settlement Date.
See reverse for further details. Keep this document for your records. Thank you for doing business with us.

06/02/2003  SD-002102-L

Please review this document carefully. If the details of any transaction are incorrect, you must notify the Branch Manager of the office servicing your account immediately. Failure to make such notification within three (3) days of receipt of this document constitutes your acceptance of the transaction(s).

**Unless you have directed that the order be executed on a specified exchange or market and we have agreed to such execution, we will, at our sole discretion and without prior notification to you, execute any of your orders to purchase or sell securities on the over-the-counter market in any location or on any exchange, including a foreign exchange, where such security is traded, either on a principal or agency basis.**

**The firm receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. When such remuneration is received, it is considered compensation to the firm, and the source and amount of any compensation received by the firm in connection with your transaction will be disclosed upon request.**

**For NASDAQ principal transactions: Any mark-up or mark-down shown on the front of this Confirmation represents the difference between the reported price to NASDAQ and your price. Your Financial Consultant receives a portion of any mark-up or mark-down as compensation in connection with these transactions, and may receive additional compensation from these transactions. Your Financial Consultant usually receives compensation from transactions that have no mark-up or mark-down. Per share prices and per share mark-ups or mark-downs will be furnished on request.**

Should the Firm communicate an erroneous report of an execution that is more favorable than the actual execution price the Firm may at its discretion, and without notice to you, automatically pass on the price improvement to you.

A. When applicable, the transaction(s) set forth on the front of this confirmation constitutes an offer to the client made pursuant to the information contained in the enclosed prospectus or official statement.

B. Descriptive words in the title of any security are used for identification purposes only, and do not constitute representations.

C. The time of execution will be furnished upon written request. In transactions where we act as agent, the name of buyer and seller will be furnished on written request.

D. For Debt Securities, call features may exist in addition to those described on the front of this confirmation. Debt securities subject to call features or other redemption features such as sinking funds, may be redeemed in whole or in part before maturity. Such occurrences may affect yield. Please contact your Financial Consultant for further information. Yields on mortgage-backed securities (MBS) are quoted as a Corporate Bond Equivalent Yield (BEY). Actual yield may vary based on prepayment rates. Total amount due on MBS may be subject to change after settlement date due to factor changes. Additional information will be provided upon request.

E. For Zero Coupon, Compound Interest and Multiplier securities, no periodic payments of interest or principal are generally made. These securities may be callable at a price below their maturity value without prior notice by mail to holder unless the holder has requested these securities be held in registered form. Unless specifically requested and agreed to by us, clients' securities will not be held in registered form. Additional information will be furnished upon request.

F. For the purpose of evaluating Federal Deposit Insurance, CDs are aggregated with all other deposits held by a client in the same legal capacity at the issuing institution. The insurance limit is $100,000 combined principal and interest for interest bearing CDs or accreted value for zero-coupon CDs.

G. If this confirmation relates to a debt obligation in bearer form, we agree to satisfy the conditions set forth in U.S. Treasury regulation sections 1.165-12(c)(3), and covenants with you to deliver the obligation in bearer form in accordance with the requirements of paragraph (c)(1)(ii) and (iv) of those regulations. The regulations prohibit deliveries, and restrict resales of obligations in bearer form within the United States, and may affect the resale market for such obligations. Consult your tax advisor.

H. For certain asset-backed debt securities, the actual yield may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning factors that affect yield (including estimated yield, weighted average life and the prepayment assumptions underlying yield) will be furnished upon written request.

I. Rating information is provided based on good faith inquiry, but its accuracy or completeness cannot be guaranteed.

J. Structured debt securities differ substantially from standard fixed income obligations. Risks include unpredictable movements of the related index, increased volatility, reduced liquidity, and unusual call features leading to premature returns of capital that can reduce expected yield.

4/2003

M0262

**Your Broker/Dealer is**                          Account Number:              XXX-XX-X173 Plan 24M

**CITIGROUP GLOBAL MARKETS INC.**

SMITH BARNEY                                       DANIELS GROUP
2121 S EL. CAMINO REAL                             STOCK OPTION PROGRAM
SUITE 900                                                                     1-800-367-4777
SAN MATEO, CA 94403

BRIAN        MEHLMAN
25 HAZEL AVENUE
NASHUA         NH 03062

ETWORK APPLIANCE INC
IMIT PRICE MODIFICATION
OUR OPEN ORDER OF 05/29/03
IAS MODIFIED ON   06/02/03
lan # 13   ID XXXXXX173
;O  Grant ID 001115
xercise Quantity      0
rig Limit Price    $20.0000
lod  Limit Price   $17.5000

rder Date:   05/29/03          CUSIP#   64120L 10 4       Unsolicited Order
larket:                        Security#  N279754         Cash Acct
                               Symbol:   NTAP             Ref#:  0001757

/e acted as your agent in this transaction.

M0263

itigroup Global Markets Inc., member NYSE, NASD and other principal exchanges.  Smith Barney is a division and service mark of Citigroup Global
larkets Inc. and its affiliates and is used and registered throughout the world.  CITIGROUP and the Umbrella Device are trademarks and service marks
l Citicorp or its affiliates and are used and registered throughout the world.  Citigroup Global Markets Inc. is a member of the Securities
westor Protection Corporation (SIPC).

s a reminder, payment for securities purchased or delivery of securities sold must be deposited with us by the Settlement Date. See reverse for
irther details.  Keep this document for your records. Thank you for doing business with us.

Please review this document carefully. If the details of any transaction are incorrect, you must notify the Branch Manager of the office servicing your account immediately. Failure to make such notification within three (3) days of receipt of this document constitutes your acceptance of the transaction(s).

Unless you have directed that the order be executed on a specified exchange or market and we have agreed to such execution, we will, at our sole discretion and without prior notification to you, execute any of your orders to purchase or sell securities on the over-the-counter market in any location or on any exchange, including a foreign exchange, where such security is traded, either on a principal or agency basis.

The firm receives remuneration for directing orders in equity securities to particular broker/dealers or market centers for execution. When such remuneration is received, it is considered compensation to the firm, and the source and amount of any compensation received by the firm in connection with your transaction will be disclosed upon request.

For NASDAQ principal transactions: Any mark-up or mark-down shown on the front of this Confirmation represents the difference between the reported price to NASDAQ and your price. Your Financial Consultant receives a portion of any mark-up or mark-down as compensation in connection with these transactions, and may receive additional compensation from these transactions. Your Financial Consultant usually receives compensation from transactions that have no mark-up or mark-down. Per share prices and per share mark-ups or mark-downs will be furnished upon request.

Should the Firm communicate an erroneous report of an execution that is more favorable than the actual execution price the Firm may at its discretion, and without notice to you, automatically pass on the price improvement to you.

A. When applicable, the transaction(s) set forth on the front of this confirmation constitutes an offer to the client made pursuant to the information contained in the enclosed prospectus or official statement.

B. Descriptive words in the title of any security are used for identification purposes only, and do not constitute representations.

C. The time of execution will be furnished upon written request. In transactions where we act as agent, the name of buyer and seller will be furnished on written request.

D. For Debt Securities, call features may exist in addition to those described on the front of this confirmation. Debt securities subject to call features or other redemption features such as sinking funds, may be redeemed in whole or in part before maturity. Such occurrences may affect yield. Please contact your Financial Consultant for further information. Yields on mortgage-backed securities (MBS) are quoted as a Corporate Bond Equivalent Yield (BEY). Actual yield may vary based on prepayment rates. Total amount due on MBS may be subject to change after settlement date due to factor changes. Additional information will be provided upon request.

E. For Zero Coupon, Compound Interest and Multiplier securities, no periodic payments of interest or principal are generally made. These securities may be callable at a price below their maturity value without prior notice by mail to holder unless the holder has requested these securities be held in registered form. Unless specifically requested and agreed to by us, clients' securities will not be held in registered form. Additional information will be furnished upon request.

F. For the purpose of evaluating Federal Deposit Insurance, CDs are aggregated with all other deposits held by a client in the same legal capacity at the issuing institution. The insurance limit is $100,000 combined principal and interest for interest bearing CDs or accreted value for zero-coupon CDs.

G. If this confirmation relates to a debt obligation in bearer form, we agree to satisfy the conditions set forth in U.S. Treasury regulation sections 1.165–12(c)(3), and covenants with you to deliver the obligation in bearer form in accordance with the requirements of paragraph (c)(1)(ii) and (iv) of those regulations. The regulations prohibit deliveries, and restrict resales of obligations in bearer form within the United States, and may affect the resale market for such obligations. Consult your tax advisor.

H. For certain asset-backed debt securities, the actual yield may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning factors that affect yield (including estimated yield, weighted average life and the prepayment assumptions underlying yield) will be furnished upon written request.

I. Rating information is provided based on good faith inquiry, but its accuracy or completeness cannot be guaranteed.

J. Structured debt securities differ substantially from standard fixed income obligations. Risks include unpredictable movements of the related index, increased volatility, reduced liquidity, and unusual call features leading to premature returns of capital that can reduce expected yield.

4/2003

M0264